In the United States District Court for the
District of Maryland (Northern Division)

**FRANCES DARCANGELO**          *
    Plaintiff,                *
                            *
-vs-                            *
                            *
                            *   Civil Case No. S-02-816
**BELL ATLANTIC**               *
    Defendant             *
                            *

* * * * * *

**Plaintiff's Opposition to Defendant's Motion to Compel
Limited Supplemental Psychiatric Examination**

* * * * * *

Plaintiff Frances Darcangelo, by and through her attorney, Edwin R. Burkhardt, of Towson, Maryland, hereby files her Response to Plaintiff's Motion to Compel Limited Supplemental Psychiatric Examination.

The Court issued its initial scheduling order on or about October 24, 2003. Plaintiff's deposition was conducted on December 23-24, 2002. At Defendant's insistence, Plaintiff consented to a Rule 35 medical examination. Subsequently, Dr. Stuart Kleinman, an internationally-reknowned psychiatrist hailing out of Central Park West in Upper Manhattan in New York City conducted a comprehensive, grueling, and extremely lengthy (seven hours of actual examination time) psychiatric examination in the office of Plaintiff's counsel, the Law Office of Edwin R. Burkhardt, in Towson, Maryland, between the hours of 11:30 a.m. and 8 p.m., with approximately a one-hour lunch and several short breaks, on January 3, 2003. Defendant designated Dr. Kleinman as its medical expert on January 20, 2003.

I.  AT THE REQUEST AND INSISTENCE OF DEFENDANT BELL ATLANTIC, PLAINTIFF FRANCES DARCANGELO HAS ALREADY BEEN SUBJECTED TO A LENGTHY, GRUELING AND INTRUSIVE PSYCHIATRIC EXAMINATION AND PSYCHIATRIC TESTING FOR APPROXIMATELY SEVEN HOURS

Defendant's counsel scheduled and conducted Plaintiff's Psychological examination for January 3, 2003, in the conference room at the offices of Plaintiff's attorney at 401 Washington Ave in Towson, Maryland. Defendant's expert, Dr. Stuart Kleinman, arrived shortly after 10 a.m. and began speaking with Plaintiff in conference room shortly thereafter. Shortly after Kleinman gave his standard pre-examination disclaimer to Plaintiff that he was not serving as a treating physician, that standard doctor-patient confidentiality did not apply, and that he was "not practicing medicine," Plaintiff raised legitimate questions[1] about what medical board had jurisdiction over his conduct of the exam that day and if he wasn't practicing medicine, what to call what he was doing, since it was known (and Dr. Kleinman admitted) he did not have a license to practice medicine in Maryland. Plaintiff's inquiry apparently caused some concern to Dr. Kleinman, who then temporarily suspended the examination to address his concerns about Plaintiff's comments with Plaintiff's counsel and Defendant's counsel over at O'Melveny & Myers LLP, Martha Dye. Plaintiff's counsel returned from a brief absence and, after multiple phone conferences between Martha Dye and Kleinman, and Plaintiff's counsel and Ms. Dye, the concerns of all (including Plaintiff and Dr. Kleinman) were adequately addressed, a stipulation and agreement was read on videotape, and Dr. Kleinman proceeded to conduct his examination

---

[1] Plaintiff's counsel was not present at the time the comments were exchanged, and has not seen the videotape, so he cannot determine exactly what was said. All he can say is that as of approximately 11:30 a.m. on January 3rd through the conclusion of the examination, which concluded after the late hour of 8 p.m., he heard nary a whisper of dissatisfaction from Dr. Kleinman.

of Plaintiff from 11:30 a.m. until after 8:00 p.m., with a break for lunch and several short breaks. It is estimated the total examination time was between 6.5 and 7 hours. Between two and three weeks later, Bell Atlantic proceeded to designate Dr. Kleinman as its expert on January 20, 2003.[2]

As far as Plaintiff is concerned, Defendant got its Rule 35 Examination (and a rather lengthy and burdensome exam that was) on January 3rd, when an agreement between Dr. Kleinman and both Ms. Dye and Mr. Burkhardt, was reached, and read into the videotaped[3] record, and *Dr. Kleinman decided to proceed with his examination of Plaintiff*. Only during the week of January 20th –most notably, after Dr. Kleinman had been designated as the psychiatric expert--did any concerns about any of Ms. Darcangelo's inquiries to Dr. Kleinman suspiciously re-materialize.

---

[2]Plaintiff asks the court that it be allowed to incorporate and hereby adopt the 8 (eight) exhibits it filed in Plaintiff's Response to Defendant's Motion for Extension of Time to Conduct Discovery and Obtain Expert Reports on January 30 as exhibits offered by Plaintiff in support of this Opposition.

[3]Plaintiff had previously expressed her willingness to split the cost of a transcript of the January 3rd examination (the Defendant's Motion itself makes clear that the videotape of that exam has been reviewed and transcribed) if the court were to give serious consideration to granting Defendant's motion, since Plaintiff is confident the court will find not find in that transcript the "good cause" necessary to justify ordering a 2nd examination, and additional psychiatric testing.

II.   DEFENDANT BELL ATLANTIC HAS NOT MET THE REQUIREMENT OF "GOOD CAUSE" NECESSARY TO JUSTIFY ORDERING A 2ND PSYCHIATRIC EXAMINATION AND ADDITIONAL TESTING

The "good cause" requirement of Rule 35(a) has been described as follows:

> [Good Cause] require[s] an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

Shumaker v. West, 196 F.R.D. 454, 457 (S.D. W. Va. 2000), citing Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S. Ct. 234 (1964). In Moore v. Calavar Corp., 142 F.R.D. 134, 135 (W.D. La. 1992), the court described four circumstances in which it might be appropriate to order a 2nd Rule 35 examination:

> A) Separate injuries calling for examination by distinct medical specialists; B) where physician needs assistance of other consultants before he can issue a diagnosis; C) where 1st exam was not adequate or complete; and D) where there's a substantial time lag between initial exam and trial.

Id. None of the factors described in Moore are present here. In addition, because most if not all of the requested information is available by alternative means (plaintiff can be observed on the videotape of the 1st exam), and Plaintiff did complete the MMPI in a medical exam in 1999 to assist her in her claim for partial disability with the Veteran's Administration, Defendant's Motion should undoubtedly be denied. Id. (denying 2nd examination because no "good cause" shown sufficient to mandate 2nd exam); Shumaker, 196 F.R.D. at 457 (no "good cause" shown where information had access to all of plaintiff's medical records and ample medical evidence exists from which to obtain desired information); Rutherford v. Alben, 1 F.R.D. 277, 278 (S.D.

W. Va. 1940)(denying 2nd exam). See also Stewart v. Burlington Northern R.R., (D. Minn. 1995)(court denied 2nd examination, even though 1st occurred before litigation commenced and not scheduled by Defendant's attorneys, since defendant had free access to the requested information).

Thus, for the reasons described above, Defendant's Motion should be denied.

Submitted, most Respectfully, this 25th day of March, 2003

_____

Edwin R. Burkhardt (#23626)
Counsel for Plaintiff
401 Washington Ave, #303
Towson, MD 21204
(410) 583-0338

CERTIFICATE OF SERVICE:    I swear that on this 25th day of March, 2003, Plaintiff's Opposition, was faxed, and mailed to O'Melveny & Myers, 555 13th St. N.W., Washington, D.C. 20004-1109 (202) 383-5414 (Karen Wahle) and to Ms. Martha Dye, 1650 Tysons Boulevard, McLean, VA 22102 (703) 918-2700.

_____

Edwin R. Burkhardt
Counsel for Plaintiff