## *JULY 13 INCIDENT*

At 6:00pm on Monday, July 13, I was paged by center technicians. OPS/INE was down and they needed the phone number of an OPS/INE Staff person to refer the trouble. Both associates were unable to access the system and complete their tickets. The situation was continuing to degrade.

After contacting the staff member they were told what the problem was and they were also told that Gus Dankert was made aware of this during the day.

The next day I questioned Gus. He said that he had been upset by another employee, Barbara Lee, and that he did not relay the information to her. I asked him why he did not tell someone else and he told me that he forgot.

Later that day, another associate told me that Gus told 3 other team members that he had purposely withheld the information and that is was "Payback Time for Barbara Lee".

When I returned to work on Wednesday, I called Gus into the conference room and asked him to tell me about this incident. He said he felt Barbara was picking on him, when she screamed at him to get up and let someone else sit down. He also felt she picked on him in a crew meeting when she asked why technicians did not go on the schedule until they had 6 months service. I explained to him that I was the Supervisor and that I made that decision. I also told him that I was going to talk to Barbara about her behavior. I again asked him why he did not tell someone else about the problem. He said that he made a mistake. I asked him if he bragged to his coworkers about the incident and he said he regretted his actions.

I asked him if he had apologized to Scott for his behavior and he said he had. He was advised to work on becoming a better team player. He was also told to ask for help when necessary. I also told him that he was arrogant and needed to work on his own behavior. He was told not to withhold information.



EXHIBIT
Dankert #8
5-12-03

I told Gus that disciplinary action may be taken after Mr. Conrad reviewed the incident.


Marianne Moxey
Team Leader – Transport Provisioning

*TERMINATION OUTLINE*
*Gus Dankert – 7/17/98*

On 7/15/98 Marianne Moxey informed me of an incident involving Gus Dankert which had occurred on 7/13/98. Ms. Moxey's discussion with Mr. Dankert is attached.

A summarization of the incident is as follows. In the early afternoon hours of 7/13 Mr. Dankert became aware of a problem with OPS/INE access to the Glen Burnie K01 Digital Crossconnect System. He withheld this information from another employee and subsequently bragged to other coworkers that it was "payback time" for Barbara Lee, the employee from which he withheld the information. His actions impacted our ability to provide service in the Glen Burnie machine, impacted our budget because overtime was required to handle the "fallout" caused by the problem, and impacted the morale of the team. Most importantly, his actions were in violation of the Bell Atlantic Code of Conduct.

I asked Linda Pabst from the Security Department to assist one of my supervisors in interviewing Mr. Dankert and several of the associates involved in this incident. The interviews verified my initial findings and I terminated Mr. Dankert on 7/17/98 at approximately 2:15pm. The reasons given for termination were as follows:
1. He purposely withheld information which impacted our ability to provide service to the customer.
2. He caused an impact to the budget because overtime was required to correct the problem.
3. He impacted the morale of the group because his actions were taken as retribution against another employee.
4. He violated the Bell Atlantic Code of Conduct.

Due to the heat, I allowed Mr. Dankert to meet with the union on company premises as long as was needed. (The union was requested to be at the meeting by management.) I then asked Mr. English to escort him to the door.

J.P. Conrad
Manager – NOC/Transport



**CORPORATE SECURITY**

Attachment 5<br>
Page 1 of 1

October 6, 1998

MEMORANDUM OF INTERVIEW: Central Office Technician August E. Dankert, July 17, 1998

On July 17, 1998, Corporate Security Investigator Linda C. Pabst interviewed Central Office Technician August E. Dankert. The interview was conducted in the 4th floor conference room 99 Shawan Road, Cockeysville, MD. The interview began at 11:45 a.m. and concluded at 12:30 p.m. Mr. Charles English Network Operations team coach, assisted as the note taker during Security's interview

Security verbally summarized the Employee's Obligation Statement for Mr. Dankert and provided him with a printed copy. (Mr. English had been previously covered with the Statement in an earlier interview (see Attachment 3). Mr. Dankert stated that he understood the Statement and had no questions concerning its contents. Mr. Dankert did not request union representation.

Security advised Mr. Dankert that the purpose of the interview was to determine what information he could provide regarding the Operation Support System/Intelligent Network Element (OPS/INE) computer system problem on July 13, 1998. Mr. Dankert stated that when he attempted to access the Glen Burnie central office via the OPS/INE computer system, his computer screen had "locked up." He stated that he contacted the system administrator who got him out of the system and advised him not to access it until they receive notification that the problem had been corrected.

Security then asked Mr. Dankert why he did not relay this information to his co-workers during shift turnover. Mr. Dankert stated that he withheld this information to get back at his co-worker, Barbara Lee, who was yelling at him. He advised Security that what he did may have been malicious, but he did it anyway. Mr. Dankert stated that he was aware of his responsibility to communicate such problems to his co-workers and said that he was sorry for not doing so.

Security then reviewed page 27 from the Bell Atlantic – Our Code of Business Conduct: "Bell Atlantic communication and computer systems are vital to the effective operation of our business. We will use company communications and computer systems in a responsible manner and never in any way that may be disruptive. .or that in the judgment of Bell Atlantic encourages or permits a hostile work environment." Mr. Dankert stated that he was aware that his actions violated that policy

At the conclusion of the interview, Mr. Dankert provided Security with a voluntary written statement (Attachment 6)

Prepared by: Linda C. Pabst
Corporate Investigator

EXHIBIT
Dankert #9
7-12-02   RMS

THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY

OF MARYLAND

I __AUGUST E. DANKERT__ WITHOUT PROMISES, THREATS, OR COERCION DO VOLUNTARILY GIVE THE FOLLOWING STATEMENT TO __KCabot__ WHO HAS IDENTIFIED HIMSELF/(HERSELF) AS A SECURITY REPRESENTATIVE OF THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARYLAND. ~~I UNDERSTAND THAT THIS STATEMENT MAY BE USED IN A COURT OF LAW.~~

ON ~~BECAUSE~~ (on) 7/13/98 I DID NOT TELL CO WORKERS ABOUT A TICKET THAT CAUSED PROBLEMS on ON 7/13/98 IN THE ~~SECOND~~ SWIFT DO TO BARBRA LEE TELL ME TO GET OUT OF MY CUBE AND LEAVE SO SCOTT MCDONALD MAY USE MY CUBE. I'M VERY SORRY THAT THIS ACURRED AND WILL NEVER LET IT HAPPEN AGAIN! I'M VERY SORRY FOR MY CONDUCT AND KNOW THAT IT WAS WRONG AND WILL NEVER LET IT OCCUR AGAIN! AED

PAGE _1_ OF _2_



I HAVE READ THE ABOVE STATEMENT CONSISTING OF __2__ PAGE(S) AND IT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I HAVE INITIALED EACH PAGE AND EACH CORRECTION.

(SIGNED) _____  (DATE) 7/17/98

WITNESS: Linda C. Pabst  (DATE) 7/17/98

WITNESS: _____  (DATE) _____

PAGE ___ OF ___