IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCES DARCANGELO,

        Plaintiff,

    v.

VERIZON MARYLAND INC.,

        Defendant.

No. WDQ-02-816

## **DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

## I.    GENERAL CIVIL INSTRUCTIONS

### A.    Function Of The Court, The Jury And Counsel

#### 1.    Preliminary Instructions

Ladies and gentlemen, before you begin your deliberations, I now am going to instruct you on the law.  You must pay close attention and I will be as clear as possible.

As jurors, it is your duty to follow the law as I state it to you, and to apply that law to the facts as you find them from the evidence in the case.  Do not single out one instruction alone as stating the law, but consider my instructions as a whole.  Also, do not be concerned with whether you agree or disagree with the law as I state it.  Regardless of any opinion you may have as to what the law should be, it would be a violation of your sworn duty as jurors to base a verdict upon any other view of the law except the one I give you in these instructions.  It would also be a violation of your sworn duty as jurors to base a verdict upon anything except the evidence in this case.

Nothing in these instructions is an indication that I have any opinion about the facts of the case, or what that opinion is.  It is *your* job, not *my* job, to determine the facts.

**AUTHORITY:**    4 Leonard B. Sand, et al., *Modern Federal Jury Instructions* (hereinafter "*Modern Federal Jury Instructions*") ¶ 71.01 (2003); 3 Kevin F. O'Malley, et al., *Federal Jury Practice & Instructions* (hereinafter "*Federal Jury Practice & Instructions*") § 103.01 (5th ed. 2000).

Accepted ☐        Accepted as Modified ☐        Rejected ☐

2.    **Role Of The Jury**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit sympathy, prejudice, or public opinion to affect your decisions.  The law requires, and all parties and the public expect, that you will carefully and impartially consider all of the evidence, follow the law as I explain it to you, and reach a just verdict, regardless of the consequences.

In determining the facts, I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.  I know that you will do this and reach a just and true verdict.

**AUTHORITY:**        4 *Modern Federal Jury Instructions* ¶ 71.01; *Federal Jury Practice & Instructions* § 103.01.

Accepted ☐        Accepted as Modified ☐        Rejected ☐

**3.        All Parties Equal Before The Law**

I will now instruct you on how you should treat the parties and consider the evidence that has been presented in this case.

Consider and decide this case as an action between parties of equal standing in the community, of equal worth, and holding the same or similar stations of life. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

Do not let bias, prejudice, or sympathy play any part in your deliberations. You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision. You have been chosen to try the issues of fact and reach a verdict based on the evidence or lack of evidence. If you let sympathy interfere with your clear thinking, there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at the just verdict.

In this case, the defendant happens to be a corporation. The mere fact that one of the parties is a corporation does not mean it is entitled to any lesser consideration by you. A corporation like Verizon is entitled to the same fair trial at your hands as a private individual like plaintiff. You should not consider Verizon's assets or size in determining whether Verizon should be liable.

**AUTHORITY:**        4 *Modern Federal Jury Instructions* ¶¶ 71.01, 72.01; *Federal Jury Practice & Instructions* §§ 103.11, 103.12.

Accepted ☐          Accepted as Modified ☐          Rejected ☐

3

### 4.    Burden Of Proof

In this case, it is the responsibility of plaintiff to prove every essential part of her discrimination claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

The party with the burden of proof has the burden of proving every disputed element of her claim to you by a preponderance of the evidence. If you conclude that plaintiff has failed to establish each element of her claim by a preponderance of the evidence, you must decide against her on the issue you are considering.

What does a preponderance of evidence mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether plaintiff has proved a claim by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally as probable that one side is right as it is that the other side is right – then you must decide that issue against plaintiff, and in favor of Verizon.

**AUTHORITY:**        4 *Modern Federal Jury Instructions* ¶ 73.01.

Accepted ☐        Accepted as Modified ☐        Rejected ☐

**B.**    **Evidence**

**1.**    **Consideration Of The Evidence**

In your deliberations, you should consider only the evidence – that is, the testimony of the witnesses and the exhibits – I have admitted in the record.  As you consider the evidence, you may make deductions and reach conclusions that reason and common sense lead you to make.

Unless I instruct you otherwise, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received into evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to [*or judicially noticed*.]

Statements and arguments by the lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  However, when the lawyers on both sides stipulated or agreed to the existence of a fact, you must, unless otherwise instructed, accept that stipulation and regard that fact as proved.

*[I have taken judicial notice of certain facts that are not subject to reasonable dispute.  I have accepted these facts to be true, even though no direct evidence has been introduced proving them to be true.  You are required to accept these facts as true in reaching your verdict.]*

[*Voluminous writings, recordings, or photographs that cannot conveniently be examined in court may have been presented in the form of charts and summaries.  If these charts and summaries were admitted into evidence, you can consider them like any other form of evidence to the extent that you find them accurate as shown by the evidence.*]

**AUTHORITY:**    Fed. R. Evid. 1106; 4 *Modern Federal Jury Instructions* ¶ 74.02; *Federal Jury Practice & Instructions* § 103.30.

Accepted ☐    Accepted as Modified ☐    Rejected ☐

2.        **Interrogatories And Depositions**

a.        **Interrogatories**

You have heard and seen evidence in this case that is in the form of interrogatories.

Interrogatories are written questions posed by one side, which call for written answers under oath from the other side.  Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence that has been admitted in this case.

You are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence.  It is up to you to determine what weight, if any, you should give to the interrogatory answers that have been admitted as evidence.

**AUTHORITY:**        4 *Modern Federal Jury Instructions* ¶ 74.02.

Accepted ☐        Accepted as Modified ☐        Rejected ☐

**b.**  **<u>Depositions</u>**

During the trial of this case, certain testimony has been presented to you by way of deposition, consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties.  The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing under oath.  Such testimony is entitled to the same consideration, and is to be judged as to credibility and weighed in the same way as if the witness had been present and had testified from the witness stand.

