1  that all psychiatrists go through with respect to
2  forensic psychiatry?
3       A.  It's part of a psychiatry residency
4  program. There is a course in forensic psychiatry
5  and different institutions provide more or less
6  training in that. In that course they talk about
7  expert testimony and they talk about issues that
8  relate to psychiatry frequently and the legal arena
9  areas that you may be asked to testify and how to
10 do with subpoenas, things along those lines.
11      Q.  And you took that course?
12      A.  Yes.
13      Q.  So when did you actually agree to become
14 an expert or to act as an expert in the case, this
15 case?
16      A.  It got formally agreed until about two
17 days ago until after WellSpan's attorney -- not
18 one of WellSpan's attorneys -- Maggie Finkelstein,
19 I guess spoke to you or maybe to you and felt that
20 that would be a reasonable thing to do. Otherwise
21 I was trying to maintain a position as simply a
22 fact witness.
23      Q.  So when Mr. Burkhardt designated you as
24 an expert witness back in November 2002, it was
25 without your knowledge or your consent?

1  lawsuit with Mr. Burkhardt, being in contact with
2  Mr. Burkhardt, etc., how did that come about?
3      MR. BURKHARDT: I'm going to object, this
4  was asked and answered before. Go ahead and answer
5  how did that come about.
6      THE WITNESS: Ms. Darcangelo indicated
7  she had retained an attorney in Maryland that came
8  up for several months or a year and at some point
9  Mr. Burkhardt asked for some information, requested
10 some information from me.
11 BY MS. DYE:
12    Q. Did you speak with him on the phone?
13    A. I have spoken with him on the phone, yes.
14    Q. The first contact with him was it the
15 letter that we looked at or did he speak with you
16 on the phone?
17    A. Probably a letter. I don't recall we
18 spoke on the phone first, I think we probably spoke
19 in response to a letter.
20     MR. BURKHARDT: Just to clarify, my
21 objection is continuing because we went through all
22 of this in the morning, so I'm objecting.
23 BY MS. DYE:
24    Q. Basically I'm trying to get on the record
25 all communications you've had with Mr. Burkhardt

Page 190

```
 1  relating to this case and I don't know that we've
 2  gotten them all because we kind of looked at
 3  certain letters and we looked at certain things.
 4      A.  Sure.  There were a few letters from Mr.
 5  Burkhardt requesting information and then after
 6  receiving a letter, I think on at least two
 7  occasions I called Mr. Burkhardt to state what I
 8  felt comfortable with saying and not saying.
 9         It was my contention that I should not be
10  an expert, I should be a fact witness, if you
11  needed me at all.  Although my purpose was not to
12  be needed at all.  And until very recently until
13  this week, I did not think it would be appropriate
14  to be an expert witness.
15         And although I didn't have any strong --
16  the more I thought about it, I wasn't sure why I
17  felt that way because in this case the patient
18  wanted me to be an expert and I'm not sure that my
19  testimony would be different one way or the other.
20  So I asked hospital counsel to give me advice on it
21  and their advice after speaking to one or both of
22  you was go ahead and be the expert, your testimony
23  would probably be the same either way.
24      Q.  Other than these phone calls in which you
25  discussed with him whether or not you should be the
```