IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCES DARCANGELO,

        Plaintiff,

v.

VERIZON MARYLAND INC.,

        Defendant.

No. WDQ-02-816 (Civ.)

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPOINT EXPERT

Defendant Verizon Maryland Inc. ("Verizon"), by and through its undersigned counsel, respectfully submits this Memorandum in Opposition to Plaintiff's Motion to Appoint Expert and states as follows[1]:

### INTRODUCTION

Whether for improper strategic reasons or through inexcusable negligence, plaintiff's effort to designate a new expert on the eve of trial is impermissible trial by ambush. *See MaCauley v. Anas,* 321 F.3d 45, 50 (1st Cir. 2003) (recognizing that important purpose of expert disclosure rules is to "avoid trial by ambush"); *Congressional Air v. Beech Aircraft Corp.,* 176 F.R.D. 513, 516 (D. Md. 1997) (allowing parties to change the nature and scope of expert's opinions after court-imposed deadlines would encourage the type of "trial by ambush" that the 1993 revision of the Federal Rules attempted to eliminate). Plaintiff's requested relief cannot be accommodated in the remaining time before trial, and a continuance, normally intended to cure

---

[1] On March 7, 2005, plaintiff filed an Amended Motion to Name New Expert and for a Continuance of the May 16, 2005 Trial Date (the "Amended Motion"). Verizon files this response to plaintiff's original Motion to Appoint Expert as a precautionary measure in the event that plaintiff is denied leave to file her Amended Motion. However, Verizon reserves the right to respond to plaintiff's Amended Motion in the event that such leave is granted to plaintiff.

prejudice, would only exacerbate the prejudicial effect of adding a new expert at this point in the litigation.

In November 2002, plaintiff Frances Darcangelo, having failed to retain *any* psychiatric expert to testify in this lawsuit, designated Dr. Gary Zimberg as an expert without his prior consent or knowledge and in the face of his express desire not to serve in that role. Now, less than three months before trial, plaintiff asks this Court for leave to identify an entirely new expert on the grounds that Dr. Zimberg is unwilling to testify as an expert at trial. Verizon has already borne the costs of plaintiff's unauthorized designation of Dr. Zimberg and would be unfairly prejudiced if plaintiff were allowed to use that improper designation to bootstrap in an entirely new expert at this late date. Accordingly, Verizon asks this Court to deny plaintiff's Motion to Appoint Expert.

## BACKGROUND

Plaintiff's complaint alleges that Verizon violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") by (1) discriminating against plaintiff on the basis of her mental condition in disciplining and ultimately terminating her and (2) failing to provide her supposedly reasonable accommodations. On October 23, 2002, this Court issued a Scheduling Order which, in part, required plaintiff to identify her expert witnesses within thirty days of the Order. (Dkt. #13.)

Plaintiff, through counsel, apparently contacted Dr. Zimberg, who was at the time plaintiff's treating psychiatrist, about the possibility of serving as a psychiatric expert. (See Ex. 1, excerpts of Deposition of Gary Zimberg ("Zimberg Dep.," at 7-8, 19-21.) Dr. Zimberg responded by stating that he did not want to serve as an expert and suggested that plaintiff hire another. (*Id.*, at 20-21.) Plaintiff did not retain Dr. Zimberg at that time. (Zimberg Dep., at 19,

21-22.) Plaintiff nonetheless sent Verizon's counsel a letter dated November 25, 2002, formally designating Dr. Zimberg as her psychiatric expert. (Ex. 2.) Dr. Zimberg was not aware that plaintiff was formally designating him as an expert at that time and did not give his consent for plaintiff to do so. (Zimberg Dep., at 21).

On January 3, 2003, plaintiff's counsel sent Dr. Zimberg a letter asking him to prepare a report addressing various issues. (Ex. 3.) Dr. Zimberg responded by sending plaintiff's counsel a one-page letter dated January 17, 2003, setting forth some of the requested information, based on a "maybe a 30 minute review" of his records. (Zimberg Dep., at 107-08; Ex. 4.) Dr. Zimberg did not consider the letter to be an expert report. (Zimberg Dep., at 106-07.) Rather, Dr. Zimberg explained that:

> I was doing this as a service to the patient and at that point I was not considering myself an expert and just had no interest in doing it. Didn't think it served the patient. I was trying to be cooperative with her counsel, but certainly didn't have the time or interest to pursue this in great detail.

