IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCES DARCANGELO,

      Plaintiff,

    v.

VERIZON MARYLAND INC.,

      Defendant.

No. WDQ-02-816 (Civ.)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
AMENDED MOTION TO NAME NEW EXPERT AND FOR A
CONTINUANCE OF THE MAY 16, 2005 TRIAL DATE**

Defendant Verizon Maryland Inc. ("Verizon"), by and through its undersigned counsel,

respectfully submits this Memorandum in Opposition to Plaintiff's Amended Motion to Name

New Expert and for a Continuance of the May 16, 2005 Trial Date and states as follows:

**INTRODUCTION**

Whether for improper strategic reasons or through inexcusable negligence, plaintiff's

effort to designate a new expert on the eve of trial is impermissible trial by ambush.  *See*

*Macaulay v. Anas,* 321 F.3d 45, 50 (1st Cir. 2003) (recognizing that important purpose of expert

disclosure rules is to "avoid trial by ambush"); *Congressional Air  v. Beech Aircraft Corp.,* 176

F.R.D. 513, 516 (D. Md. 1997) (allowing parties to change the nature and scope of expert's

opinions after court-imposed deadlines would encourage the type of "trial by ambush" that the

1993 revision of the Federal Rules attempted to eliminate).  While plaintiff has conceded that her

requested relief would make a continuance inevitable, such a continuance, normally intended to

cure prejudice, would exacerbate the prejudicial effect of adding a new expert at this point in the

litigation by, among other things, undermining the substantial trial preparation efforts that

Verizon has geared towards the current May 2005 trial date.

In November 2002, plaintiff Frances Darcangelo, having failed to retain *any* psychiatric expert to testify in this lawsuit, designated Dr. Gary Zimberg as an expert without his prior consent or knowledge and in the face of his express desire not to serve in that role. Now, less than three months before trial, plaintiff asks this Court for leave to identify an entirely new expert on the grounds that Dr. Zimberg is unwilling to testify as an expert at trial. Verizon has already borne the costs of plaintiff's unauthorized designation of Dr. Zimberg and would be unfairly prejudiced if plaintiff were allowed to use that improper designation to bootstrap in an entirely new expert at this late date. Accordingly, Verizon asks this Court to deny plaintiff's Amended Motion to Name a New Expert and for a Continuance of the May 16, 2005 Trial Date.

## BACKGROUND

Plaintiff's complaint alleges that Verizon violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") by (1) discriminating against plaintiff on the basis of her mental condition in disciplining and ultimately terminating her and (2) failing to provide her supposedly reasonable accommodations. On October 23, 2002, this Court issued a Scheduling Order which, in part, required plaintiff to identify her expert witnesses within thirty days of the Order. (Dkt. #13.)

Plaintiff, through counsel, apparently contacted Dr. Zimberg, who was at the time plaintiff's treating psychiatrist, about the possibility of serving as a psychiatric expert. (See Ex. 1, excerpts of Deposition of Gary Zimberg ("Zimberg Dep.," at 7-8, 19-21.) Dr. Zimberg responded by stating that he did not want to serve as an expert and suggested that plaintiff hire another. (*Id.*, at 20-21.) Plaintiff did not retain Dr. Zimberg at that time. (Zimberg Dep., at 19, 21-22.) Plaintiff nonetheless sent Verizon's counsel a letter dated November 25, 2002, formally designating Dr. Zimberg as her psychiatric expert. (Ex. 2.) Dr. Zimberg was not aware that

plaintiff was formally designating him as an expert at that time and did not give his consent for

plaintiff to do so.  (Zimberg Dep., at 21).

On January 3, 2003, plaintiff's counsel sent Dr. Zimberg a letter asking him to prepare a

report addressing various issues.  (Ex. 3.)  Dr. Zimberg responded by sending plaintiff's counsel

a one-page letter dated January 17, 2003, setting forth some of the requested information, based

on a "maybe a 30 minute review" of his records.  (Zimberg Dep., at 107-08; Ex. 4.)  Dr. Zimberg

did not consider the letter to be an expert report.  (Zimberg Dep., at 106-07.)  Rather, Dr.

