IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VERIZON MARYLAND INC.,<br><br>　　　　　Defendant. | No. WDQ-02-816 (Civ.) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT EVIDENCE REGARDING EMPLOYMENT HISTORY OF BARBARA LEE**

Defendant Verizon Maryland Inc. ("Verizon"), by and through its undersigned counsel, respectfully submits this Memorandum in Support of its Motion in Limine to Limit Evidence Regarding Employment History of Barbara Lee.

**INTRODUCTION**

Plaintiff Frances Darcangelo has asserted two disparate treatment claims against Verizon under the Americans with Disabilities Act (the "ADA"), alleging that Verizon disciplined plaintiff more severely than it did similarly situated, non-disabled Verizon employees. Verizon anticipates that plaintiff will base her disparate treatment claims primarily on the fact that following an incident between plaintiff and another employee named Barbara Lee, plaintiff was terminated while Lee was only suspended.

However, rather than addressing the records that Verizon relied on in determining appropriate disciplinary actions for plaintiff and Lee, it appears that plaintiff intends to broadly attack Lee's workplace behavior in part through accounts by Augustus Dankert, a terminated Verizon employee, of alleged incidents that Lee's supervisors and managers do not appear to have witnessed and were not required to treat as credible. Such evidence does not contradict or

in any way address the validity of Verizon's express reasons for disciplining Lee and plaintiff differently and is not otherwise relevant to this case. Instead, the anticipated evidence will only waste time and threaten to confuse the jury by distracting it with mini-trials on incidents allegedly involving Lee that have no bearing whatsoever on the validity of plaintiff's claims or Verizon's defenses.

Accordingly, Verizon respectfully requests that this Court enter an order barring testimony or other evidence regarding Lee's employment history beyond (1) evidence regarding the December 17, 1998 incident which led to plaintiff's termination and Lee's suspension; (2) evidence regarding the contents of Lee's personnel file; and (3) testimony by those involved in disciplining Lee and related evidence regarding the basis for taking less severe disciplinary action against Lee than plaintiff. Verizon also specifically requests that the Court bar Dankert from testifying as to his personal interactions with Lee or as to any alleged incidents involving Lee that were not reflected in her personnel file.

## BACKGROUND

Since joining Verizon in 1977, plaintiff was disciplined on numerous occasions for various incidents which, in the interest of brevity, Verizon will not list here but which are summarized in pages 2-18 of Verizon's Memorandum in Support of Motion for Summary Judgment, filed June 20, 2003. (Dkt. #30.) On October 13, 1997, following several such incidents, one of plaintiff's supervisors, James Conrad, met with plaintiff and union representatives and informed them that plaintiff was being placed in progressive discipline. (*See* Ex. 1, Notes of October 13, 1997 meeting.) Progressive discipline is a disciplinary approach under which the Company takes increasingly severe disciplinary action in an attempt to communicate with employees the Company's expectations and the need to comply with

2

Company rules.  (*See* Ex. 2, Deposition of Ann Sewell ("Sewell Dep."), at 9.)  Following this meeting, plaintiff continued to engage in disruptive behavior and received various suspensions.  (Ex. 3, Written Finding of the Maryland Commission on Human Relations ¶4(k)-(s).)

On December 17, 1998, plaintiff responded to a request from Lee, who is African-American, that plaintiff pick up a work "ticket" by stating "I ain't going to do that ole massa" in an intonation that plaintiff described as "ebonics."  (Ex. 4, Deposition of Frances Darcangelo "Darcangelo Dep.", at 387-89.)  Plaintiff repeated the statement approximately ten times.  (*Id.*, at 390.)  Lee responded angrily and told plaintiff to "step outside."  (Ex. 5, Witness Statements.)  Verizon management intervened and separated plaintiff and Lee.  (Darcangelo Dep., at 392-94.)  Following the incident, Verizon terminated plaintiff and suspended Lee.  (Ex. 3, ¶5.)  In her deposition, Ann Sewell, a member of Verizon's Labor Relations Department and one of the individuals involved in determining the appropriate discipline for plaintiff and Lee, testified that plaintiff received more severe discipline than Lee because plaintiff appeared to provoke the incident and because Lee's personnel file did not indicate that Lee had engaged in any previous threatening behavior.  (Sewell Dep., at 3, 53-56.)

In the proposed Joint Pre-Trial Order, filed with the Court on September 15, 2004 (Dkt. #101), plaintiff identified Dankert as a witness that she will call at trial and designated several passages of Dankert's deposition to be read into the record in the event that Dankert is unavailable as a witness.  (Dkt. #101, at I-1, K-1-2.)  Dankert worked at Bell Atlantic (later Verizon) in the same location as plaintiff and Lee for a brief period in 1998 before being terminated on July 17, 1998 for misconduct.  (Ex. 6, Deposition of Augustus Dankert, at 5-6, 11-12; Ex. 7.)

