```
 1          IN THE UNITED STATES DISTRICT
            FOR THE DISTRICT OF MARYLAND
 2               (NORTHERN DIVISION)

 3


 4   FRANCES DARCANGELO,

 5          Plaintiff,

 6   vs.                           Civil Case No. S-02-816

 7   BELL ATLANTIC,

 8          Defendant.

 9   _____/

10          The deposition of ANN SEWELL

11   was held on Friday, April 25, 2003, commencing

12   at 1:15 p.m. at the office of O'Melveny & Myers,

13   LLP, 1650 Tysons Boulevard, Suite 1150, McLean,

14   Virginia 22102, before Richard G. Underwood, Notary

15   Public.

16   APPEARANCES:

17          EDWIN R. BURKHARDT, ESQ.
                On Behalf of the Plaintiff
18

19          MARTHA DYE, ESQ.
                On Behalf of the Defendant
20

21   REPORTED BY:  Richard G. Underwood
```

1  30(b)(6) and as such Ms. Sewell is being presented as
2  a company representative on certain limited subjects
3  that have been agreed to between the parties and my
4  understanding is that you will testify regarding the
5  policy of progressive discipline and the role,
6  policies and procedures of labor relations in the
7  disciplinary process both generally and as
8  specifically applies to plaintiff, Fran Darcangelo.
9        EXAMINATION BY COUNSEL FOR THE PLAINTIFF
10       BY MR. BURKHARDT:
11    Q    Good afternoon, my name is Edwin
12 Burkhardt.  I am an attorney representing Frances
13 Darcangelo who is pursing a lawsuit against Verizon.
14 We brought you here today to ask you a few questions
15 about the policies and procedures of some areas that I
16 guess I have been told that you may have some
17 familiarity with.  I guess number one, what is your
18 job title?
19    A    I am director or labor relations.
20    Q    You have been in that position for how
21 long?

1    A    It means that we, the company, and the
2    union agree that we will not discriminate.
3    Q    Not discriminate in the sense of acting
4    arbitrarily?
5    A    I am having trouble with the question.
6    Could you rephrase it?
7    Q    Does the CBA restrain Bell Atlantic from
8    asking arbitrarily, you know, treating one employee
9    one way for a given -- supposed transgression and
10   another employee treated differently for the same
11   transgression, is there something in there that limits
12   the company's ability to discipline differently?
13   A    I can't bring the discrimination clause to
14   my mind.  I am sorry -- if you have a copy of it.
15   Q    We will get to that a little later.
16   A    Okay.
17   Q    What is "progressive discipline"?
18   A    In progressive discipline the company
19   takes increasingly severe disciplinary action in an
20   attempt to communicate with employees about rules,
21   procedure, expectations.

1          MS. DYE:  Objection.  Asked and answered.

2  BY MR. BURKHARDT:

3       Q    Do you believe these Just Cause Standards

4  were applied to Frances Darcangelo?

5       A    Yes, I do.

6       Q    Do you believe they were applied to

7  Barbara Lee?

8       A    Yes.

9       Q    When you guys did your assessment on the

10 discipline for that final incident, Barbara Lee and

11 Frances, did you go through these factors in deciding

12 that Barbara Lee would be suspended and Frances would

13 be terminated?

14      A    Yes.

15      Q    How was it decided that Frances would be

16 terminated and Barbara would be suspended?

17      A    It was apparent that discipline was

18 appropriate for the incident for both parties.

19 Looking at where Fran was in the disciplinary process,

20 we made a decision about what should happen with Fran

21 and then when we looked at Barbara's case which we

1   looked at separately, we looked where Barbara was in

2   the disciplinary process and made the decision about

3   Barbara.

4       Q    Now, is threatening another individual

5   with bodily harm, isn't that a terminable offense?

6       A    You know, it can be, yes.  It can be.

7       Q    Because we talked about it before.

8       A    Right.  It can be.

9       Q    But in this case it wasn't?

10      A    That is correct.

11      Q    So, the extent of the company'S concern

12  over Barbara Lee's behavior in this incident was to

13  give her 3-day suspension?

14           MS. DYE:  Objection.  Mischaracterizes the

15  testimony.

16  BY MR. BURKHARDT:

17      Q    Is that true?

18      A    I think that did mischaracterize my

19  testimony.

20           When we looked at the incident, we

21  believed that disciplinary action was appropriate in

1   both cases. When we looked at Barbara's case, this
2   was an employee with a clean record, there was nothing
3   in her personnel file that indicated that she had
4   engaged in threatening behavior. In addition, there
5   were, I think, some allegations that -- I can't recall
6   that precisely -- but when we look at discipline, we
7   look at whether or not there are aggravating or
8   mitigating factors. In Barbara's case there were
9   mitigating factors.
10        Q   What were they?
11        A   We believe she had a clean record and we
12  also believed that she was provoked.
13        Q   Your belief that Barbara Lee had a clean
14  record, where did you get that belief from?
15        A   From the fact that there were no incidents
16  in her personnel file.
17        Q   The incident would only be in her
18  personnel file if a supervisor documented it?
19        A   A supervisor documented them, right.
20        Q   So, if they were not documented, they
21  would not be in there. Correct?

```
 1      A      That's right.

 2      Q      Did Marianne Moxey tell you that this was

 3  Barbara Lee's first incident?

 4      A      I don't recall her saying that, but I do

 5  recall asking if there were, what her personnel file

 6  looked like.

 7      Q      What did she tell you?

 8      A      Clean.

 9      Q      No previous record?

10      A      Right.

11      Q      Other than Frances' case, are you familiar

12  with other instances in the company where people have

13  been terminated for misconduct?

14      A      Yes.

15      Q      Can you tell what you know about them?  Do

16  you know the individuals' names and the circumstances?

17      A      You want me to go through all the cases

18  that have been dismissed?

19      Q      For misconduct.  I can start out with the

20  types of misconduct that is more closely related to

21  what we are talking about, for example, violence,
```