BEFORE THE MARYLAND COMMISSION ON HUMAN RELATIONS

IN THE MATTER OF:

Frances Darcangelo                      Edwin R. Burkhardt, Counsel
P. O. Box 253                           401 Washington Avenue, Suite 203
New Freedom, PA 17349                   Towson, MD  21204

COMPLAINANT

v.

Bell Atlantic                           G. K. Miles
Shawan Road                             Bell Atlantic Network Services, Inc.
Hunt Valley, MD  21030                  13100 Columbia Pike – B31
                                        Silver Spring, MD  20904

RESPONDENT                              RESPONDENT'S REPRESENTATIVE

CASE NUMBER:      9907-0089
EEOC NUMBER:      12F990655
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
### WRITTEN FINDING

    The above-captioned case has been investigated pursuant to Article 49B, Section 10(A) and the Maryland Commission on Human Relation's Rules of Procedure, COMAR 14.03.01.06(A). All procedural requirements have been met.

## SUMMARY OF COMPLAINANT'S POSITION:

1.    Complainant alleges that based on her race, Caucasian and disability, bi-polar disorder, she was disciplined, suspended and ultimately terminated. Complainant alleges she was diagnosed with a psychiatric disability in December 1989 and shortly thereafter, Respondent became aware of her disability.  Starting in late 1997, Respondent resumed a campaign to stigmatize and ostracize Complainant because of her mental disability. Most recently on December 17, 1998, Barbara Lee, African American attempted to give Complainant a work assignment. Complainant alleges Barbara Lee ranted and raved and after exchanging words with her physically confronted Complainant in a threatening manner by entering her cubicle, screaming and arguing with Complainant. Barbara Lee also challenged Complainant to go outside and continue the argument.

**EXHIBIT**

Darcangelo #6

V-DAR 00806

Complainant alleges as a result of the argument Barbara Lee was suspended for three days. Complainant worked a half-day, and then was suspended without pay until her employment was terminated on January 6, 1999, at which time she was informed that she was being terminated for violating the code of conduct. Barbara Lee was only suspended, not terminated, for the same incident. Complainant feels Respondent discriminated against her on the basis of her disability by terminating her employment.

## SUMMARY OF RESPONDENT'S POSITION:

2.    Respondent denies that any act of discrimination has occurred regarding this matter. Respondent's position is that it responded to inappropriate and disruptive behavior by Complainant. Complainant was disciplined for an established pattern of unacceptable conduct, which disrupted the workplace and offended other employees. Many attempts were made to constructively address Complainant's inappropriate conduct that included being disruptive in the workplace, failure/refusal to follow instructions, being rude and argumentative, committing acts of insubordination (such as ignoring supervisory directives), and offending co-workers with degrading remarks, including racially derogatory comments. These efforts included supervisory instructions coaching, referrals to medical professionals, relevant training, and corrective discipline action. Complainant's unacceptable behavior continued and resulted in her dismissal.

## SUMMARY OF THE INVESTIGATION:

3.    Complainant began employment on November 6, 1977, as a janitor. She was promoted to the position of Central Office Technician. ON January 6, 1999, Complainant's employment was terminated. Complainant was diagnosed with bi-polar disorder in December 1989. Complainant feels in late 1997 Respondent began a campaign to stigmatize and ostracize her because of her mental disability.

4.    The documented chronology of events is a follows:

    (a) On January 11, 1983, warning for disruptive conduct which caused co-workers to be fearful of her (the display of two bullets).

    (b) On March 16, 1983, Complainant wore a T-shirt to work stating, "Hitler was right" and "Kick Ass." Complainant was suspended for refusing the offer to go home to change her T-shirt on company time or covering it with a jacket.

    (c) On March 24, 1992, warnings for use of profanity while guests were touring the facility.

    (d) September 1992 through March 1994 appraisal indicates a "Needs Improvement" rating for not showing respect for others and using nicknames and defaming comments when angry.

    (e) For appraisal year 1995, Complainant received a supervisory coaching regarding the need to control her behavior and she was advised that she couldn't disrupt the workplace with shouting or other displays of her temper.

    (f) For appraisal year 1996, Complainant was coached on her lack of interfacing skills and the need to remain professional and not allow frustrations to drive her emotions.

V-DAR 00807

(g) For appraisal year 1997, supervisory comments stated that Complainant used language that was offensive to others (i.e. gender and ethnic epithets, as well as demeaning characterizations of co-workers and management).

(h) On August 14, 1997, Complainant was confronted for inappropriately eating food and reading a newspaper at her workstation when she should have been working. In response to this supervisory instruction, Complainant argued about African American co-workers and referred to them as "niggers."

(i) On October 13, 1997, a meeting was held with James Conrad, Manager, Complainant and her union representative to inform Complainant that continued unacceptable and offensive behavior by her would not be tolerated. Examples of unacceptable conduct, disruptive behavior, offensive/derogatory comments (such as "nigger", "fuck", "idiot", and "ass kisser"); and offensive materials (such as office products with the words "dog piss" written on them and work cubicles taped off like a police crime scene). Complainant was advised that any further incidents of offensive behavior would result in disciplinary action.

(j) On November 4, 1997, Complainant was referred for an Independent Medical Evaluation (IME). Complainant was permitted to return to work without medical restrictions and without any accommodations, with the exception of one week of a shift of three-quarters the usual length.

(k) On March 6, 1998, Complainant referred to supervisor, Charles English, as a "lying sack of shit."

