IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCES DARCANGELO,

          Plaintiff,

     v.

VERIZON MARYLAND INC.,

          Defendant.

No. WDQ-02-816 (Civ.)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION IN
LIMINE TO EXCLUDE OR LIMIT TESTIMONY BY MARIA BURY**

Defendant Verizon Maryland Inc. ("Verizon"), by and through its undersigned counsel,

respectfully submits this Memorandum in Support of its Motion in Limine to Exclude or Limit

Testimony by Maria Bury.

**INTRODUCTION**

Plaintiff has identified as a witness for trial a union official, Maria Bury, who has no

personal knowledge of the events underlying plaintiff's claims and whose only connection to this

case is that she at times served as an advocate for plaintiff in certain union grievance

proceedings.  Plaintiff's designations of excerpts from Bury's deposition demonstrate not only

that Bury has no personal knowledge of any of the events at issue in this lawsuit, but that

plaintiff intends to use Bury to present inadmissible hearsay, legal conclusions, conjecture and

improper opinion testimony.

Accordingly, Verizon respectfully requests that plaintiff be prohibited from proffering

Bury as a witness at trial and from submitting any designations from Bury's deposition unless

plaintiff can show a relevant, admissible purpose for Bury's testimony a trial based on Bury's

own personal knowledge.  Alternatively, in the event that Bury is allowed to testify at trial,

Verizon asks the Court to expressly limit the scope of Bury's testimony so as to exclude improper testimony of the nature reflected in plaintiff's deposition designations.

## ARGUMENT

### I.    Bury Lacks Personal Knowledge of the Key Factual Issues Surrounding Plaintiff's Claims.

As the Court is aware, a bedrock rule of evidence is that a lay witness may not testify as to matters for which the witness does not have personal knowledge.  FRE 602.  Applying this basic rule to Bury dramatically reduces, if not eliminates, the range of relevant issues on which she could possibly testify at trial and specifically precludes her from testifying as to the myriad of matters on which plaintiff has demonstrated an intent to examine her at trial.

Plaintiff alleges in this case that Verizon violated the Americans with Disabilities Act (the "ADA") by allegedly discriminating against her through various disciplinary actions leading to, and including, her termination and by not providing supposedly reasonable accommodations. Accordingly, relevant issues at trial will center on plaintiff's inappropriate work behavior, the decision-making process of Verizon in disciplining plaintiff, and whether the plaintiff requested any reasonable accommodations that would have been effective in correcting plaintiff's behavior.  Bury, however, did not personally witness plaintiff's conduct, was not responsible for determining plaintiff's discipline, and has no expertise in assessing the effectiveness of accommodations.

Rather, Bury's only connection to plaintiff or plaintiff's former supervisors arises from Bury's role as an officer in Local 2101 of Communication Workers of America, the union local to which plaintiff belonged prior to plaintiff's termination.  Bury became vice-president of the union local from 1991 through 1996 and became president of the local in 1997, a position which she still held at the time of her deposition in 2003.  (Ex. 1, Deposition of Maria Bury "Bury

Dep.", at 73-74.)  In addition to her union positions, Bury spent most of her career at Bell Atlantic (later Verizon) as a service representative.  (Bury Dep., at 71-72.)  In the late 1990s, she was given a nominal position as communications representative but admitted that she never actually performed that job, spending her time instead on union duties.  (Bury Dep., at 72-73.)

As a union official, Bury represented plaintiff in a first step grievance in 1994, which is not the subject of plaintiff's lawsuit, and in certain grievance appeals, or second step grievances, after Bury became local president.  (Bury Dep., at 16, 17-19, 27.)  Under the terms of the collective bargaining agreement, Bury's responsibility in these grievances was to represent plaintiff and to negotiate with the company on plaintiff's behalf.  (See Ex. 2, at 18-23 (setting forth grievance procedures).)  In other words, Bury participated in the grievances as plaintiff's advocate.  Bury never met plaintiff before the 1994 grievance, and, other than brief exchanges of greetings, Bury did not have contact with plaintiff outside the context of preparing for and attending the grievance hearings.  (Bury Dep., at 48-50.)

Bury never actually worked with plaintiff and testified that she was in a "totally different atmosphere, totally difference department."  (Bury Dep., at 48-49.)  She has never performed plaintiff's job and does not know how much interaction with other employees is required in that position.  (Bury Dep., at 62.)  She likewise did not work with plaintiff's supervisors—Jim Conrad, Marianne Moxey, Gottlieb Fleig, and Butch English—and knew them, if at all, only through the grievance procedures.  (Bury Dep., at 112-14.)

