UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO, )  | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. WDQ-02-816 (Civ.) |
| ) | |
| VERIZON MARYLAND, INC., ) | |
| ) | |
| ) | |
| ) | |
| Defendant, ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO NAME A NEW EXPERT**

Plaintiff, Frances Darcangelo, by counsel, Morris E. Fischer, Esq., herein respectfully submits this memorandum in reply to Defendant Verizon's Opposition to Plaintiff's motion to appoint a new expert and states as follows.

### I.    Dr. Zimberg's Original Consent

While it is true that Dr. Zimberg was reluctant to testify as an expert, the fact of the matter is that he agreed to testify as such. This is reflected numerous times in his deposition. On pages 15-17 of Dr. Zimberg's deposition, (see exhibit "A"), he testified that he was qualified to serve as an expert by virtue of his treatment of Plaintiff and is experience as an administrator. On page 31, Dr. Zimberg answers a point blank question confirming that if called upon as an expert, he will serve as one. On page 107, he's asked another point blank question:

                "Q. Well, you are here as an expert, right?
                A. Yes."
             (Exhibit "A", page 107).

Dr. Zimberg's qualifications to be an expert are well noted. His Curriculum Vita indicates that he served as the Department of Psychiatry Chairman for Depaul Hospital in Norfolk, Virginia, in 1986-1987; served as a clinical supervisor in Psychiatry at the United States Naval Medical Center in Portsmith, Virginia in 1993-1994; was a consulting psychiatrist at Depaul Hospital, Norfolk, Virginia from 1990-1994; and an intake Psychiatrist at Northeast Community Mental Health Center in Philadelphia, PA from 1982-1985. He's board certified in Psychiatry and Neurology, Geriatric Psychiatry and addiction psychiatry. He also was a clinical Professor of Psychiatry at Penn State College of Medicine in 2000 (exhibit "B"). Defendant not only had access to Dr. Zimberg's Curriculum Vitae, it fully inquired into these areas at his deposition. Defendant's argument that his qualifications do not render him an expert in the first place is meritless.

## II.     The Need For An Expert

A case of this magnitude requires an expert Psychiatrist and this was reflected in Defendant's deposition of Dr. Zimberg in which counsel asked Dr. Zimberg a number of questions which could only be answered by an expert. The 220 page deposition itself is laden with questions regarding the Dr.'s treatment, impressions, condition, medical causes for Plaintiff's behavior, and other issues. Specific examples of areas in which only an expert could testify, include:

     a. The kind of accommodation he would have recommended for the Plaintiff (page 97, exhibit "A");
     b. The appropriateness of the multiple Independent Medical Examinations given by Defendant on Plaintiff (page 105, Exhibit "A");
     c. The role of Global Assessment Function (GAF) scores in indicating whether an individual can maintain employment (page 68-69, exhibit A);
     d. Commenting/rebutting the reports of Dr. Siebert, Dr. Russo and Dr. Gottlieb (pages 114-117, exhibit "A"); and
     e. Any opinion regarding the degree of limitation for a major life activity not based on his observation and treatment of the Plaintiff coupled with his experience and knowledge therein (pages 100-104, exhibit "A");

As such, since much of the testimony given at the deposition, is not clear as to whether it is based on expert status or through personal observation and treatment, potentially, Plaintiff's entire case could be greatly prejudiced by this doctor renouncing his expert status.

### III.    Dr. Zimberg's Report

Defense raises a contention regarding the inadequacy of Dr. Zimberg's expert report. However, even if that were true, it is well established that the purpose of the expert report is to prevent unfair surprise at trial, *Sylla-Swaddon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 377 (8th Cir. 1995), cert. denied, U.S. 116 S.Ct 84 (1995). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided and costs are reduced." *Reed v. Binder,*165 F.R.D. 424, 1996 U.S. Dist. Lexis 8837 (D.N.J. 1996).