**AUTHORITY:**        *Federal Jury Practice & Instructions* § 105.02.

Accepted ☐    Accepted as Modified ☐    Rejected ☐

### 3.    Inferences

#### a.    Inference Defined

During the trial, you have heard the attorneys use the term "inference," and in their arguments, they have asked you to infer, based on your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists based on another fact that has been shown to exist.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted to draw – but not required to draw – from the facts that have been established. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proved, such reasonable inferences as would be justified in light of your experience.

**AUTHORITY:**    4 *Modern Federal Jury Instructions* ¶ 75.01.

Accepted ☐        Accepted as Modified ☐        Rejected ☐

**b.** **Effect Of Inference On Burden Of Proof – Inference Against Defendant Does Not Shift Burden Of Proof**

The mere existence of an inference against Verizon does not relieve plaintiff of the burden of establishing her case by a preponderance of the evidence. If plaintiff is to obtain a verdict, you must still believe from the credible evidence that she has sustained the burden cast upon her. If she has failed, then your verdict must be for Verizon. If you should find that all of the evidence is evenly balanced, then plaintiff has failed to sustain the burden of proof and your verdict should be for Verizon.

If and only if you determine, after carefully weighing all the evidence, that the facts favor plaintiff by the standard I have articulated, then she has met the burden of proof.

**AUTHORITY:**    4 *Modern Federal Jury Instructions* ¶ 75.01.

Accepted ☐         Accepted as Modified ☐         Rejected ☐

4.    **Witnesses**

a.    **In General**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive, and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies and discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**AUTHORITY:**     *Federal Jury Practice & Instructions* § 105.01.

Accepted ☐     Accepted as Modified ☐     Rejected ☐

### b.    <u>Impeachment By Prior Inconsistent Statements</u>

A witness may be discredited or impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, inconsistent with what you hear the witness say during trial.

If you believe any witness has been impeached and, therefore, discredited, you should give that witness's testimony such weight, if any, that you feel it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust that witness's testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

You may consider the fact that a witness said something outside of court that is different from what they testify to inside of this courtroom in weighing the witness's credibility.  Unless the statement outside of court is under oath, you may not consider that out-of-court statement as proof of the truth of the prior statement.  If the prior inconsistent statement was given under oath in a prior trial, hearing, or deposition, then you may consider that statement both as it impacts the witness's credibility and for the truth of the prior statement.

**AUTHORITY:**    *Federal Jury Practice & Instructions* § 105.04; Fed. R. Evid. 105.

Accepted ☐    Accepted as Modified ☐    Rejected ☐

c.    __Expert Witnesses__

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to those whom we call "expert witnesses."  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Merely because an expert witness has expressed an opinion, however, does not mean that you must accept that opinion.  In weighing this opinion testimony, you may consider the witness's qualifications, opinions, and reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

In addition, before giving weight to an expert opinion, you must find that the expert actually is applying his or her specialized knowledge in formulating that opinion.  If you find that the expert is not using specialized knowledge, then his or her opinion is not deemed useful to you.  An opinion by an expert who is not acting as an expert is entitled to no weight.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that the

13

witness testifies regularly as an expert witness for one party and the income from such testimony represents a significant portion of the witness's income.

In addition, if you find that the testimony of different experts conflicts, you must resolve the conflict between those witnesses in the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses.  In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness's motive, if any, for testifying.

**AUTHORITY:**     Fed. R. Evid. 702; *Grant Thornton, LLP v. FDIC*, 297 F. Supp. 2d 880, 884 n.3 (S.D. W. Va. 2004); 4 *Modern Federal Jury Instructions* ¶ 76.01; *Federal Jury Practice & Instructions* § 104.40; 4 *Weinstein's Federal Evidence* § 702.04[5]-[6] (2d ed. 2003).

Accepted ☐     Accepted as Modified ☐     Rejected ☐

## II.    SUBSTANTIVE CIVIL INSTRUCTIONS:  AMERICANS WITH DISABILITIES ACT

I will now instruct you about the specific elements plaintiff must prove in order to succeed on each of her three claims against Verizon.

### A.    Administrative Prerequisites

The Americans with Disabilities Act ("ADA") requires that, before filing a lawsuit, a person claiming discrimination must first file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory action.  This means that the administrative charge must be filed within 300 days after the charging party had notice that the allegedly discriminatory action took place.  In this case, plaintiff filed her charge with the EEOC on July 8, 1999.  The 300-day window thus began on September 11, 1998.

Under the ADA, a person claiming discrimination can seek a remedy only for matters that fall within the applicable times.  Plaintiff's claims against Verizon can therefore only be based on allegedly discriminatory acts that occurred between September 11, 1998 and July 8, 1999.  Unless you find that plaintiff has proved a discriminatory act by Verizon between September 11, 1998 and July 8, 1999, along with the other elements of the claim I define for you, you must return a verdict in favor of Verizon.  However, acts prior to September 11, 1998 may be considered to the extent that they justify or do not justify the actions that Verizon took within the 300-day period.

**AUTHORITY:**       *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554-55 (1977); 42 U.S.C. § 2000e-5(e); American Bar Association, Employment and Labor Relations Law Committee, *Model Jury Instructions:  Employment Litigation* (hereafter "*Model Jury Instructions: Employment Litigation*") § 1.01[1] (1994).

Accepted ☐    Accepted as Modified ☐       Rejected ☐

15

### B.    <u>Plaintiff's Claims – Common Elements</u>

Plaintiff has brought three different claims against Verizon, all of which are governed by the ADA.  Plaintiff claims that she is disabled due to a mental illness, and that Verizon discriminated against her in three different ways during her employment with the company (Claims 1, 2, and 3).  You must decide each claim separately.  In order for you to enter a verdict in plaintiff's favor on any of her claims, you must find that she has proved all of the "elements" of the claim by a preponderance of evidence.  For each claim, if plaintiff does not prove the applicable elements, you must find for Verizon on that claim. While each of these claims has unique elements, there are three common elements that she must prove in order to prevail on any claim.

In order to prevail on *any* of her claims, plaintiff must first prove all of the following three elements by a preponderance of the evidence as I have defined that term:

(i) that she was a "qualified individual" under the ADA;

(ii) that she was "disabled"; and

(iii) that she was harmed in some way by Verizon's actions, and therefore deserves monetary damages.