(Zimberg Dep., at 133-34.) Nonetheless, plaintiff submitted Dr. Zimberg's one page letter as his expert report in this case.

In April 2003, Dr. Zimberg spoke with one of Verizon's attorneys and stated that he did not intend to serve as an expert in this case and characterized himself as a "hostile witness" to both parties in the lawsuit. (Zimberg Dep., at 22.) Dr. Zimberg explained that one of his reasons for not serving as an expert was that his knowledge of plaintiff's condition was limited because his function was primarily to manage her medication and not to provide therapy. (Zimberg Dep., at 22.) Subsequent to that conversation, Dr. Zimberg changed his mind and in late April 2003, over five months after plaintiff's expert designations were due, Dr. Zimberg agreed to act as an expert witness for plaintiff. (Zimberg Dep., at 19, 22-23.) A few days later, Verizon's counsel deposed Dr. Zimberg.

3

According to plaintiff's motion, Dr. Zimberg recently returned to his original position that he will not act as an expert in this case. (Dkt. # 108, Stmt. of Points and Authorities, ¶ 4.) As a result, plaintiff has returned to the same position she was in at the time she made her original expert designations—she has no designated expert who has actually consented to provide expert testimony on psychiatric issues.

## ARGUMENT

As indicated in plaintiff's Statement of Points and Authorities, this Court has previously examined the issue of whether to exclude testimony by an expert who was not timely designated under the four factor test set forth by the Fifth Circuit in *Geiserman v. MacDonald,* 893 F.2d 787 (5th Cir. 1990). *See Potomac Elec. Power Co., v Elec. Motor Supply, Inc.,* 190 F.R.D. 372, 377 (D.Md. 1999) (citing *Geiserman*). Under that test, the court should consider (1) the reason for failing to name a witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; (4) the possibility of a continuance to cure such prejudice. *Geiserman,* 893 F.2d at 791. All four factors weigh against the appointment of a new expert in the present case.

**I.     Plaintiff lacks any credible justification for failing to designate the requested expert within the Court's previous deadline for expert designations.**

In her Statement of Points and Authorities, plaintiff attempts to paint a picture in which plaintiff reasonably relied on Dr. Zimberg's willingness to serve as her psychiatric expert and, based on that reliance, did not bother to name any other expert for that purpose. Plaintiff then analogizes Dr. Zimberg's renewed refusal to testify as an expert to a situation in which an expert "passes away or loses his license to practice medicine" or other circumstances "well out of [plaintiff's] control." (Dkt. # 108, Stmt. of Points and Authorities, ¶ 9).

Plaintiff, however, has made no showing that that Dr. Zimberg's recent decision was indeed beyond her control. Rather, all that is apparent from plaintiff's Statement of Points and

4

Authorities is that plaintiff has terminated her doctor-patient relationship with Dr. Zimberg (Dkt. # 108, Stmt. of Points and Authorities, ¶ 1) and that Dr. Zimberg is now expressing "legal concerns" about testifying. (*Id.*, ¶ 3.) It is unclear what type of legal concerns Dr. Zimberg has or whether plaintiff's recent actions have caused or exacerbated those concerns. The Court has ample grounds for denying plaintiff's motion on the current record. However, if the Court is at all inclined to grant plaintiff's motion on the basis of Dr. Zimberg's decision not to testify, Verizon requests (1) an opportunity to conduct limited discovery, including a deposition of Dr. Zimberg, to determine the basis for Dr. Zimberg's decision and the surrounding circumstances; and (2) an opportunity to provide appropriate supplemental briefing on that issue.