Zimberg explained that:

> I was doing this as a service to the patient and at that point I was not considering
> myself an expert and just had no interest in doing it.  Didn't think it served the
> patient.  I was trying to be cooperative with her counsel, but certainly didn't have
> the time or interest to pursue this in great detail.

(Zimberg Dep., at 133-34.)  Nonetheless, plaintiff submitted Dr. Zimberg's one page

letter as his expert report in this case.

In April 2003, Dr. Zimberg spoke with one of Verizon's attorneys and stated that he did

not intend to serve as an expert in this case and characterized himself as a "hostile witness" to

both parties in the lawsuit.  (Zimberg Dep., at 22.)  Dr. Zimberg explained that one of his reasons

for not serving as an expert was that his knowledge of plaintiff's condition was limited because

his function was primarily to manage her medication and not to provide therapy.  (Zimberg Dep.,

at 22.)  Subsequent to that conversation, Dr. Zimberg changed his mind and in late April 2003,

over five months after plaintiff's expert designations were due, Dr. Zimberg agreed to act as an

expert witness for plaintiff.  (Zimberg Dep., at 19, 22-23.)  A few days later, Verizon's counsel

deposed Dr. Zimberg.

According to plaintiff's motion, Dr. Zimberg recently returned to his original position

that he will not act as an expert in this case.  (Dkt. # 111, Stmt. of Points and Authorities, ¶ 4.)

As a result, plaintiff has returned to the same position she was in at the time she made her original expert designations—she has no designated expert who has actually consented to provide expert testimony on psychiatric issues.

## ARGUMENT

As indicated in plaintiff's Statement of Points and Authorities, this Court has previously examined the issue of whether to exclude testimony by an expert who was not timely designated under the four factor test set forth by the Fifth Circuit in *Geiserman v. MacDonald,* 893 F.2d 787 (5th Cir. 1990). *See Potomac Elec. Power Co., v Elec. Motor Supply, Inc.,* 190 F.R.D. 372, 377 (D.Md. 1999) (citing *Geiserman*). Under that test, the court should consider (1) the reason for failing to name a witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; (4) the possibility of a continuance to cure such prejudice. *Geiserman,* 893 F.2d at 791. All four factors weigh against the appointment of a new expert in the present case.

## I.     Plaintiff lacks any credible justification for failing to designate the requested expert within the Court's previous deadline for expert designations.

In her Statement of Points and Authorities, plaintiff attempts to paint a picture in which she reasonably relied on Dr. Zimberg's willingness to serve as her psychiatric expert and, based on that reliance, did not bother to name any other expert for that purpose. Plaintiff thus suggests that it was solely Dr. Zimberg's recent decision not to testify, and not plaintiff's own actions, which placed her in her current situation.

Plaintiff, however, has made no showing that that Dr. Zimberg's recent decision was indeed beyond her control. Rather, all that is apparent from plaintiff's Statement of Points and Authorities is that plaintiff has terminated her doctor-patient relationship with Dr. Zimberg (Dkt. # 111, Stmt. of Points and Authorities, ¶ 1) and that Dr. Zimberg is now expressing "legal concerns" about testifying. (*Id.*, ¶ 3.) It is unclear what type of legal concerns Dr. Zimberg has

or whether plaintiff's recent actions have caused or exacerbated those concerns. The Court has ample grounds for denying plaintiff's motion on the current record. However, if the Court is at all inclined to grant plaintiff's motion on the basis of Dr. Zimberg's decision not to testify, Verizon requests (1) an opportunity to conduct limited discovery, including a deposition of Dr. Zimberg, to determine the basis for Dr. Zimberg's decision and the surrounding circumstances; and (2) an opportunity to provide appropriate supplemental briefing on that issue.