3

The incident which led to Dankert's termination occurred on July 13, 1998. According to Dankert, his computer screen "locked up" when he attempted to use a particular computer network system. (Ex. 8, Corporate Security Memorandum of Interview.) Dankert contacted a system administrator who instructed him to exit the system and not to access it until the problem was corrected. (*Id.*) Dankert failed to relay these instructions to co-workers, causing further complications with the system. (Ex. 9, Termination Outline.) Dankert stated that he withheld the information in order to get back at Lee for allegedly yelling at him during the shift change on that day. (*Id.*) Lee was initially "written up" for yelling at Dankert during this July 13, 1998 incident. (Ex. 10, Labor Relations Information System Grievance #1998-03281.) However, the memorandum of the incident was formally removed from Lee's file after a grievance hearing during which Lee's supervisor acknowledged that she did not believe that Lee had been yelling. (*Id.*) A copy of the notes from the grievance hearing, however, is contained in Lee's personnel file.

Because he was terminated in July 1998, Dankert was not present during the December 1998 incident between Lee and plaintiff which resulted in plaintiff's termination. However, during his deposition, Dankert attempted to assign blame to Lee for the incident which led to his own termination. Dankert claimed that Lee yelled at him near the end of his shift, causing him to forget to tell his co-workers about the problem with the computer system. (Dankert Dep., at 100.) Dankert also accused Lee of being hostile towards him on other occasions, yelling back and forth with plaintiff, and making threatening comments. (Dankert Dep., at 53, 61, 83, 108.) However, except for a claim that Lee yelled at one of her supervisors, Dankert did not indicate whether Lee's supervisors witnessed the incidents Dankert alleges, but instead stated he rarely saw management while working at Bell Atlantic.

4

## ARGUMENT

**I.   Dankert's allegations regarding Lee's workplace behavior are irrelevant to plaintiff's claims.**

To establish a claim for disparate treatment, plaintiff must prove, among other things, that she has suffered an adverse employment action due to discrimination solely on the basis of disability. *Baird v. Rose*, 192 F.3d 462, 466, 470 (4th Cir.1999); *Tyndall v. Nat'l Educ. Ctrs.,* 31 F.3d 209, 212 (4th Cir. 1994). To prove that the action was taken on the basis of disability, the plaintiff must show not only that the reason proffered for its conduct by the employer was false and pretextual, but also that discrimination was in fact the real reason for the action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) ("It is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.") (emphasis in original). As this Circuit has recognized, the central inquiry is not whether the defendant's reasons for its actions were objectively correct but rather whether or not they were discriminatory. *See also Holder v. City of Raleigh*, 867 F.2d 823, 829 (4th Cir. 1989) (pointing out that even "[a] reason honestly described but poorly founded" need not be pretextual, because "[b]ad or mistaken reasons for a decision may yet be non-discriminatory").

Therefore, to the extent that plaintiff bases her disparate treatment claims on the different disciplinary actions taken against plaintiff and Lee, the relevant issues will be whether Verizon's asserted, non-discriminatory reasons for the different punishments were genuine and, if not, whether the real reason for the difference was plaintiff's alleged disability. The express reasons for treating Lee more leniently in connection with the December 17, 1998 incident were (1) Verizon's understanding that plaintiff provoked the incident; and (2) the fact that Lee's personnel file did not reflect the history of disruptive and threatening behavior as plaintiff's. Sewell Dep., at 3, 53-56.) *See Murphy v. Village of Hoffman Estates,* No. 95 C. 5192, 1999 WL

5

160305, at *5-6 (holding that plaintiff failed to establish that similarly-situated, non-disabled employees were treated more favorably than plaintiff where employment records showed that the other employees had been the subject of far few disciplinary actions that plaintiff). Dankert's testimony regarding Lee's work behavior have no bearing on the validity of either of Verizon's stated reasons for assigning plaintiff a greater punishment than Lee. Dankert did not witness the December 17, 1998 incident and therefore cannot in any way challenge Verizon's conclusion that plaintiff provoked that incident.