(l) On March 9, 1998, Complainant yelled at her supervisor, Marianne Moxey, so loudly that it disrupted the office.

(m) On May 8, 1998, Complainant placed a poster in her work area containing a picture of Mr. English in the center of a shooting target. Complainant was suspended for ten (10) days and referred for a medical evaluation.

(n) On June 4, 1998, a meeting was held and Complainant was informed she was being placed on progressive discipline and future incidents would result in further disciplinary action, up to and including dismissal.

(o) On September 15, 1998, Complainant was rude on the telephone to a supervisor.

(p) On September 23, 1998, Complainant was involved in a series of inappropriate incidents, including: refusing assigned training, being insubordinate by leaving a meeting with a supervisor after having been instructed to remain; disrupting the workplace with loud language; and referring to Ms. Moxey as a "slut." When Ms. Moxey asked Complainant if she'd referred to her as a "slut", Complainant responded that she would have to "think about it." Complainant was suspended for three days.

(q) On September 30, 1998, a meeting was held to discuss the recent suspension as a result of employee complaints.

(r) On October 23, 1998, Complainant walked out on a business contract with another technician and a customer. Complainant was suspended for 15 days for rude and unprofessional behavior.

(s) On November 16, 1998, when Complainant returned from her suspension, she was warned that further acts of unacceptable behavior would lead to disciplinary action, up to and including dismissal.

5.     The investigation revealed that on December 17, 1998, Complainant was dismissed following a confrontation with co-worker Barbara Lee. As a result of this incident, both employees were sent home pending further notice after management investigated the matter. It was determined that Ms. Lee would be suspended and Complainant would be terminated. Complainant does not deny her participation in the confrontation with Ms. Lee. Complainant was informed she was being terminated for violating the code of conduct.

6.     As evidence of a history Complainant identified numerous events that occurred throughout her employment, which she found humiliating. For the purpose of this investigation the events that occurred prior to 1999 can only be considered in determining whether Respondent's response to Complainant's behavior was based on Complainant's disability or consistent with the progressive discipline policy and procedures.

7.     Respondent's Code of Business Conduct was obtained during the investigation and stipulates:

> "...we will be respectful, cooperative and helpful" and, that "we will not act in an abusive, threatening, discriminatory, harassing or obscene manner towards any employee or others with whom we come in contact during the course of business;

> ...we will be respectful of others ... we will not participate in any activity that ridicules, belittles, intimidates or otherwise demeans others;

> ...failure to comply with the standards set forth in the Code of Business Conduct can result in discipline, up to and including dismissal."

8.     An individual with a disability is any person who (1) has a physical or mental impairment which substantially limits one or more major life activities, (2) has a record of such an impairment or (3) is regarded as having such impairment. Once it is determined that an employee has a disability, the employee is expected to perform the major tasks of the job with reasonable accommodations and without endangering the health and safety of the individual or others. During an interview with the investigator Complainant acknowledged that she never requested an accommodation in response to her disability.

9.     Complainant had been referred to CORE, who is contracted by Respondent to handle occupational health and medical issues, for Independent Medical Evaluations (IME). Complainant was cleared to return to work without medical restrictions and without any accommodations.

10.     An employer may discipline an employee with a disability for violating a workplace conduct standard if the misconduct resulted from a disability. Providing the workplace conduct standard is job related for the position in question and is consistent with business necessity. Employers attempt to maintain a workplace free of violence or threats of violence. Employers may discipline an employee with a disability for engaging in such misconduct if it would impose the same discipline on an employee without a disability.

11.    There is no indication from reviewing Barbara Lee's personnel file that Respondent had ongoing concerns with her work conduct. The only incident cited was her involvement with Complainant in December 1998.

12.    The investigation revealed that during the relevant time period Respondent has disciplined other employees who were not known to have a disability. — T MSS

13.    The investigation has determined that there is no probable cause to believe that Complainant is an aggrieved person as defined under Article 49B. Complainants work behavior and conduct did not meet Respondent's expectations after being given repeated notice. There is no evidence Respondent's reasons are credible not and because there is no direct evidence of discriminatory motive, it is determined that there is no probable cause to believe that unlawful discrimination has occurred.

FINDING OF NO PROBABLE CAUSE:

.    Therefore there is **No Probable Cause** to believe that the Complainant has been discriminated against in violation of Article 49B, of the Annotated Code of Maryland.

Under the Commission's Rules of Procedure, COMAR 14.03.01.06C, the Complainant may apply for reconsideration of the no probable cause finding within fifteen (15) days from the date upon which these findings were mailed. The application should be in writing and shall state specifically the grounds upon which the application is based. A request for reconsideration shall be directed to Neil Bell, Deputy Director, Maryland Commission on Human Relations, The William Donald Schaefer Tower, 6 Saint Paul Street, 9th Floor, Baltimore, Maryland 21202. If the request for reconsideration is granted, the Deputy Director shall notify the parties and remit the matter to the investigative staff for further appropriate action.

In the absence of a request for reconsideration, the above captioned complaint will be dismissed and Commission's proceedings in the matter will be terminated.

Freida D. Morgan, EEO
Date: 10-25-01

Pamela Jenkins Dobson, Supervisor

CERTIFICATE OF SERVICE

I hereby certify that this Written Finding was issued on the _25th_ date of _October_, 2001, and served on all parties to the complaint by regular mail on said date.

_Freida D. Mason_
FOR THE MARYLAND COMMISSION ON
HUMAN RELATIONS

V-DAR 00811