Bury did not personally witness the inappropriate work behavior that caused plaintiff to be disciplined. (Bury Dep., at 27.)  Bury also admitted that because her only contact with plaintiff was through the grievances, Bury was only aware of those incidents of plaintiff's inappropriate contact that caused plaintiff to file a grievance.  (Bury Dep., at 57-58.)

In sum, Bury's only awareness of plaintiff's work requirements, plaintiff's behavior and the events leading to plaintiff's being disciplined and ultimately terminated was not acquired from personal experience but instead was developed second-hand from the same type of documentary and testimonial evidence that will be available to the jury at trial. Moreover, Bury did not acquire her limited knowledge as a dispassionate observer but instead acquired it as an advocate preparing to present plaintiff's version of events in the best possible light. Accordingly, Bury's testimony on those issues would not in any way aid the jury but would only risk prejudicing the jury by the addition of Bury's improper opinion testimony.

## II.    __Plaintiff Has Demonstrated an Intention to Solicit Inadmissible Testimony from Bury.__

While it might be theoretically possible to posit a circumstance where even Bury's very limited personal knowledge could enable her to testify as to narrow issues at trial, plaintiff's deposition designations, as set forth in the Proposed Pretrial Order, make clear that plaintiff does not intend to use Bury's testimony in such manner.[1]  Rather, the portions of Bury's deposition designated by plaintiff consist almost exclusively of speculation, hearsay, legal conclusions and otherwise improper and irrelevant opinion testimony.  Verizon has objected to plaintiff's deposition designations for Bury and other individuals on the grounds that plaintiff has not demonstrated that those individuals will not be available to testify at trial.  Nonetheless, plaintiff's pervasive designation of improper deposition testimony strongly suggests that plaintiff will attempt to solicit similarly inadmissible testimony at trial.

### A.    __Testimony as to propriety of, and motivations behind, disciplinary actions against plaintiff.__

---

[1] Plaintiff's deposition designations are set forth in Section K of the Proposed Pretrial Order, and a copy of Section K is attached hereto as Exhibit 3.

Plaintiff has designated a number of flatly conclusory statements by Bury as to the propriety of disciplinary actions against plaintiff and the motivations of plaintiff's supervisors. For example, plaintiff designated, *without any further context*, the following excerpts from Bury's deposition:

> Q:    Do you have an opinion about whether her disciplining associated
>        with that incident was justified or not?
> A:    I don't think termination was justified.

(Bury Dep., at 44: 5-9);

> A.    I think they were not as tolerant of Fran because of her condition.
> Q:    Was she as –okay.  What did you, what do you base that on?
> A:    I have to think of a way to explain this to you.
>        My dealings with this case and Jim Conrad and Fran are they were aware
>        that she had a disability.  They were aware that he had certified under
>        ADA, and they got to a point where they just were not going to work with
>        her any longer, and they were looking for a reason to get rid of her is the
>        best way to put it.

(Bury Dep., at 54: 12-25);

> A:    Oh, I think it was all related to her medical condition.

(Bury Dep., at 60: 19-20.)

Plaintiff has also designation deposition excerpts in which Bury expressed her opinion that plaintiff should not have been suspended for insubordination.  (Bury Dep., at 24: 7-18.)

Federal Rule of Evidence 701 specifically provides that a lay witness such as Bury may provide testimony in the form of opinions or inferences only to the extent that such opinions or inferences, "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Plaintiff's lay opinions as to the propriety of Verizon's disciplinary actions and the motivations behind plaintiff's supervisors in taking those actions were not rationally based on Bury's own perception. First, most of the excerpts contain no explanation of the basis for Bury's opinions whatsoever and so cannot be said to be rationally based on any perception. Second, as discussed above, Bury's opinions as to the appropriate consequences of plaintiff's behavior and the motivations of those involved in deciding those consequences could not have been based on Bury's own perception of events because Bury did not witness plaintiff's behavior first-hand and did not participate in the decisions to discipline plaintiff. Rather, Bury's only knowledge was at best garnered second-hand from other individuals in the context of an adversarial proceeding. Indeed, Bury's opinion that plaintiff's termination was unjustified lacks even that foundation since Bury could not remember during her deposition whether she even attended the grievance hearing related to that termination. (Bury Dep., at 19-20.)