Once shown that such report is not sufficiently complete, the adverse party can move for a sanction as per Federal Rule 37, which may include but is not limited to the exclusion of evidence. Id at 18. "To impose a sanction the court must first consider

whether there is "substantial justification" for the failure and then consider whether the failure was harmless." Id.   In determining the degree of harm suffered by the inadequate report, Courts will look to the prejudice sustained by the other party. Nguyen v. IBP, Inc., 162 F.R.D. 675 (D. Kan. 1995).

In the case at bar, it is undisputed that Dr. Zimberg was the treating doctor.  He provided a report and then gave a 220 page deposition that involved numerous areas of inquiry that exceeded the information listed on his report. Whatever deficiencies the report contained were covered by defense counsel in the deposition.  Had Defendant moved for a sanction because of the deficient report, the appropriate remedy may have been for Plaintiff to pay the deposition costs of the time taken for deposing the doctor into areas not covered by his report.

Defendant however, made no such motion.  Furthermore, Defendant's argument that it was planning to, is suspect because the appropriate time for that motion would have been either prior to or contemporaneous with its Summary Judgment motion.  It is likely that such motion was not made because the appropriate remedy would not have been the striking of Dr. Zimberg's expert opinions, but imposing costs on the Plaintiff for the added deposition expense.  It is ironic that Defendant's opposition raises that Plaintiff's motivation for bringing this motion is based upon improper strategic reasons or inexcusable neglect (page 1, Defendant's opposition).

### IV.   **The New Expert Will Not Cause Prejudice**

Defendant raises one valid point concerning Plaintiff's "bolstering" of its case, to which Plaintiff having reviewed the appropriate case law and Defendant's motion,

concedes. The fact is that Plaintiff's prior counsel failed to issue a report rebutting the Defendant's Independent Medical Examiner, Dr. Jeffrey Janofsky in accordance with the scheduling order. As such, to permit Plaintiff an expert who would now perform that function would cause unfair prejudice to the defendant.

Plaintiff doesn't seek that remedy, but instead seeks a replacement for Dr. Zimberg and the scope of his expert opinion, whether produced in his report or in deposition. Defendant has no valid argument for such replacement. There are all sorts of issues that face both sides with Dr. Zimberg's decision to withdraw as an expert. First, Plaintiff has to endure the cost of finding a replacement expert and the time involved in that activity. Second, the trial's delay is of no advantage to Plaintiff.

Third, it is clear from Defendant's opposition that it is concerned with Plaintiff obtaining a better or more thorough expert. This is indicative from Defendant's pointing to Dr. Zimberg spending only 30 minutes to review records and the like. However, Defendant fails to point out that Dr. Zimberg was the treating physician and knew the Plaintiff's medical history and condition through that treatment. Arguably, Dr. Zimberg could have been presented as a more appropriate doctor to testify on behalf of Plaintiff than another Psychiatrist, who never treated Plaintiff. Consequently, this motion has been made due to legal necessity and this situation is similar to an expert becoming incapacitated prior to his testimony.

Finally, it should be noted that this case is distinguishable from *Congressional Air v. Beech Aircraft Corp,*. 176 F.R.D. 513 (D. Md. 1997). In that case, a plaintiff attempted to issue a rebuttal report six months after it was due, from the same expert it had named throughout the case. The plaintiff attempted to demonstrate that such report was merely

supplemented its prior report. However, the Court found that the report's true purpose was to rebut the defendant's expert and disallowed it. There was no expert who became incapacitated prior to trial. In addition, Plaintiff concedes that Defendant would have the opportunity to depose said expert. Finally, given the 220 page deposition previously taken by Defendant on Dr. Zimberg, who had only a one page report, it is questionable whether Defendant even requires a report from this new expert.

## Conclusion

There is great prejudice to the Plaintiff caused by an expert medical witness who withdraws testimony from this case. While said expert was reluctant to testify as an expert, he ultimately gave a deposition repeatedly stating he would. Plaintiff seeks no unfair advantage in this case.

Respectfully Submitted,

/s/

_____

Morris E. Fischer, Esq.
MD: Bar No. 26286
Snider & Fischer, LLC
104 Church Lane
Baltimore, Maryland 21208
410-653-9060 phone
410-653-9061 fax
Attorneys for Plaintiff