If plaintiff proves all three of these elements by a preponderance of the evidence, then you should consider the elements of her individual claims in deciding whether she prevails on any or all of those claims.  If plaintiff fails to prove even one of these elements, you should not consider the elements of her individual claims, because of all of her claims fail and you must enter a verdict for Verizon.

**AUTHORITY:**    *Baird v. Rose*, 192 F.3d 462, 466, 470 (4th Cir. 1999); *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 212 (4th Cir. 1994); 5 *Modern Federal Jury Instructions* ¶ 88A.01.

Accepted ☐    Accepted as Modified ☐    Rejected ☐

### 1.     <u>Qualified Individual</u>

Under the ADA, the term "qualified individual" has special meaning.  Although you may think you understand what it means to be "qualified" for a job, you must apply the meaning assigned to it under the ADA.  You cannot just use your common sense interpretation of what the term "qualified" means.

In order to prove that she was a qualified individual under the ADA, plaintiff must prove two factors by a preponderance of the evidence:

First, she must show that she satisfied the requirements (such as skills and experience) for the position.  This means that plaintiff must have had the required skill, experience, education, and other job-related requirements of the employment position involved in this case.  If she cannot make out this first element, plaintiff was not a qualified individual with a disability, and her claim must be denied.

Second, plaintiff must show that she was able to perform the essential functions of the position she held, with or without a reasonable accommodation.

Being able to perform the "essential functions" of a job means more than just having the appropriate technical skills and experience on paper:  it also includes being willing to perform the functions of a position and being able to get along with co-workers, supervisors, and customers, to the extent that is necessary to perform a particular job.  Furthermore, the failure to follow workplace rules of conduct makes an employee unqualified under the ADA.  The ADA does not require an employer to tolerate an employee's improper workplace behavior, even if it is caused by the employee's disability.  This means that you must determine whether plaintiff could perform the essential functions of her position and was performing the job at a level that met her employer's legitimate expectations.

To help you determine whether a particular function was essential to plaintiff's position – so that you can determine whether plaintiff was able to perform that function (and therefore "qualified" under the ADA) – you should consider:  (i) the employer's judgment, (ii) written job descriptions; (iii) amount of time spent performing the function; (iv) the consequences of not performing the function; (v) the terms of a collective bargaining agreement; and (vi) the work experience of other workers in the same or similar jobs.  If you find that plaintiff could not perform the essential functions of the position, with or without a reasonable accommodation, you must enter a verdict for Verizon.

A "reasonable accommodation" is a change that presently or in the near future will enable a disabled employee to perform the essential functions of the job.  A reasonable accommodation must be reasonable in terms of both cost and efficiency.  An employer is not required to eliminate or alter essential functions of the position as a reasonable accommodation.

If plaintiff proves, by a preponderance of the evidence, that she was a "qualified individual," then you should consider the other elements of her claims in deciding whether she prevails on any or all of those claims.  If plaintiff fails to prove that she was a "qualified individual," you should not consider the remaining elements of her claims, because all of her claims fail and you must enter a verdict for Verizon.

**AUTHORITY:**    *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999); *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999); *Murphy v. United Parcel Serv.*, 527 U.S. 516 (1999); *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002); *Grenier v. Cyanamid Plastics*, 70 F.3d 667, 674-75 (1st Cir. 1995); *EEOC v. Browning-Ferris, Inc.*, 262 F. Supp. 2d 577, 583, 586 (D. Md. 2002); *Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 14-15 (D.D.C. 2000); *Miles v. Gen. Servs. Admin.*, 5 AD Cases 3519 (E.D. Pa. 1995); *Palmer v. Circuit Ct.*, 905 F. Supp. 499 (N.D. Ill. 1994), *aff'd*, 117 F.3d 351 (7th Cir. 1997); 42 U.S.C. § 12102(2); 42 U.S.C. § 12111(8); 29 C.F.R. §§ 1630.2(m), (n)(3); 5 *Modern Federal Jury Instructions* ¶ 88A.03; *EEOC Compliance Manual* § 902.2 n.11; *Enforcement Guidance on the ADA & Psychiatric Disabilities* § 30; *Little v. FBI*, 1 F.3d 255, 259 (4th Cir. 1993); *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. 1999).

Accepted ☐      Accepted as Modified ☐      Rejected ☐

2. **Disabled**

a. **Definition Of Disabled Under The ADA**

Like the term "qualified," the term "disabled" under the ADA is a special term with a special meaning. It does not have the same meaning that you or I would use in day-to-day conversation. Under the ADA, an individual was disabled if she can prove one of the following three conditions by a preponderance of the evidence:

(i) she was "actually disabled" as I will further define that term;

(ii) she had a record of disability; or

(iii) she was regarded by her employer as having a disability.

If the plaintiff proves any one of these three conditions by a preponderance of the evidence, you should consider whether she has proved the other elements of her claims. If she has not proved one or more of these conditions, she will have failed to prove she is disabled, in which case you should not consider the other elements of her claims but rather you should render a verdict in favor of Verizon.

**AUTHORITY:**      42 U.S.C. § 12102.

Accepted ☐      Accepted as Modified ☐      Rejected ☐

**b.**   **"Actually" Disabled**

In order to establish that she was "actually disabled" under the ADA, plaintiff must prove, by a preponderance of the evidence, that she had a physical or mental impairment that substantially limited one or more of her major life activities.

Plaintiff in this case claims that she was disabled due to a mental condition.  In order to prove that she was "actually disabled," she must prove by a preponderance of the evidence that:

(i) she suffered from a mental condition that qualifies as an "impairment;"

(ii) that impairment substantially limited her;

(iii) with regard to a major life activity.

In determining whether plaintiff has satisfied her burden in proving she was actually disabled, you must determine whether she has proved by a preponderance of the evidence that she truly suffered from a mental "impairment."  Although mental conditions can in some situations qualify as "impairments" under the ADA, personality traits such as having poor judgment, being paranoid, disgruntled, oppositional, difficult to interact with, having a tendency to engage in irresponsible behavior, or having a quick temper are not impairments covered by the ADA.