Further, plaintiff's reconstruction of history wholly ignores the actual timeline of events. Plaintiff could not have relied on Dr. Zimberg's willingness to testify when she made her expert designations because he had not agreed to be an expert at that time but, to the contrary, had specifically told plaintiff's counsel that he did not want to serve in that capacity. It was not until well after plaintiff was required to designate experts that Dr. Zimberg begrudgingly agreed to be an expert. His after-the-fact agreement to do so in no way renders plaintiff's earlier decision to designate him, and no one else, as a psychiatric expert reasonable or even in good faith. Dr. Zimberg's current decision not to testify is entirely consistent with his position at the time plaintiff made her expert disclosures. Dr. Zimberg's unwillingness to testify did not cause plaintiff to retain a different psychiatric expert then, and his current unwillingness therefore does not justify her retention of a new expert now.

**II.  Plaintiff should be precluded from arguing the importance of the requested expert's testimony as a factor in her favor.**

In support of her motion, plaintiff provides no explanation of the importance of the requested expert's testimony to this lawsuit or even the nature of his intended testimony.

Instead, plaintiff states in conclusory fashion that, "The testimony's importance is obvious and needs no explanation for a case dealing with as an expert is necessary in this type of case." (Dkt. # 108, Stmt. of Points and Authorities, ¶ 8). However, plaintiff's current assertion of the importance of expert testimony is starkly inconsistent with plaintiff's complete lack of diligence in failing to retain an expert within the time frame afforded by the Court or to seek a reasonable extension of time to do so. Unlike *Potomac Elec. Power Co.,* the primary case relied upon by plaintiff, this case does not involve a claim that plaintiff "inadvertently neglected" to designate a retained expert. 190 F.R.D. at 376. Rather, plaintiff's reckless decision to designate Dr. Zimberg as an expert without bothering to retain him or even obtain his prior consent was a volitional act which should be attributed to her view of that expert's testimony. Simply put, plaintiff cannot be allowed to treat a set of evidence so cavalierly and then argue that it is critical to her case.

Even if plaintiff were not precluded from arguing the requested expert's importance, plaintiff's attempt to establish that importance by abstractly asserting that "an expert in this type of case" is necessarily misguided given that plaintiff has specifically characterized her request as a request to replace Dr. Zimberg. Allowing a new expert to testify beyond the scope of Dr. Zimberg's expressed opinions would not constitute a mere replacement of a previous expert but would instead be a highly prejudicial expansion of expert testimony. Accordingly, the importance of the requested expert's testimony should be compared to the opinions which Dr. Zimberg could competently render based on the scope of his so-called expert report. As discussed above, the document that plaintiff produced as Dr. Zimberg's expert report is a letter that Dr. Zimberg drafted on the basis of a thirty minute review of his notes and the body of which consists of all of nineteen lines, including Dr. Zimberg's invitation that plaintiff's counsel

contact him with further questions. (Ex. 4.) Dr. Zimberg testified that he himself did not consider the letter an expert report and did not include in it all of his relevant opinions regarding plaintiff's condition. The letter is very narrow in scope and does not address many of the issues relevant to an ADA case. Dr. Zimberg's letter (1) does not opine that plaintiff was disabled or that she was substantially limited in a major life activity; (2) states no opinion as to whether plaintiff's mental condition caused her to engage in the inappropriate behavior for which she was disciplined and ultimately terminated; and (3) does not address any possible accommodations or their likely effect.

Indeed, it is questionable whether Dr. Zimberg could have provided any relevant expert testimony. Dr. Zimberg himself testified that one of his reasons for not wanting to testify as an expert was that he had a fairly limited knowledge of plaintiff's condition. (Zimberg Dep., at 22.) He further indicated that he did not "have the time or interest" to pursue his analysis in the manner he would need to if he were indeed acting as an expert. (*Id.*, at 133-34.) Given the cursory nature of Dr. Zimberg's analysis in preparing the January 17, 2003 letter and his own express concerns about his lack of knowledge, there are serious doubts as to whether Dr. Zimberg could meet the requirements of Rules 702 and 703 of the Federal Rules of Evidence, and Verizon fully intended to challenge Dr. Zimberg's ability to testify on those grounds.