Further, plaintiff's version of history wholly ignores the actual timeline of events. Plaintiff could not have relied on Dr. Zimberg's willingness to testify when she made her expert designations because he had not agreed to be an expert at that time but, to the contrary, had specifically told plaintiff's counsel that he did not want to serve in that capacity. It was not until well after plaintiff was required to designate experts that Dr. Zimberg begrudgingly agreed to be an expert. His after-the-fact agreement to do so in no way renders plaintiff's earlier decision to designate him, and no one else, as a psychiatric expert reasonable or even in good faith. Dr. Zimberg's current decision not to testify is entirely consistent with his position at the time plaintiff made her expert disclosures. Dr. Zimberg's unwillingness to testify did not cause plaintiff to retain a different psychiatric expert then, and his current unwillingness therefore does not justify her retention of a new expert now.

## II.    Plaintiff should be precluded from arguing the importance of the requested expert's testimony as a factor in her favor.

In support of her motion, plaintiff provides no explanation of the importance of the requested expert's testimony to this lawsuit or even the nature of his intended testimony. Instead, plaintiff states in conclusory fashion that, "The testimony's importance is obvious and needs no explanation for a case dealing with as an expert is necessary in this type of case." (Dkt. # 111, Stmt. of Points and Authorities, ¶ 8). However, plaintiff's current assertion of the

importance of expert testimony is starkly inconsistent with plaintiff's complete lack of diligence in failing to retain an expert within the time frame afforded by the Court or to seek a reasonable extension of time to do so.  Unlike *Potomac Elec. Power Co.,* the primary case relied upon by plaintiff, this case does not involve a claim that plaintiff "inadvertently neglected" to designate a retained expert.  190 F.R.D. at 376.  Rather, plaintiff's reckless decision to designate Dr. Zimberg as an expert without bothering to retain him or even obtain his prior consent was a volitional act which should be attributed to her view of that expert's testimony.  Simply put, plaintiff cannot be allowed to treat a set of evidence so cavalierly and then argue that it is critical to her case.

Even if plaintiff were not precluded from arguing the requested expert's importance, plaintiff's attempt to establish that importance by abstractly asserting that "an expert in this type of case" is necessarily misguided given that plaintiff has specifically characterized her request as a request to replace Dr. Zimberg.  Allowing a new expert to testify beyond the scope of Dr. Zimberg's expressed opinions would not constitute a mere replacement of a previous expert but would instead be a highly prejudicial expansion of expert testimony.  Accordingly, the importance of the requested expert's testimony should be compared to the opinions which Dr. Zimberg could competently render based on the scope of his so-called expert report.  As discussed above, the document that plaintiff produced as Dr. Zimberg's expert report is a letter that Dr. Zimberg drafted on the basis of a thirty minute review of his notes and the body of which consists of all of nineteen lines, including Dr. Zimberg's invitation that plaintiff's counsel contact him with further questions.  (Ex. 4 .)  Dr. Zimberg testified that he himself did not consider the letter an expert report and did not include in it all of his relevant opinions regarding plaintiff's condition.  The letter is very narrow in scope and does not address many of the issues

6

relevant to an ADA case. Dr. Zimberg's letter (1) does not opine that plaintiff was disabled or that she was substantially limited in a major life activity; (2) states no opinion as to whether plaintiff's mental condition caused her to engage in the inappropriate behavior for which she was disciplined and ultimately terminated; and (3) does not address any possible accommodations or their likely effect.

Indeed, it is questionable whether Dr. Zimberg could have provided any relevant expert testimony. Dr. Zimberg himself testified that one of his reasons for not wanting to testify as an expert was that he had a fairly limited knowledge of plaintiff's condition. (Zimberg Dep., at 22.) He further indicated that he did not "have the time or interest" to pursue his analysis in the manner he would need to if he were indeed acting as an expert. (*Id.*, at 133-34.) Given the cursory nature of Dr. Zimberg's analysis in preparing the January 17, 2003 letter and his own express concerns about his lack of knowledge, there are serious doubts as to whether Dr. Zimberg could meet the requirements of Rules 702 and 703 of the Federal Rules of Evidence, and Verizon fully intended to challenge Dr. Zimberg's ability to testify on those grounds.