Likewise, Dankert's testimony regarding Lee's alleged behavior has no legitimate bearing on Verizon's rationale that Lee's personnel record did not support disciplining Lee as severely as plaintiff. To the extent that an incident alleged by Dankert was included in Lee's personnel record, Dankert's testimony is unnecessary, since Verizon relied on the description of the incident in that record, and not on Dankert's account of the incident, in making its disciplinary decisions. (Sewell Dep., at 53-56.) To the extent that the incidents alleged by Dankert were not contained in Lee's personnel record, his testimony is irrelevant because it does not undermine the assertion that Lee's record was "clean". *Id.*

Meanwhile, Dankert's testimony does not in any way undermine Verizon's good faith in relying on Lee's personnel record. With the exception of an allegation that Lee "yelled" at one of her supervisor, Dankert does not suggest that management witnessed any of the incidents involving Lee that Dankert describes. To the contrary, Dankert testified that, "I didn't see management around that much." (Dankert Dep., at 114.) Meanwhile, although Dankert claims to have complained to management about Lee's alleged behavior, Verizon was not required to treat his complaints as credible or to agree with his characterization of them. Indeed, the only documented complaint by Dankert against Lee was made in an effort to excuse the misconduct

which led to his termination and thus was inherently susceptible to doubt. In the end, even if Dankert's testimony were taken as true, all that it would establish is that Lee made statements in the workplace which Dankert found objectionable. It does not in any way demonstrate that the individuals responsibly for disciplining Lee for the December 17, 1998 incident knew or believed that Lee's personnel record did not accurately reflect her prior workplace behavior.

Because Dankert's testimony regarding Lee's behavior does not in any way address the validity of Verizon's stated bases for disciplining plaintiff more severely than Lee, it is irrelevant and should be excluded at trial.

## II. Even if Dankert's accusations against Lee were relevant, they should nonetheless be excluded under Federal Rule of Evidence 403.

Even if Dankert's anticipated testimony regarding Lee were arguably relevant to this case, it should nonetheless be excluded under Federal Rule of Evidence 403. Rule 403 provides that otherwise relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Allowing Dankert to lob accusations regarding Lee's behavior will unavoidably sidetrack and extend the trial while providing little to no probative evidence. In her deposition, Lee denied yelling at Dankert or using the language attributed to him, (Ex. 11, Deposition of Barbara Lee "Lee Dep.", at 71-75), and will presumably dispute Dankert's other accusations against her. Thus, once the door is opened to Dankert's accusations, the Court will be forced to conduct a virtual mini-trial to weigh the respective credibility of Dankert's and Lee's varying accounts of events that have only a remote connection to plaintiff's claims. The resolution of this "he said, she said" inquiry, meanwhile, would not actually resolve any issue in the litigation, since, among

7

other things, it would not establish that appropriate Verizon decision-makers were aware of the incidents or that they were required to accept Dankert's version of them when determining Lee's punishment.

Further, shifting the focus of trial away from the relationship between plaintiff and Verizon and instead to Lee's alleged behavior would not merely waste the court's time and resources but would also threaten to confuse the jury as to the issues actually material to plaintiff's claims.  Again, the relevant issue is not whether Lee "deserved" to be disciplined as severely as plaintiff but instead whether Verizon had a genuine, non-discriminatory reason for disciplining plaintiff in the manner it did.  Allowing a protracted inquiry into Lee's alleged behavior, and particularly Dankert's view of that behavior, would divert the jury's focus from that material issue and would encourage the jury to improperly pass judgment on Lee and judge the objective "correctness", rather than the subjective motivation, of Verizon's actions.

The at best minimal relevance of Lee's work behavior beyond the December 17, 1998 incident and the contents of her personnel record does not justify the tremendous waste of time and risk of confusion that would be necessary to examine that issue.  Accordingly, even if the Court determines that testimony regarding that behavior meets the requirements for relevance under Federal Rule of Civil Procedure 401, the Court should still exclude it under Rule 403.

## CONCLUSION

For the reasons set forth above, Verizon respectfully requests that the Court enter an order barring testimony or other evidence regarding Lee's employment history beyond (1) evidence regarding the December 17, 1998 incident which led to plaintiff's termination and Lee's suspension; (2) evidence regarding the contents of Lee's personnel file; and (3) testimony by those involved in disciplining Lee and related evidence regarding the basis for taking less severe disciplinary action against Lee than plaintiff.  Verizon also specifically requests that the

Court bar any testimony by Dankert as to his personal interactions with Lee or as to any alleged incidents involving Lee that were not reflected in her personnel file.

    Dated: March 14, 2005                          _____/s/_____
                                                              Karen M. Wahle, Bar No. 013658
                                                              Ira H. Raphaelson, Bar No. 012849
                                                              O'MELVENY & MYERS LLP
                                                              1625 Eye Street, N.W.
                                                              Washington, D.C. 20006
                                                              (202) 383-5300
                                                              (202) 383-5414 (facsimile)

                                                             Counsel for Defendant
                                                             Verizon Maryland Inc.