Further, Bury's opinion testimony fails the requirement under Rule 701(b) that lay opinion testimony be helpful to the jury. As the Advisory Committee Notes to Rule 701 make clear, part b of Rule 701 is particularly intended to exclude "meaningless assertions that amount to little more than choosing up sides." Bury's conclusory statements that plaintiff's termination was unjustified and that the decisions to discipline plaintiff were based on her medical condition fall squarely within that description.

Bury's opinion testimony is unhelpful for the addition reason that opinions are based on the same evidence that the jury will be exposed to during the trial. Bury's own state of mind is not an issue in the trial, and she has not been designated as an expert capable of bringing any specialized knowledge to bear on trial issues. Simply put, Bury's

opinion testimony provides nothing constructive to the jury that the jury itself cannot derive from evidence supplied by those individuals who either witnessed plaintiff's conduct or were themselves involved in determining Verizon's response.

      **B.**      **Opinion testimony regarding posting of supervisor's picture on shooting target.**

Plaintiff has also designated deposition testimony by Bury in which Bury provided opinions regarding an incident in which plaintiff posted a supervisor's picture on a shooting target in plaintiff's cubicle. Specifically, plaintiff has designated Bury's testimony that the poster was not inappropriate, that "everyone" thought it was a "joke", and that it was not "threatening in any way." (Bury Dep., at 38: 9-11, 20-21; 97: 4-14; 99: 3-14.)

As with her opinions regarding the propriety and motivation of Verizon's disciplinary actions, Bury's opinions regarding the shooting target incident fail to meet the requirements of Rule 701. Bury was not the subject of the target, did not see the target in plaintiff's workplace, did not witness the impact of the target in that workplace, and lacks personal knowledge of the circumstances surrounding the posting of the target. (Bury Dep., at 27, 38-39.) Rather, Bury's opinions are completely dependent on accounts provided by others and her viewing of the target outside in the course of the grievance proceedings. Indeed, Bury's testimony regarding what "everyone" thought of the shooting target and threatening nature of the target in the workplace, whether couched as opinion or not, is nothing more than inadmissible hearsay and should be excluded under Rule 802 in addition to Rule 701.

Moreover, Bury's opinions are entirely unhelpful to a jury because they provide no information that the jury cannot itself derive from viewing more direct evidence,

including the target itself and testimony by those actually present and involved in the incident at issue. Indeed, Bury's opinions are particularly unhelpful in that she admitted during her deposition that she did not know what the target was. (See Bury Dep., at 38 ("There was nothing—if you didn't know what that was, if you didn't know it was a target sign, and I've never owned a gun and never been, shot a gun, never went to target practice. I had never seen anything like this. I mean to me, it was just a poster. Doesn't mean anything.")) The plaintiff's supervisors, in contrast, did recognize the target as a shooting target, another fact that was not known by Bury. (See Ex. 4, Deposition of James Conrad, at 47-48; Ex. 5, Deposition of Charles English, at 65-66; Bury Dep., at 96.) Thus, Bury's opinions, which for the most part constitute no more than hearsay and which are otherwise based on Bury's ignorance of relevant facts, are at best entirely irrelevant and at worst prejudicial and should be excluded from trial.

C.    **Speculation as to effects of sensitivity training.**

In addition to Bury's improper opinion testimony as to past events, plaintiff has designated Bury's pure speculation as to the effects that sensitivity training may have had on plaintiff's coworkers. (Bury Dep., at 115: 9-10; 118: 20-24.) Plaintiff has apparently designated such testimony in an attempt to argue that sensitivity training was an effective and reasonable accommodation which Verizon failed to provide. Bury has not been designated as an expert on sensitivity training or any other topic, and because she never worked in the same location as plaintiff, has no basis for speculating as to the impact hypothetical sensitivity training would have had on plaintiff's coworkers or on plaintiff's behavior. Meanwhile, because there is no evidence that Bury was ever called upon to determine on behalf of Verizon whether to institute sensitivity training, her conjecture as

to its effect serves no other relevant purpose.  Accordingly, Bury should not be allowed to testify as to her beliefs regarding the potential effectiveness of sensitivity training or any other hypothetical accommodation.