If you determine that plaintiff did suffer from an impairment, you must then determine whether the impairment "substantially limited" plaintiff with regard to her ability to conduct a "major life activity," as those terms are defined under the ADA.  To be "substantially limited" means to be significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  To decide whether plaintiff's mental condition "substantially limited" her ability to perform a major life activity, you should consider:  (i) the nature and severity of the impairment;

21

(ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact of the impairment. Temporary restrictions are not considered substantially limiting. Moreover, the mere possibility that an impairment will recur is not sufficient to establish that the condition is substantially limiting. If plaintiff was able to compensate for or adapt to her medical conditions, she was not "substantially limited" under the ADA.

"Major life activities" are such basic functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. The ability to get along with other people, such as co-workers, is not a major life activity, nor is the ability to work a particular shift. Although working is a major life activity, working a specific job is not a major life activity – what is important is whether a disability substantially interferes with the ability to perform a broad range of jobs, not just one job in particular. If plaintiff fails to prove by a preponderance of the evidence that she was actually disabled from performing her own job without an accommodation, she cannot show that she was substantially limited in the major life activity of working.

Finally, in deciding if plaintiff was disabled, you must not make general conclusions about the effects of her impairment or let stereotypes about the disabled cloud your deliberations. You should consider only how her symptoms actually affected her ability to perform major life activities.

**AUTHORITY:**    *Davis v. Univ. of N.C.*, 263 F.3d 95, 100 n.4 (4th Cir. 2001); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 302-03 (4th Cir. 1998); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); 5 *Modern Federal Jury Instructions* ¶ 88A.02; *Federal Jury Practice & Instructions* § 172.30; 42 U.S.C. § 12102; 29 C.F.R. §§ 1630.2(h) app., (j)(1)(ii); EEOC Compliance Manual § 902.2(c)(4); *Watson v. City of Miami*, 177 F.3d 932, 935 (11th Cir. 1999); *Soileau v. Guilford of Me.*, 105 F.3d 12, 15 (1st Cir. 1997); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999); *Perkins v. St. Louis County Water Co.*, 160 F.3d 446, 448 (8th

Cir. 1998); *Serow v. Redco Foods, Inc.*, 187 F. Supp. 2d 47, 51 (N.D.N.Y. 2002); *Rhoads v. FDIC*, 257 F.3d 373, 387 (4th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002).

Accepted ☐    Accepted as Modified ☐    Rejected ☐

### c.    "Regarded As" Disabled

In order to demonstrate that she was "regarded as" disabled, plaintiff must prove, by a preponderance of the evidence, that she:  (i) had a physical or mental impairment that did not substantially limit a major life activity, but her employer treated the impairment as being substantially limiting; (ii) had a physical or mental impairment that substantially limited a major life activity only as a result of the attitudes of others toward such impairment, or (iii) had none of the above-mentioned impairments, but was nonetheless treated by her employer as having an impairment that substantially limited a major life activity.  In determining if plaintiff has met any of these three conditions, you must apply the same definitions for the terms "impairment," "substantially limited," and "major life activity" that you used in determining whether plaintiff was "actually" disabled.

Note that in order to establish that Verizon "regarded" plaintiff as having a disability under any of the three different scenarios, plaintiff must prove, by a preponderance of the evidence, that (i) Verizon actually knew about her condition – uncertainty about her condition is not sufficient; (ii) Verizon not only perceived her as disabled, but actually treated her as being substantially limited in a major life activity as a practical matter, for example, by limiting her job responsibilities; and (iii) the perception of plaintiff as disabled caused Verizon to take adverse employment action against her.

**AUTHORITY:**    5 *Modern Federal Jury Instructions* ¶ 88A.02; *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 704 (4th Cir. 2001); *Davis v. Univ. of N.C.*, 263 F.3d 95, 100 n.4 (4th Cir. 2001); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 302-03 (4th Cir. 1998); 42 U.S.C. § 12102(2)(C); *EEOC Compliance Manual* §§ 902.8(a), (f); *Mayers v. Wash. Adventist Hosp.*, 131 F. Supp. 2d 743, 750 (D. Md. 2001).

Accepted ☐    Accepted as Modified ☐    Rejected ☐

### d.    "Record Of" A Disability

Plaintiff had a "record of" a disability under the ADA if she proves, by a preponderance of the evidence, that (i) she had a history of, or was misclassified as having; (ii) a disability; and (iii) Verizon relied on that record in treating her as substantially limited in a major life activity.

In order to assess whether the medical condition upon which plaintiff bases her "record of" claim qualifies as a "disability" under the ADA, you must use the same criteria described previously to determine whether plaintiff was "actually" disabled.  That is, you must determine whether the condition in question was an "impairment," that "substantially limited" plaintiff with respect to a "major life activity," as I previously defined those terms for you.  For example, if plaintiff had a record of an impairment that was *not* substantially limiting (for example, a brief hospitalization), she was not "disabled" under the "record of" standard.  Moreover, if plaintiff's impairment did not prevent her from working, she cannot be said to have had a record of disability, if the major life activity in question was that of "working."

To demonstrate that Verizon relied on her "record of" disability, plaintiff must prove, by a preponderance of the evidence, that it (i) was aware of her history of disability and (ii) treated her as disabled as a practical matter.

**AUTHORITY:**    *Davis v. Univ. of N.C.*, 263 F.3d 95, 100 n.4 (4th Cir. 2001); 5 *Modern Federal Jury Instructions* ¶ 88A.02; *Federal Jury Practice & Instructions* § 172.37; 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(k) app. at 351; *EEOC Compliance Manual* § 902.7 & Ex. 1; *Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152 (10th Cir. 2002); *Baffoe v. W.H. Stewart Co.*, No. 99-6199, 2000 U.S. App. LEXIS 15134, at *13 (10th Cir. Apr. 24, 2000); *Lawson v. CSX Transp.*, 245 F.3d 916, 927 n.10 (7th Cir. 2001).