Thus, while a psychiatric expert's testimony may generally be important in an ADA case involving an alleged mental disability, the expert testimony, if any, that Dr. Zimberg could have provided at trial would likely be minimal. As such, any replacement expert for Dr. Zimberg could not provide testimony of any significant importance at trial without severely and unfairly prejudicing Verizon.[2]

---

[2] Even if the Court determines that the requested expert's testimony is important, the factor of importance is double-edged in that the greater the importance is, the greater the risk of prejudice to the opposing party becomes as well.

**III.     Appointing a new expert would unfairly prejudice Verizon in several respects.**

Plaintiff asserts that because she would agree to a modified expert schedule, Verizon would suffer no prejudice from the appointment of a new expert. Plaintiff's contention is simply wrong.

First, plaintiff's suggestion that there is sufficient time to complete a modified expert schedule is inaccurate. Although plaintiff is technically correct that there were "still three months to the May 16, 2005, trial date" when plaintiff filed her motion, plaintiff's proposed order would not require plaintiff to *name* her new expert until ten days after an order is entered. Thus, even if the Court were to rule on plaintiff's motion on that same day that plaintiff files her reply brief, plaintiff will not even designate her expert until the end of March. Thus, Verizon would almost certainly not receive an actual expert report until the month before trial. While it is conceivable that Verizon could schedule the requested expert's deposition within the remaining time available before trial, Verizon would have essentially no time to supplement its own expert's report or to retain a new expert to respond to any new or different opinions in the requested expert's report.[3] Meanwhile, any denial of Verizon's ability to do so would obviously prejudice Verizon because it would have been able to respond to the proposed expert's report if plaintiff had designated the expert within the original deadline set by this Court. *See Geiserman,* 893 F.2d at 791 (excluding expert designated by plaintiff after disclosure deadline based in part on recognition that defendant based designation of his own expert in reliance on plaintiff's failure to designate).

---

*See Geiserman,* 893 F.2d at 791 ("We shall assume *arguendo* that expert testimony was significant to Geiserman's case—so much the more reason to be sure its introduction was properly grounded.").

[3] Because any new expert would be expressing opinions as to the plaintiff's medical condition, the introduction of a new expert could also necessitate another medical examination of plaintiff on behalf of defendant, particularly if plaintiff's new expert were to offer new opinions or base his or her opinions on any change or development in plaintiff's condition since the time of Dr. Zimberg's January 17, 2003 letter.

Moreover, reopening expert discovery at this stage of litigation would unfairly disrupt Verizon's pretrial preparations and force Verizon to divert attention and resources at a critical point in the litigation. In the last few weeks before trial, Verizon would be required to (1) review the proposed expert's supporting materials and credentials; (2) depose the proposed expert; (3) designate its own additional expert or work with its current expert in preparing a responsive report; (4) defend its own expert's deposition; and (5) incorporate the new expert discovery into its trial strategy. This Court has recognized the extreme prejudicial effect of this type of disruption and has excluded testimony based on a last minute expert report for that reason. *Congressional Air,* 176 F.R.D. at 517 ("Beech should not be required to conduct an 'under-the-gun' deposition and find rebuttal expert opinions at this stage of the litigation.").[4]

Second, appointing a new expert would give plaintiff the unfair advantage of being able to bolster her case in the last days before trial. As discussed above, Dr. Zimberg's usefulness at trial or even ability to testify was severely limited by the narrow scope of his January 17, 2003 letter, the minimal time he spent reviewing plaintiff's case before preparing that letter, and his own express concerns about whether he had the requisite knowledge of plaintiff's condition to provide competent expert testimony. Any expert who spends more time preparing his or her report than the "less than an hour" that Dr. Zimberg spent in reviewing records and drafting his letter would likely prepare a much more extensive report and express broader opinions that Dr. Zimberg. Any expert who spends the same time or less would be unqualified to testify. Permitting plaintiff to improve her case and fill in gaps when it is too late for Verizon to adjust its litigation strategy is undeniably prejudicial, and plaintiff's motion should be denied on that

---

[4] Likewise, in *Potomac Elec. Power Co.,* this Court expressly premised its conclusion that sufficient prejudice did not exist to warrant excluding an expert on the fact that "while the discovery deadline has passed, there is no scheduled trial date . . . " 190 F.R.D. at 377.