Thus, while a psychiatric expert's testimony may generally be important in an ADA case involving an alleged mental disability, the expert testimony, if any, that Dr. Zimberg could have provided at trial would likely be minimal. As such, any replacement expert for Dr. Zimberg could not provide testimony of any significant importance at trial without severely and unfairly prejudicing Verizon. [1]

## III.    Appointing a new expert would unfairly prejudice Verizon in several respects.

---

[1] Even if the Court determines that the requested expert's testimony is important, the factor of importance is double-edged in that the greater the importance is, the greater the risk of prejudice to the opposing party becomes as well. *See Geiserman,* 893 F.2d at 791 ("We shall assume *arguendo* that expert testimony was significant to Geiserman's case—so much the more reason to be sure its introduction was properly grounded.").

Plaintiff asserts, without explanation, that if the Court continues the trial date, Verizon would suffer no prejudice from the appointment of a new expert. Plaintiff's contention is simply wrong.

It is of course true that allowing plaintiff to name a new expert without moving the trial date would have an extremely unfair impact on Verizon by disrupting Verizon's pretrial preparations and impeding Verizon's ability to conduct effective expert discovery and designation. Indeed, this Court has previously recognized that prejudicial effect and has excluded testimony based on a last minute expert report for that reason. *Congressional Air,* 176 F.R.D. at 517 ("Beech should not be required to conduct an 'under-the-gun' deposition and find rebuttal expert opinions at this stage of the litigation.").[2] However, it does not follow that a continuance somehow automatically removes all prejudicial effects.

To the contrary, the requested continuance would itself have a prejudicial impact on Verizon by undermining the considerable trial preparation that Verizon has already conducted in reliance on the May 16, 2005 trial date. Counsel for Verizon have already begun the intensive process of reviewing evidence and structuring trial arguments that is necessary to effectively and efficiently try a case. By significantly increasing the time between these preparations and the actual trial, a continuance would greatly diminish the value of counsel's work, as counsel will have to yet again familiarize themselves with the innumerable details of this case at a time closer to the new trial date, at considerable expense to Verizon. Further, moving the trial date would render useless the myriad logistical steps, such as clearing schedules and lining up witnesses, that have all been geared toward trying the case within the time frame currently set by the Court. Those logistical steps would have to be effectively recreated, again at great expense to Verizon

---

[2] Likewise, in *Potomac Elec. Power Co.,* this Court expressly premised its conclusion that sufficient prejudice did not exist to warrant excluding an expert on the fact that "while the discovery deadline has passed, there is no scheduled trial date . . . " 190 F.R.D. at 377.

and inconvenience to the non-party witnesses.  More importantly, continuing the trial date

creates the risk that defense witnesses who are currently available may become unavailable if the

trial date is moved, thus denying Verizon the use of valuable testimony.

In addition to the unfair impact of the continuance itself, allowing plaintiff to name a new

expert at this stage in the litigation would have a number of other prejudicial effects that a

continuance would not only fail to remove but would indeed exacerbate.  For example,

appointing a new expert would give plaintiff the unfair advantage of being able to bolster her

case in the last days before trial.  As discussed above, Dr. Zimberg's usefulness at trial and even

his ability to testify were severely limited by the narrow scope of his January 17, 2003 letter, the

minimal time he spent reviewing plaintiff's case before preparing that letter, and his own express

concerns about whether he had the requisite knowledge of plaintiff's condition to provide

competent expert testimony.  Plaintiff, however, bases her request for 60 days to designate an

expert on the need for the new expert to review "voluminous documents" before issuing a report.