**D.     Legal conclusion as to plaintiff's rights.**

Plaintiff's designations additionally include Bury's assertions that plaintiff had a right to union representation during a conversation between plaintiff and one of her supervisors.  (Bury Dep., at 24: 7-18; 25: 11-16.)  Bury was not a participant in the conversation between plaintiff and her supervisor and therefore can provide no factual testimony that would bear on whether union representation was required.  Meanwhile, Bury was not designated as a legal expert and there is, in any event, no indication that she has had any relevant legal training.  Rather, her statements represent only the biased personal opinion of plaintiff's former advocate and are therefore both irrelevant and potentially prejudicial.

**E.     Hearsay testimony.**

In the absence of relevant personal knowledge by Bury, plaintiff has designated excerpts from Bury's deposition that constitute nothing more than hearsay evidence.  As an example, plaintiff has designated the following excerpt from Bury's deposition, "A:  I don't know about prejudice.  I know Marianne, *one of the things that I hear the most about her* is that she has certain people that she favors, and if you're one of her favorites, you can't do anything wrong, but if you're not, you very seldom can do anything right."  (Bury Dep., at 113: 7-12 (emphasis added).)  As this testimony serves no discernable purpose except to establish the truth of statements supposedly made by individuals other than Bury, this entire excerpt is nothing more than inadmissible hearsay.

**F.      Testimony as to the beliefs or thoughts of others.**

Finally, the designated portions of Bury's deposition contain a number of instances in which Bury testifies as to the beliefs and thoughts of other witness.  As discussed above, Bury testified as to the motivations of plaintiff's supervisors and claimed that "everyone" knew that the shooting target was merely a joke.  In addition, plaintiff has designated a passage in which Bury asserts that plaintiff's coworker, Barbara Lee, and other unidentified union officials "thought" plaintiff was "crazy."  (Bury Dep., at 89:3-6.)  Aside from the questionable relevance of this testimony, neither the designated testimony nor any other part of Bury's deposition provides any basis for this testimony.

Likewise, plaintiff has marked testimony by Bury that plaintiff "knew that she was in discipline, that she was entitled to union representation, and she also knew any time she was called into a room with management, it generally led to some type of investigation."  (Bury Dep., at 24:7-18.)  Bury was not present at the incident in question.  Thus, her testimony as to what plaintiff "knew" at the time of the incident is either pure speculation or merely repetition of plaintiff's own assertions to Bury in which case it is inadmissible hearsay when offered by plaintiff at trial.

These deposition excerpts are not only objectionable in and of themselves, but they exemplify the broader problem with Bury's testimony.  Because Bury was not herself present when the events at issue in the trial took place, her testimony regarding those issues will unavoidably consist of hearsay repetition of others' statements or Bury's own biased, non-expert opinions.  Presenting the facts through this filter does not in any way assist the jury in its determinations, but instead disrupts the fact-finding process by distancing the jury from the actual, direct evidence.

### III.    The Proper Scope, If Any, of Bury's Testimony Should be Determined Before Trial.

Under normal circumstances, Verizon would reserve its objections in the nature listed above until trial and then assert them individually as the need arises.  However, Bury's limited role as an advocate for plaintiff in certain grievance hearings and the objectionable nature of virtually all of the excerpts of Bury's deposition testimony designated by plaintiff raises serious doubt that Bury can provide any useful testimony at trial.  Moreover, even if Bury can provide admissible testimony on specific issues, attempting to sort out those narrow areas of proper testimony from the abundance of improper testimony suggested by plaintiff's deposition designations at trial would be a highly inefficient and disruptive process.

Accordingly, given the strong indication that plaintiff intends to use Bury's testimony for improper and inadmissible purposes, Verizon asks the Court to bar Bury from testifying at trial unless plaintiff can identify relevant issues on which Bury is competent to testify on the basis of personal knowledge.  In the event that plaintiff is able to identify such areas of testimony, Verizon asks that the Court expressly limit Bury's testimony to exclude the improper opinion and hearsay testimony outlined above.

### CONCLUSION

For the reasons set forth above, Verizon respectfully requests that the Court enter an Order barring the testimony of Maria Bury as well as the admission of any excerpts from the transcript of Bury's deposition or, in the alternative, expressly limiting Bury's testimony to those relevant issues for which plaintiff can demonstrate Bury has requisite personal knowledge.

Dated:  March 14, 2005

_____/s/_____
Karen M. Wahle, Bar No. 013658
Ira Raphaelson, Bar No. 012849
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
(202) 383-5300
(202) 383-5414 (facsimile)

Counsel for Defendant
Verizon Maryland Inc.