Accepted ☐    Accepted as Modified ☐    Rejected ☐

### 3. __Plaintiff Was Harmed By Verizon's Actions__

To prevail on any of her claims, plaintiff must prove, by a preponderance of the evidence, that she was (i) harmed; (ii) by Verizon's actions.  In that regard, the harm must be a result of Verizon's actions, not the actions of another, such as the unauthorized actions of a co-worker.  If plaintiff proves, by a preponderance of the evidence, that she was harmed, and that that harm was caused by Verizon's actions, then you should consider the other elements of her claims in deciding whether she prevails on any or all of those claims.  If plaintiff fails to prove that she was harmed by Verizon's actions, you should not consider the remaining elements of her claims, because of all of her claims fail and you must enter a verdict for Verizon.

**AUTHORITY:**      4 *Modern Federal Jury Instructions* ¶ 77.01; 5 *Modern Federal Jury Instructions* ¶ 88A.03; *Federal Jury Practice & Instructions* § 172.70.

Accepted ☐    Accepted as Modified ☐    Rejected ☐

### C.    Specific Elements For Discrimination Claims

#### 1.    Disparate Treatment Claim 1:  Wrongful Termination

In Count I, plaintiff claims that Verizon discriminated against her by terminating her employment because of her disability.  This claim is what is called a "disparate treatment" claim under the ADA.  In other words, plaintiff claims she was improperly treated differently than non-disabled employees.

To prove a "disparate treatment" claim, plaintiff must prove, by a preponderance of the evidence:

(i) that she was a qualified individual with a disability who suffered harm due to Verizon's actions; and

(ii) that she suffered an adverse employment action due to intentional discrimination solely on the basis of disability.

I have already explained the first common element to you.

In order for plaintiff to establish the second element, plaintiff must prove, by a preponderance of the evidence, that Verizon, in terminating her, acted intentionally, and *because of* her disability.  This means that plaintiff's disability was a factor that made a difference in the decision to take this action.  Thus, this element is not satisfied if you find that Verizon would have taken the same action in the absence of plaintiff's disability.  An employer may not terminate an employee because of a disability, but may terminate the employee because the employee is unable to do the job, even if the reason the employee cannot do the job is because of a disability.  An employer may also terminate an employee for unacceptable behavior in the workplace, even if that behavior was a result of the employee's disability.

When deciding if plaintiff has proved that she was intentionally terminated because of her disability, you must consider Verizon's proffered legitimate, non-discriminatory reason for

its actions. Plaintiff's subjective belief that she was terminated because of a disability is not enough to establish this element of her disparate treatment claim. Verizon denies that it discriminated against plaintiff, and claims that it terminated her employment for legitimate reasons, including misconduct, poor performance, and insubordination, after lesser disciplinary actions had failed to result in appropriate behavior and job performance by the plaintiff. Under the law, Verizon is not required to prove that its reasons for taking these employment actions with respect to plaintiff were good, or even justifiable. Nor must they be reasons with which you would necessarily agree. Verizon is only required to state a non-discriminatory reason for its decision to terminate plaintiff's employment. Verizon may make a bad business decision, or a decision that makes no sense to you, as long as the decision was not made in order to discriminate against plaintiff because of her alleged disability. In addition, even if you do not believe the reasons Verizon gives were the real reasons for the actions it took, you may not find in favor of plaintiff unless you also find that the real reason was her disability.

If plaintiff proves both elements of her claim by a preponderance of the evidence, you should find in her favor on that claim. If she fails to prove both elements of her disparate treatment claim by a preponderance of the evidence, you must return a verdict for Verizon on that claim.

**AUTHORITY:**      5 *Modern Federal Jury Instructions* ¶ 88A.04; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298 (4th Cir. 1998); *Baird v. Rose*, 192 F.3d 462, 466, 470 (4th Cir. 1999); *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 212 (4th Cir. 1994); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 (4th Cir. 2002).

Accepted ☐     Accepted as Modified ☐      Rejected ☐

### 2.    Disparate Treatment Claim 2 – Wrongful Suspension and Discipline

In Count II, plaintiff claims that Verizon discriminated against her by imposing suspensions and other disciplinary measures upon her because of her disability. This claim is also called a "disparate treatment" claim under the ADA. In other words, plaintiff asserts that she was improperly treated differently than non-disabled employees.

To prove a "disparate treatment" claim for wrongful discipline, plaintiff must prove, by a preponderance of the evidence:

(i) that she was a qualified individual with a disability who suffered harm due to Verizon's actions; and

(ii) that she suffered an adverse employment action due to intentional discrimination solely on the basis of disability.

I have already explained the first common element to you.

In order for plaintiff to establish the second element, plaintiff must prove, by a preponderance of the evidence, that Verizon, in suspending or otherwise disciplining her, acted intentionally, and *because of* her disability. This means that plaintiff's disability was a factor that made a difference in the decision to take this action. Thus, this element is not satisfied if you find that Verizon would have taken the same action in the absence of plaintiff's disability. An employer may not discipline an employee because of a disability, but may discipline the employee because the employee is unable to do the job, even if the reason the employee cannot do the job is because of a disability. An employer may also discipline an employee for unacceptable behavior in the workplace, even if that behavior was a result of the employee's disability.

When deciding if plaintiff has proved that she was intentionally suspended or disciplined because of her disability, you must consider Verizon's proffered legitimate, non-discriminatory

reason for its actions.  Plaintiff's subjective belief that she was suspended and disciplined because of a disability is not enough to establish this element of her disparate treatment claim. Verizon denies that it discriminated against plaintiff, and claims that it suspended and disciplined her for legitimate reasons, including misconduct, poor performance, and insubordination.  Under the law, Verizon is not required to prove that its reasons for taking these employment actions with respect to plaintiff were good, or even justifiable.  Nor must they be reasons with which you would necessarily agree.  Verizon is only required to state a non-discriminatory reason for its decision to discipline plaintiff.  Verizon may make a bad business decision, or a decision that makes no sense to you, as long as the decision was not made in order to discriminate against plaintiff because of her alleged disability.  In addition, even if you do not believe the reasons Verizon gives were the real reasons for the actions it took, you may not find in favor of plaintiff unless you also find that the real reason was her disability.