9

ground alone.[5]  *See Hagans v. Henry Weber Aircraft Distributors, Inc.,* 852 F.2d 60, 64 (3rd Cir. 1988) (holding that court did not abuse its discretion in excluding substitute expert where substitution would allow party to avoid credibility problems of initial expert).

Finally, plaintiff ignores the significant expense that Verizon would be forced to incur if plaintiff were allowed to appoint a new expert.  Verizon has already incurred the expense of unnecessarily deposing one expert on the basis of plaintiff's unfounded designation.  It should not be required to expend the attorney time, reporter fees, and expert fees necessary to depose another, let alone the significant expense that would be required to restructure its trial strategy.

## IV.     A continuance would be unavoidable but would not remove the prejudicial effect of a new expert.

The final factor in deciding whether to exclude an untimely designated expert is whether a continuance is available to remove the prejudicial effect of allowing the expert to testify.  As the Fifth Circuit made clear in *Geiserman,* the issue is not merely whether a continuance is possible but rather whether a continuance would actually remove the prejudicial effect of the new expert.  893 F.2d at 792 (recognizing that although a continuance would give the opposing party an opportunity to conduct new discovery in light of the untimely designation, "this would have resulted in additional delay and increased the expense of defending the lawsuit.").

Plaintiff attempts to sidestep this factor entirely by asserting that "Plaintiff would agree to a modified expert schedule," and that, as a result, "no continuance may even be necessary." (Dkt. # 108, Stmt. of Points and Authorities, ¶ 8.)  As previously discussed, plaintiff's suggestion of a modified expert schedule before trial, for which the plaintiff provides no detail, is unrealistic

---

[5] Further, Dr. Zimberg actually provided testimony during his deposition that seriously undermines plaintiff's claims.  For example, Dr. Zimberg testified that plaintiff's difficulties with social and occupational functioning are overwhelmingly related, not to a bi-polar disorder, but to her personality disorder and "poor judgment."  (Zimberg Dep., at 62).  As argued in Verizon's motion for summary judgment, personality traits such as poor judgment or a quick temper are not covered by the ADA.  *See* 29 C.F.R. § 1630.2(h) app.; EEOC Compliance Manual § 902.2(c)(4); *see also Greenberg v. New York State,* 919 F. Supp. 637, 643 (E.D.N.Y. 1996) (holding that "poor judgment" is a "personality character trait[]" not covered by the ADA).

and wholly ignores the need for Verizon to be able to respond to the new expert and deposition by revisiting its own expert designations. Further, any "modified expert schedule" would only further prejudice Verizon by denying the usual timeframe within which to conduct expert discovery. Under any rationale schedule, a continuance of the trial date would be necessary to accommodate additional expert discovery if a new expert is appointed at this late date.

However, a continuance would not remove the prejudicial effect that appointing a new expert would have on Verizon. While a continuance could relieve some of the disruptive effect of dealing with expert testimony in the weeks immediately before trial, it would do nothing to relieve Verizon of the financial burden of additional discovery[6] or to avoid the unfair advantage of being able to replace an expert whose testimony could have been dramatically limited, if not excluded, at trial.

## CONCLUSION

For the reasons set forth above, Verizon respectfully requests that the Court deny plaintiff's Motion to Appoint Expert.

Dated:  March 7, 2005                                Respectfully submitted,


                                                    _____/s/_____
                                                    Karen M. Wahle, Bar No. 013658
                                                    Ira H. Raphaelson, Bar No. 012849
                                                    O'MELVENY & MYERS LLP
                                                    1625 Eye Street, N.W.
                                                    Washington, D.C.  20006
                                                    (202) 383-5300
                                                    (202) 383-5414 (facsimile)

                                                    Counsel for Defendant
                                                    Verizon Maryland Inc.

---

[6] In order to minimize this prejudicial effect, Verizon requests that, if plaintiff's motion is granted, plaintiff be required to reimburse Verizon for any costs associated with responding to the new expert, including but not limited to (1) attorney fees and costs incurred in deposing the new expert; and (2) attorney and expert fees and costs associated with supplementing Verizon's expert designations and reports to respond to the new expert's opinions.