(Dkt. # 111, Stmt. of Points and Authorities, ¶ 10.)  In other words, plaintiff has effectively

admitted her intent to have the new expert conduct a much more involved analysis than the

roughly 30 minute review conducted by Dr. Zimberg and to prepare a much more thorough and

extensive report.  Permitting plaintiff to improve her case and fill in gaps after Verizon has

committed itself to a trial strategy is undeniably prejudicial, and plaintiff's motion should be

denied on that ground alone.[3]  *See Hagans v. Henry Weber Aircraft Distributors, Inc.,* 852 F.2d

---

[3] Further, Dr. Zimberg actually provided testimony during his deposition that seriously undermines plaintiff's claims.  For example, Dr. Zimberg testified that plaintiff's difficulties with social and occupational functioning are overwhelmingly related, not to a bi-polar disorder, but to her personality disorder and "poor judgment."  (Zimberg Dep., at 62).  As argued in Verizon's motion for summary judgment, personality traits such as poor judgment or a quick temper are not covered by the ADA.  *See* 29 C.F.R. § 1630.2(h) app.; EEOC Compliance Manual § 902.2(c)(4); *see also Greenberg v. New York State,* 919 F. Supp. 637, 643 (E.D.N.Y. 1996) (holding that "poor judgment" is a "personality character trait[]" not covered by the ADA).

9

60, 64 (3rd Cir. 1988) (holding that court did not abuse its discretion in excluding substitute expert where substitution would allow party to avoid credibility problems of initial expert).

Finally, plaintiff's amended motion ignores the significant expense that Verizon would be forced to incur if plaintiff were allowed to appoint a new expert. Verizon has already incurred the expense of unnecessarily deposing one expert on the basis of plaintiff's unauthorized designation. It should not be required to expend the attorney time, reporter fees, and expert fees necessary to depose another and to supplement Verizon's own expert disclosures in response.[4] More broadly, over the last several months, Verizon has committed significant resources preparing pretrial submissions and developing a trial plan based on the weaknesses of plaintiff's case at the close of discovery. Permitting plaintiff to recreate her case through the use of a new expert now would necessarily require Verizon to expend additional resources to revisit and revise much of this earlier work.

## IV.    A continuance would not remove the prejudicial effects of a new expert.

The final factor in deciding whether to exclude an untimely designated expert is whether a continuance is available to remove the prejudicial effect of allowing the expert to testify. As the Fifth Circuit made clear in *Geiserman,* the issue is not merely whether a continuance is possible but rather whether a continuance would actually remove the prejudicial effects of the new expert. 893 F.2d at 792 (recognizing that although a continuance would give the opposing party an opportunity to conduct new discovery in light of the untimely designation, "this would have resulted in additional delay and increased the expense of defending the lawsuit.").

---

[4] In order to minimize this prejudicial effect of plaintiff's requested relief, Verizon requests that, if plaintiff's motion is granted, plaintiff be required to reimburse Verizon for any costs associated with responding to the new expert, including but not limited to (1) attorney fees and costs incurred in deposing the new expert; and (2) attorney and expert fees and costs associated with supplementing Verizon's expert designations and reports to respond to the new expert's opinions.

As discussed above, a continuance in this case is far from the panacea for all prejudicial effects that plaintiff's amended motion suggests.  Rather, a continuance of the established trial date would create its own prejudice and exacerbate the unfair effects of allowing plaintiff to name a new expert in the eleventh hour before trial.  Accordingly, plaintiff's request fails under this final factor.

## CONCLUSION

For the reasons set forth above, Verizon respectfully requests that the Court deny plaintiff's Amended Motion to Name New Expert and for a Continuance of the May 16, 2005 Trial Date.

Dated:  March 14, 2005                              Respectfully submitted,


                                            _____/s/_____
                                            Karen M. Wahle, Bar No. 013658
                                            Ira H. Raphaelson, Bar No. 012849
                                            O'MELVENY & MYERS LLP
                                            1625 Eye Street, N.W.
                                            Washington, D.C.  20006
                                            (202) 383-5300
                                            (202) 383-5414 (facsimile)

                                            Counsel for Defendant
                                            Verizon Maryland Inc.