If plaintiff proves both elements of her claim by a preponderance of the evidence, you should find in her favor on the claim.  If she fails to prove both elements of her disparate treatment claim by a preponderance of the evidence, you must return a verdict for Verizon on that claim.

**AUTHORITY:**        5 *Modern Federal Jury Instructions* ¶ 88A.04; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298 (4th Cir. 1998); *Baird v. Rose*, 192 F.3d 462, 466, 470 (4th Cir. 1999); *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 212 (4th Cir. 1994); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 (4th Cir. 2002).

Accepted ☐    Accepted as Modified ☐       Rejected ☐

### 3.    Reasonable Accommodation

In Count III, plaintiff alleges that Verizon failed to provide her with a reasonable accommodation in violation of the ADA.  In order to succeed on this claim, plaintiff must prove four elements:

(i) that she was a qualified individual with an actual disability who suffered harm due to Verizon's actions;

(ii) that Verizon had notice of her disability;

(iii) that she could have performed the essential functions of her position with a reasonable accommodation; and

(iv) that she requested a reasonable accommodation from Verizon and Verizon refused to provide it.

I have already explained the first common element to you.  However, for purposes of this claim, plaintiff must show by a preponderance of the evidence that she was actually disabled.  Being "regarded as" having a disability or having a "record of" disability is not sufficient to show that plaintiff was disabled for the purposes of this claim.  If plaintiff does not prove, by a preponderance of the evidence, that she was "actually" disabled, you must return a verdict in favor of Verizon on this claim.

Second, an employer must know that its employee is disabled before it must provide accommodations.  Unless plaintiff proves, by a preponderance of the evidence, that Verizon knew that she suffered from an existing specific disability, you must find for Verizon on plaintiff's "reasonable accommodation" claim.

Third, plaintiff must demonstrate that a "reasonable accommodation" would have rendered her capable of performing the "essential functions" of her position, as that term was previously defined.  The phrase "reasonable accommodation" has a special meaning under the

ADA that you must apply.  A reasonable accommodation is a change that presently or in the near future will enable a disabled employee to perform the essential functions of the job.  A reasonable accommodation must (i) be reasonable in terms of both cost and efficiency; (ii) not impose an undue hardship on the business, in terms of financial, administrative, or any other burdens that would be placed on the employer if required to make a particular accommodation; (iii) be reasonable in terms of its impact on other employees; and (iv) not require the employer to eliminate or alter essential functions of the position (*e.g.*, by eliminating contact with co-workers and customers where such contact is an essential function of the job).  Thus, the employer is not required to reallocate essential job duties to other employees, or to reduce productivity standards to accommodate the plaintiff.  Instead, plaintiff must demonstrate that the "reasonable accommodation" she claims Verizon should have given her would have actually enabled her to perform all of the essential functions of the job.  Moreover, it is not enough that the alleged reasonable accommodation might have made her generally better off or happier, if it would have been ineffective in rendering her capable of fulfilling the essential functions of her position and meeting her supervisor's legitimate job expectations.

Finally, plaintiff must prove, by a preponderance of the evidence, that she actually asked for the reasonable accommodation she now claims would have made it possible for her to perform her job, and that Verizon refused to provide it.  Therefore, you may only consider accommodations that plaintiff actually asked for during her employment with Verizon – and that Verizon allegedly refused to grant her – not any accommodations she argues Verizon should have provided to her without her asking for them.

If plaintiff fails to prove one of the four elements of her "reasonable accommodation" claim by a preponderance of the evidence, you must return a verdict for Verizon on that claim.

**AUTHORITY:**    *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002); *Baert v. Euclid Beverage*, 149 F.3d 626, 633 (7th Cir. 1998); *Bryant v. Better Business Bureau*, 923 F. Supp. 720, 737 (D. Md. 1996); 5 *Modern Federal Jury Instructions* ¶ 88A.03; *Gilday v. Mecosta County*, 124 F.3d 760, 764-65 (6th Cir. 1997); *Tan v. Runyon*, No. 95-1366, 1996 U.S. App. LEXIS 15826, at *8 (4th Cir. 1996).

Accepted ☐    Accepted as Modified ☐    Rejected ☐

III.    **DAMAGES**[1]

A.    **Damages:  General**

I will now give you instructions on how to calculate damages.  The fact that I do so does not mean that I think you should award any damages; that is entirely for you to decide.  In fact, if plaintiff was not harmed by Verizon's actions, she is entitled to no damages even if you find that Verizon did engage in discrimination.  If Verizon acted unlawfully but plaintiff was not harmed, she is not entitled to any damages.  Similarly, if plaintiff was harmed, but not by an unlawful act by Verizon, she is not entitled to any damages.

If you are convinced, by a preponderance of the evidence, that Verizon subjected plaintiff to discrimination and that she suffered harm as a result, then you must determine the amount of damages, if any, to which she is entitled.

The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or that she is reasonably likely to suffer in the near future.  In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will now instruct you on the three types of damages you may, but are not required to, award if you find Verizon liable:  economic compensatory damages, non-economic compensatory damages, and punitive damages.

---

[1] These instructions should only be given if and after the jury has determined that Verizon is liable for one or more of plaintiff's claims.

**AUTHORITY:**    4 *Modern Federal Jury Instructions* ¶ 77.01; *Federal Jury Practice & Instructions* § 172.70.

Accepted ☐    Accepted as Modified ☐    Rejected ☐

B.    __Economic Compensatory Damages__

Compensatory damages seek to make the plaintiff whole – that is, to compensate her for any damage that she has suffered.  You may not award compensatory damages more than once for the same injury; so for example, if you award plaintiff back pay for lost wages after being terminated from Verizon, you may not also award her back pay for lost wages as a result of Verizon's failure to accommodate her disability – plaintiff can only have lost one set of back wages.

You may award damages for economic losses that plaintiff proves, by a preponderance of the evidence, were caused by her termination, discipline or suspensions from work, or Verizon's failure to accommodate her disability, or all three, if you found those acts to be based on intentional discrimination because of disability.  It is plaintiff's burden to establish her economic losses with reasonable certainty using reliable estimates.  You may not speculate in determining whether plaintiff incurred any economic losses.  You thus may not base a damages award on conjecture, guesswork, or unsupported assumptions.

If you find that plaintiff suffered economic losses as a result of disability discrimination on the part of Verizon you may award damages in the form of back pay and/or front pay to compensate for those losses.[2]  I will now instruct you on back pay and front pay damages.

**Back Pay**

You may award plaintiff back pay in an amount that reasonably compensates her for any lost wages and benefits that she would have received up to the time of this trial if Verizon had not discriminated against her.  For claim one, which alleges discrimination in the form of termination of employment, this amount is the wages and benefits plaintiff would have earned if

---

[2]    By submitting this instruction on front pay, Verizon does not waive its argument that front pay, including whether front pay is recoverable and, if so, the amount, is an issue for the Court and not the jury.

she had stayed at Verizon, minus any wages or benefits she did earn after leaving Verizon, or could have obtained by making a reasonable effort.  For claim two, which alleges discrimination in the form of suspensions from work, this amount is the wages and benefits, if any, that plaintiff lost as a result of the suspensions.  For claim three, which alleges failure to accommodate, this amount is any additional wages and benefits, if any, plaintiff would have earned if Verizon had accommodated her disability.  Back pay damages may not include amounts to compensate plaintiff for pain, suffering, humiliation, mental anguish, or emotional distress.  Nor may a back pay award include speculative economic losses.

You must cut off any back pay award at any point at which you find that plaintiff either obtained substantially equivalent employment or ceased searching for substantially equivalent employment.  In addition, you must subtract from any back pay award the amount of any income or benefits (monetary or otherwise) that plaintiff has or should have received from other sources between the date that she claims she was discriminated against by Verizon through the time of this trial.  This is important, because plaintiff should not receive double or windfall awards and should not be placed in a better position than she would have been in had she remained employed by Verizon.

**Front Pay**

You may also award front pay, or pay from the time of trial to some point in the future, for certain future economic losses if you find that these were caused by a decision to separate plaintiff from employment based on a disability.  Whether plaintiff should be awarded front pay is within your sound discretion, and, in making this decision, you should consider all the facts and circumstances in this case.

Front pay is intended to assist a qualified employee who has been terminated due to discrimination during the transition to new employment of equal or similar status. Plaintiff does not have the right to receive a long-term front pay award that extends from the date of job separation until some anticipated retirement date in the future. Rather, front pay should only be awarded for an interim period, in circumstances where the separated employee has employable and productive years ahead. Of course, as I stated previously, if plaintiff is not qualified to maintain employment, she would not be entitled to recover from Verizon at all.

Any award of front pay that you may make must be limited to the amount that is necessary to place plaintiff in the position that she would have occupied had she not been separated from employment with Verizon. Front pay may not include amounts to compensate plaintiff for pain, suffering, humiliation, mental anguish, or emotional distress. Nor may a front pay award include speculative economic losses.

In deciding whether plaintiff is entitled to an award of front pay, you should consider, among other factors, (i) the availability of alternative employment from employers other than Verizon; (ii) plaintiff's skills, education, and training; (iii) her ability and prospects to obtain another similar position; (iv) the period of time that it should take her to obtain such a position; (v) her position with her current employer and the length of that employment; (vi) the number of years remaining before she would most probably retire; and (vii) her duty to mitigate, or reduce, her damages.

You should cut off any front pay award at any date by which you find that plaintiff should have obtained substantially equivalent employment. In addition, you should subtract from any front pay award the amount of any income or benefits (monetary or otherwise) that you believe plaintiff should receive from her current employment and any future employment.

**General Guidelines**

In determining the amount of any damages award, you should be guided by dispassionate common sense.  Do not let bias, prejudice, or sympathy play any part in your decision.  You must use discretion in fixing the amount of damages, drawing reasonable inferences from the facts in evidence.  As I have already mentioned, you may not base a damage award on speculation or conjecture.  Rather, you should assess the amount you find to be justified by a preponderance of the evidence and based only on reliable estimates that are made with reasonable certainty.  The law provides that only *actual damages* are recoverable.

**AUTHORITY:**        4 *Modern Federal Jury Instructions* ¶ 77.01; *Federal Jury Practice & Instructions* § 172.75; *Model Jury Instructions:  Employment Litigation* § 1.07.

Accepted ☐     Accepted as Modified ☐     Rejected ☐

C.    **Mitigation Of Damages**

Any person who claims damages as a result of an alleged wrongful act on the part of

another has a duty under the law to mitigate those damages – that is, to take advantage of any

reasonable opportunity that she may have had under the circumstances to reduce or minimize the

loss or damage.  In this case, this duty to mitigate means that plaintiff had, and continues to have,

a duty to use reasonable efforts to find "substantially equivalent employment" after she was

separated from her position with Verizon.  Substantially equivalent employment is employment

that affords similar compensation, job responsibilities, working conditions, promotional

opportunities, and status.  When I say that plaintiff must use reasonable efforts to find

substantially equivalent employment, this means that after her termination, she must continue to

make reasonable efforts under the circumstances to find a position that is substantially equivalent

to the one she formerly held at Verizon.  If you find, at any point following her separation from

employment with Verizon, that plaintiff stopped exercising reasonable efforts to look for

substantially equivalent employment, then plaintiff's back pay must be cut off at that point.

You are instructed that once a person finds substantially equivalent employment, the

person's entitlement to economic damages ends.  Thus, in the case of her termination claim, if

you find that plaintiff has current employment that is substantially equivalent to the position that

she formerly held at Verizon, her economic damages terminate as of the date that she began

working for her current employer.

Because a person's duty to mitigate her damages is a continuing one, plaintiff's

entitlement to economic damages also cuts off if she at any time ceases using reasonable efforts

to search for substantially equivalent employment.  Therefore, because plaintiff's duty to

mitigate her damages by diligently seeking substantially equivalent employment is a continuing

duty, she must continue to use reasonable efforts to find substantially equivalent employment, even if she has accepted interim employment that is not substantially equivalent.

Therefore, if you find that Verizon violated the law by intentionally discriminating against plaintiff on the basis of her disability, then plaintiff is entitled to recover damages only for the period of time during which she has made reasonable efforts to mitigate her damages by seeking substantially equivalent employment.  If you find that Verizon proved that plaintiff did not reasonably mitigate her damages during some or all of the time after her separation from Verizon, then she cannot recover damages – either back pay or front pay – for that period.  Also, if you find that plaintiff's current employment is substantially equivalent to the position that she formerly held at Verizon, her economic damages cease as of the date she began working for her current employer.  Even if you find that her employment since termination has not been substantially equivalent, you must nonetheless subtract from any damages award the amounts that she did earn.

**AUTHORITY:**    4 *Modern Federal Jury Instructions* ¶ 77.01; *Federal Jury Practice & Instructions* § 172.75; *Model Jury Instructions:  Employment Litigation* § 1.07[5].

Accepted ☐    Accepted as Modified ☐    Rejected ☐

**D.**    **Other Compensatory Damages**

If you find that Verizon intentionally discriminated against plaintiff, the law allows you, but does not require you, to award compensatory damages for non-economic harms, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.  In order to recover this type of compensatory damages, plaintiff must establish, by a preponderance of the evidence, that she has actually experienced emotional pain and suffering as a result of intentional discrimination by Verizon.  If plaintiff cannot establish that she has experienced emotional pain and suffering as a result of intentional discrimination by Verizon, you may not award her compensatory damages.

**AUTHORITY:**        42 U.S.C. § 1981a(b)(3).

Accepted ☐    Accepted as Modified ☐    Rejected ☐

E.    **Punitive Damages**

If you find that Verizon intentionally discriminated against plaintiff, the law allows you, but does not require you, to award punitive damages. You may only award punitive damages if plaintiff demonstrates, by a preponderance of the evidence, that Verizon acted with "malice" or "reckless indifference" to her legal rights.

It is important that you remember that the terms malice and reckless indifference do not refer to an employer's awareness that it is engaging in discrimination, but to its knowledge that it may be acting in violation of the law. Therefore, unless you find that Verizon discriminated with the distinct belief that its conduct was unlawful, you should refuse to award punitive damages.

Your job does not end with a finding of malice or reckless indifference on the part of certain individuals. To establish an entitlement to punitive damages, plaintiff must impute liability for punitive damages to Verizon. To do so, she must prove, by a preponderance of the evidence, that the discriminatory actions she attributes to employees of Verizon were authorized or ratified by Verizon. Thus, plaintiff must demonstrate that Verizon knew of those actions and yet permitted them to occur.

Verizon may avoid liability for punitive damages by demonstrating that the actions taken in regard to plaintiff were contrary to its good faith efforts to comply with the law. Therefore, if you find that Verizon has established a non-discrimination policy covering its employees and has made reasonable, good faith efforts to enforce that policy so as to comply with the law, you should refuse to award punitive damages.

I further instruct you that punitive damages are appropriate only for especially shocking and offensive misconduct, and may be awarded only after cautious and thoughtful consideration of all of the evidence in this case.  As I have indicated, you need not award any punitive damages if you find that such an award is not warranted by Verizon's conduct.  If you do award punitive damages, you should fix the amount using calm discretion and sound reason.  You should take into consideration the character and degree of the wrong, as shown by the evidence, and the necessity of preventing similar wrongs.  You must not be influenced by sympathy or by dislike of any party in the case.  Unless you find that the standard for awarding punitive damages, as I have outlined it, has been met by competent proof presented by plaintiff, you may not award punitive damages.

**AUTHORITY:**        *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999); 42 U.S.C.
§ 1981a(b)(1); 4 *Modern Federal Jury Instructions* ¶ 77.01; *Federal Jury Practice & Instructions* § 172.74; *Model Jury Instructions:  Employment Litigation* § 1.07[4].

Accepted ☐    Accepted as Modified ☐    Rejected ☐

**F.**     **Good Faith Effort At Reasonable Accommodation**

I have instructed you that plaintiff is seeking damages for front and back pay, for

emotional suffering, and for punitive damages.

I instruct you that you may not award the plaintiff front pay, damages for emotional

suffering, or punitive damages if Verizon proves by a preponderance of the evidence that it made

a good faith effort, in consultation with plaintiff, to identify and make a reasonable

accommodation that would allow plaintiff to fulfill the essential functions of her position, and

would not constitute an undue hardship on the operation of the Verizon's business.

**AUTHORITY:**     42 U.S.C. § 1981a(a)(3); 4 *Modern Federal Jury Instructions* ¶ 77.01.

Accepted ☐     Accepted as Modified ☐     Rejected ☐

**IV.    JURY DELIBERATIONS - SELECTION OF FOREPERSON; SPECIAL
VERDICT FORM; RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY;
COMMUNICATIONS WITH COURT**

When you go to the jury room, you should first select one of your members to act as your foreperson.  The foreperson will preside over your deliberations and will speak for you here in Court.  You may take these jury instructions into the jury room with you, as well as exhibits that the Court has admitted into evidence.

A verdict form has been prepared for your convenience.  The verdict form provides a list of questions that you must answer.  You will take the verdict form to the jury room and, when you have reached unanimous agreement, you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

It is proper to add the caution that nothing said in these instructions and nothing in any verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  The verdict is your sole and exclusive duty and responsibility.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the bailiff, who will bring it to my attention.  I will then respond as promptly as possible, either in writing or by having you return to the courtroom, so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.  I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to conduct your deliberations.

**AUTHORITY:**       *Federal Jury Practice & Instructions* §§ 106.04-08.

Accepted ☐    Accepted as Modified ☐       Rejected ☐

Dated: September 22, 2004                     Respectfully submitted,


_____/s/_____
Ira H. Raphaelson, Bar No. 012849
Martha Dye, Bar No. 015057
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, DC 20006
202-383-5300 phone
202-383-5414 fax

Attorneys for Defendant