IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO,<br><br>           Plaintiff,<br><br>    v.<br><br>VERIZON MARYLAND INC.,<br><br>           Defendant. | No. WDQ-02-816 (Civ.) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION IN LIMINE TO EXCLUDE DEFENDANT'S EXHIBITS**

    Defendant Verizon Maryland Inc. ("Verizon"), by and through its undersigned counsel, respectfully submits this Memorandum in Opposition to Plaintiff's Motion in Limine to Exclude Defendant's Exhibits and states as follows.

**INTRODUCTION**

    Faced with an abundance of evidence that Verizon did not discriminate against plaintiff on the basis of her alleged disability, plaintiff seeks through her Motion in Limine to Exclude Defendant's Exhibits ("Plaintiff's Motion") (Dkt. #119) to distort the trial record by excluding three categories of highly probative exhibits which are necessary to accurately reflect the weaknesses and limitations of plaintiff's claims.

    Plaintiff first seeks to create the impression that Verizon's decisions to suspend and ultimately terminate plaintiff were based on a more limited disciplinary record than actually existed by excluding virtually all exhibits documenting plaintiff's numerous acts of workplace misconduct before 1997 and Verizon's efforts to deal with that misconduct. Plaintiff then attempts to exclude exhibits reflecting the findings by two investigative governmental agencies that there was no probable cause to conclude that Verizon discriminated against plaintiff,

findings which other courts have found to be highly probative and *per se* admissible. Finally, plaintiff seeks to exclude exhibits reflecting the existence and dismissal of plaintiff's previous lawsuit against Verizon's parent corporation so that the jury in this case can impose liability for the same events that were at issue in that earlier action.

Plaintiff seeks to exclude each of these categories of exhibits solely under Federal Rule of Evidence 403 and primarily on the assertion that the prejudicial impact of the documents would substantially outweigh their probative value. However, for the reasons set forth below, the exclusion of those exhibits would mislead the jury by presenting a false picture of the substance and legally permissible scope of plaintiff's claims.

## ARGUMENT

**I.     Evidence regarding plaintiff's pre-1997 conduct is centrally relevant to the issues at trial.**

The first and primary focus of plaintiff's motion in limine is an effort to exclude all evidence relating to plaintiff's conduct prior to 1997. Plaintiff's argument is that, because she is not seeking damages on the basis of Verizon's disciplinary actions before 1997, her conduct prior to that date is irrelevant to this case. Plaintiff further contends that, given the egregiousness of her pre-1997 conduct, evidence of that conduct would be "inflammatory" to the jury. (Plaintiff's Statement of Points and Authorities ("Plaintiff's Statement" or "Pl.'s Stmt."), at 4.) This blatant attempt by plaintiff to run away from her own conduct is entirely without merit. As described below, plaintiff's pre-1997 conduct is highly relevant to the issues at trial for a number of reasons, and exclusion of evidence regarding that conduct would substantially prejudice Verizon by, among other things, presenting an entirely false image of Verizon's reasons for disciplining and ultimately terminating plaintiff.

### A. Plaintiff's pre-1997 conduct is relevant to support and explain Verizon's stated, non-discriminatory reasons for disciplining and terminating plaintiff.

Plaintiff alleges that Verizon violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") by (1) treating plaintiff more harshly than other employees on the basis of her mental condition in disciplining and ultimately terminating her and (2) failing to provide her supposedly reasonable accommodations.

To support her claims for disparate treatment, plaintiff must prove, *inter alia*, that she has suffered an adverse employment action solely due to discrimination on the basis of disability. *Baird v. Rose*, 192 F.3d 462, 466, 470 (4th Cir. 1999); *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 212 (4th Cir. 1994). To prove that the action was taken on the basis of disability, plaintiff must show not only that the reason proffered by Verizon for its conduct was false and pretextual, but also that discrimination was in fact the real reason for the action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) ("It is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."). Thus, information regarding the knowledge and states of mind of the Verizon decision-makers involved in determining to discipline plaintiff will be highly relevant to plaintiff's claims.

In the Proposed Pretrial Order, plaintiff asserted that she will attempt to establish disparate treatment by showing that she was terminated following a confrontation with a coworker named Barbara Lee, while Lee received only a three day suspension. (Dkt. #101, at A-4-5.) However, Verizon officials testified during their depositions that a critical reason that plaintiff was disciplined more severely than Lee was that Lee had a "clean" personnel record, while plaintiff's personnel record indicated that she was already in "progressive discipline" for

numerous instances of prior misconduct.[1]  (Ex. A, Deposition of Ann Sewell ("Sewell Dep."), at 53-56, 68-69; Ex. B, Deposition of James Conrad ("Conrad Dep."), at 176-78.)  Accordingly, a review of plaintiff's disciplinary record will be highly relevant to support Verizon's stated non-discriminatory reasons for the difference in disciplinary actions for plaintiff and Lee, and more generally to explain the severity of the discipline plaintiff received for her misconduct in 1998.  Notably, a number of the exhibits which plaintiff seeks to exclude were part of plaintiff's official personnel file, which plaintiff herself has listed as a possible exhibit.[2]

Plaintiff nonetheless tries to challenge the relevance of her pre-1997 conduct to Verizon's 1998 disciplinary decisions by pointing to certain summaries of plaintiff's conduct prepared in connection with plaintiff's termination and a meeting in which plaintiff was welcomed back from her final suspension.  (*See* Ex. D to Plaintiff's Statement.)  Plaintiff suggests that because those summaries only listed events that occurred on or after October 13, 1997, a date on which Verizon informed plaintiff that her future conduct would be dealt with through progressive discipline, any conduct before that date did not play any role in the decisions to suspend and terminate plaintiff.  (*See* Plaintiff's Statement, at 3-4; Ex. C, summary of October 13, 1997 meeting.)  However, neither of the summaries which plaintiff cites indicate that they were intended to be exhaustive lists of every incident of plaintiff's misconduct that Verizon considered in making its disciplinary decisions, and there is no other evidence that they were meant for that purpose.  To the contrary, at least one Verizon official has testified that the

---

[1] In her deposition, Ann Sewell, director of Verizon's Labor Relations department, explained that progressive discipline was a program under which a company takes increasingly severe disciplinary action in an attempt to communicate to an employee the need to meet company expectations and follow company rules.  (Sewell Dep., at 9.)

[2] The inclusion of a number of the challenged exhibits in plaintiff's personnel file can be confirmed by comparing the bates ranges of the challenged exhibits to the bates range for plaintiff's personnel file, which is included on plaintiff's list of possible exhibits in the Proposed Pretrial Order as exhibit 16.  (Dkt. #101, at H-5.)

4

decision to terminate plaintiff was based on a review of plaintiff's "entire record." (Sewell Dep., at 68-69.)

Moreover, even if plaintiff could establish, contrary to the evidence, that Verizon based its 1998 disciplinary decisions solely on plaintiff's conduct after she was placed in progressive discipline, plaintiff has nonetheless placed her pre-1997 conduct at issue by challenging the decision to put plaintiff in progressive discipline in the first place. Specifically, plaintiff states in the Proposed Pretrial Order that she intends to show that, "In October 1997, management became tired of dealing with Plaintiff's mental condition and led by James Conrad, adopted a heavy-handed, no tolerance policy for Plaintiff, as recorded by several documents in defendant's possession." (Dkt. # 101, at A-2.) Thus, plaintiff has expressed an intent to argue both that the decision to place plaintiff in progressive discipline was unreasonable and unfair and that it was motivated by Verizon's reaction to her mental condition rather than her inappropriate conduct. Verizon is entitled to refute those arguments by demonstrating that its decision to place plaintiff in progressive discipline was legitimately based on a pattern of misconduct by plaintiff dating back several years and the failure of other efforts to improve plaintiff's workplace behavior. Several of the challenged exhibits, for example, document efforts by Verizon to deal with plaintiff's misconduct at various times through formal warnings, suspensions, and distribution to plaintiff and her coworkers of general guidelines regarding employee conduct. (*See, e.g.,* Exs. D, E, F, G, H, & I, listed in Proposed Pretrial Order as Defense Exhibits 2-4, 19-21.)

**B.     Evidence of plaintiff's pre-1997 misconduct is relevant to refute plaintiff's suggestions that Verizon held any animus or prejudice towards plaintiff on the basis of her alleged disability.**

In addition to confirming and explaining the basis for the specific disciplinary actions challenged by plaintiff, evidence of plaintiff's pre-1997 conduct is also necessary to refute

plaintiff's efforts to create the impression that the reactions of Verizon officials were irrational and based on prejudices regarding plaintiff's mental condition. Plaintiff, for example, has indicated an intent to present evidence of Verizon's requirement that she submit to independent medical examinations in order to show "Defendant's overreaction to the events that Plaintiff allegedly committed." (Dkt. #101, at E-1.) Plaintiff's clear intention is to try to trivialize isolated incidents of plaintiff's misconduct and suggest that Verizon's reaction to those incidents was irrational and evidence of prejudice. Verizon has a right to show that its officials were responding not to isolated incidents but instead to a long-term pattern of egregious behavior. As an example, the concern that plaintiff may have posed a threat of violence to other employees was plainly informed not merely by reports of fear by other coworkers in 1997 and 1998 or by plaintiff's posting of a supervisor's picture on a rifle target in 1998, but also by documented reports that plaintiff (1) brought bullets to work and told a coworker that the coworker's name was written on them; (2) wore a t-shirt to work with the phrase "Hitler was right" written on it; (3) warned that if she received a certain award there would be "blood on the floor;" (4) waved a knife at other employees; and (5) hung threatening material in her cubicle. (*See* Exs. J, D, K, H, & I, listed in Proposed Pretrial Order as Defense Exhibits 1-2, 6, 16, 20-21.) Hiding evidence of the documentation that was available to Verizon officials from the jury would present an entirely false picture of the basis for Verizon's reactions.

Moreover, plaintiff's contention that her admission to some, but not all, of the misconduct outlined in the challenged exhibits makes the exhibits themselves unnecessary is simply wrong. As addressed above, the central question is not whether Verizon's actions were objectively correct but instead whether Verizon's decisions were motivated by intentional discrimination. In order to effectively assess Verizon's motivations, the jury must see the

6

information seen by the Verizon decision-makers in the form those decision-makers saw it. If the source, form or level of detail of the documentation on which Verizon relied makes the information more compelling, then that source, form and level of detail are themselves probative to the states of mind of Verizon's decision-makers.

**C.    Plaintiff's pre-1997 conduct is relevant to the issues of whether plaintiff was actually disabled and whether her misconduct was causally related to her alleged disability.**

Finally, much of plaintiff's early misconduct, and documentation of that misconduct, is relevant specifically because it predates any diagnosis of mental illness and indeed occurred at a time when plaintiff admits she was not disabled.

In order to maintain any action under the ADA, plaintiff must prove that she is disabled within the meaning of that Act. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff alleges that she is actually disabled in that she has bi-polar and/or personality disorder which renders her unable to control her behavior and which "substantially impacts the major life activities of working and social interactions." (Dkt. #101, at A-1, 4-5.) Based on these allegations, Verizon anticipates that plaintiff will attempt both to use her workplace misconduct as evidence of her alleged disability and to use her alleged disability to excuse her workplace misconduct by arguing that her conduct was out of her control.

Plaintiff, however, has not alleged that she was diagnosed with bi-polar disorder or any other mental illness prior to January 1990. (*See* Dkt. #101, at A-1 ("*As early as January 1990, Plaintiff, Fran Darcangelo was diagnosed with bi-polar disorder.*") (emphasis added).) Thus, incidents which occurred before January 1990 are relevant in that they undermine any argument

7

that plaintiff's alleged disability caused her workplace misconduct or that her misconduct is evidence of a disability.  In particular, the challenged exhibits include documentation of incidents plaintiff brandishing bullets to work and wearing a "Hitler is right t-shirt" in 1983, a time frame for which plaintiff is not claiming she was disabled.  (Exs. J & D, listed in Proposed Pretrial Order as Defense Exhibits 1-2.)  Excluding or minimizing evidence of those incidents would prejudice Verizon by creating the inaccurate impression that plaintiff's psychiatric episode in early 1990 was the genesis of her egregious behavior.

> **D.** **Plaintiff has herself expressed an intent to make her pre-1997 conduct an issue at trial.**

Plaintiff's effort to exclude documentary evidence of her pre-1997 conduct is particularly unreasonable in light of plaintiff's express intention to address her conduct, and Verizon's response to that conduct, during the pre-1997 time frame.  In contrast to her current suggestion that virtually anything which occurred before 1997 is irrelevant to this case, plaintiff expressly states in the Proposed Pretrial Order that she intends to support her disparate treatment claims by showing that the "actions that Plaintiff took which generated the suspension commencing in *1994*-1998 were not threatening in nature and were used as opportunities by management and co-workers to eventually remove her from her position."  (Dkt. #101, at A-5) (emphasis added.)  In addition, plaintiff indicates in the Proposed Pretrial Order that she intends to address in detail a 1994 incident in which plaintiff reported to work incapacitated from a severe reaction to a medication and was subsequently suspended.  (Dkt. #101, at A-2.)

Thus, plaintiff's request does not represent an attempt to narrow the focus of trial to events occurring in 1997 and later.  Rather, plaintiff is seeking to establish an unlevel playing field by selectively picking and choosing those pre-1997 events and evidence of those events that are most favorable to plaintiff's case while asking the Court to deny Verizon that same

opportunity. The Federal Rules of Evidence neither dictate nor condone such a one-sided approach to relevance. As plaintiff's own statements reflect, her pre-1997 conduct, although not itself a basis for liability, is relevant to several issues at trial, and related exhibits should therefore not be excluded.

> E. **The probative value of evidence of plaintiff's pre-1997 conduct far outweighs any possible prejudicial effect.**

In addition to arguing that plaintiff's pre-1997 conduct is irrelevant, plaintiff also argues that her pre-1997 conduct was so "inflammatory" that evidence of her own actions would be more prejudicial than probative and thus should be excluded under Federal Rule of Evidence 403. (Plaintiff's Statement, at 4.) Plaintiff's acknowledgement that her behavior was so offensive as to be inflammatory to the jury is not a basis for excluding the evidence but is instead essentially an admission of the weakness of plaintiff's case. The flagrant nature of plaintiff's pre-1997 conduct is directly tied to its probative value. Verizon's restraint in tolerating plaintiff's repeated "inflammatory" acts over a period of several years before deciding enough was enough directly refutes plaintiff's allegations that Verizon treated plaintiff more harshly than it treated other employees. Further, the fact that Verizon's decision-makers had access to and considered documented reports of plaintiff's long-term, outrageous and offensive behavior validates Verizon's position that it suspended and ultimately terminated plaintiff on the basis of her conduct and not her alleged disability. To hide evidence of that fact would prejudice Verizon and significantly mislead the jury.[3]

---

[3] Plaintiff also contends that the challenged pre-1997 exhibits are "duplicitous." (Plaintiff's Statement, at 4.) Verizon understands this to mean that the documents are duplicative, rather than misleading or untruthful. Because no evidence has yet been admitted into the trial record, it is impossible to determine what exhibits, if any, will be duplicative or unnecessarily cumulative. If plaintiff means to suggest that she herself intends to present evidence of the events addressed in the challenged exhibits, Verizon is entitled to present the evidence which it believes will be most effective to its defense regardless of whether plaintiff chooses to address similar events through evidence more favorable to plaintiff.

9

**II.     The Findings of the Equal Employment Opportunity Commission and the Maryland     Human Relations Committee are properly admissible.**

Next, plaintiff attempts to exclude from trial Defense Exhibits 76, 180, and 219 which set forth the respective findings of the Equal Employment Opportunity Commission (the "EEOC") and the Maryland Human Relations Committee (the "MHRC"). Plaintiff argues that such findings would be prejudicial to the jury. As the sole support of this argument, plaintiff cites to the Fourth Circuit's opinion in *Cox v. Babcock & Wilcox Co.,* 471 F.2d 13, 15 (4th Cir. 1972), in which the court cited to a *dissenting* opinion of a Fifth Circuit judge in *Smith v. Universal Services, Inc.,* 454 F.2d 154, 157 (5th Cir. 1972), which commented on the possible reasons for not admitting EEOC findings into evidence.

Contrary to plaintiff's suggestion, however, the court in *Cox* did not hold that EEOC findings are inadmissible. Rather, all the Fourth Circuit held in *Cox* was that the district court's decision in that case not to admit EEOC records into evidence under the facts in that case was not reversible error. *Id.* at 15. In other words, the Fourth Circuit merely adopted the approach of several other circuits in leaving the decision whether to admit such records into evidence to the discretion of the trial court. *See Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1345 (3d Cir. 2002) (holding that "the decision of whether or not an EEOC Letter of Determination is more probative than prejudicial is within the discretion of the trial court, and to be determined on a case-by-case basis.") Indeed, the Fourth Circuit itself recognized in a subsequent case that it had done just that. *United States v. MacDonald,* 688 F.2d 224, 230 (4th Cir. 1982) ("In *Cox . . .,* we indicated that the admission of evaluative public records was discretionary with the trial court."). Thus, it is entirely within the discretion of this Court to determine whether the alleged prejudicial effect of EEOC and MHRC findings in this case substantially outweighs their probative effect.

10

Other appellate courts have previously recognized that EEOC findings are highly probative in discrimination suits such as the current case in light of the EEOC's recognized expertise. As the *majority* held in *Smith.,* 454 F.2d at 157:

> We think, however, that to ignore the manpower and resources expended on the EEOC investigation and the expertise acquired by its field investigators in the area of discriminatory employment practices would be wasteful and unnecessary. The fact that an investigator, trained and experienced in the area of discriminatory practices and the various methods by which they may be secreted, has found that it is likely that such an unlawful practice has occurred, is highly probative of the ultimate issue involved in such cases.

Indeed, the Ninth Circuit has determined the probative value of EEOC findings "prepared by professional investigators on behalf of an impartial agency" to be so significant that it has held such findings to be *per se* admissible. *Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 505 (9th Cir. 1981). Such reasoning is similarly applicable to the MHRC, the EEOC's state-level counterpart.

Thus, the onus is on plaintiff to show that this recognized probative value is "substantially outweighed" in the present case by the alleged prejudicial effect of the findings. FRE 403. However, plaintiff has failed to point to any indication of bias on the part of either the EEOC or MHRC, has failed to demonstrate any clear inaccuracies in their findings, and has identified no basis whatsoever for considering the findings untrustworthy. In other words, plaintiff has suggested no circumstances particular to this case which would cause the alleged prejudicial impact of the agency findings to greatly outweigh their obvious probative value. Accordingly, the Court should deny plaintiff's request to exclude Exhibits 76, 180, and 219.

### III. Evidence of plaintiff's prior lawsuit is necessary to avoid confusion at trial.

Finally, plaintiff asks the Court to exclude from trial a copy of an amended complaint filed by plaintiff against the parent corporation of Verizon and a stipulation and order to dismiss

11

with prejudice plaintiff's claims in that action. Plaintiff contends that those materials would confuse or mislead the jury as to what issues have already been litigated between plaintiff and Verizon. However, the exact opposite is true. The amended complaint and dismissal order are necessary to make clear those issues, *and those transactions or events,* which have already been litigated and resolved as a matter of law and which therefore cannot form the basis of liability in this case.

The complaint and dismissal order at issue relate to an action which plaintiff filed in 2000 against Verizon Communications Inc. (the parent corporation of defendant here) in the Circuit Court for Baltimore County, which was later removed to this Court (Exs. M & N.) Plaintiff's December 4, 2000 amended complaint alleged that the defendant (alleged to be her employer) requested and forced her to undergo independent medical examinations (IMEs) in November 1997 and May 1998, and requested another IME in October 1998. (*See* Ex. M, ¶¶ 18-22.) She alleged that defendant's conduct violated state confidentiality and privacy laws, along with several common law torts such as invasion of privacy. (*See id.* ¶¶ 23-26.) On July 30, 2002, this Court dismissed Darcangelo's 2000 complaint with prejudice. (*See* Ex. N.)

Despite already having a separate case before this Court claiming that she was wrongfully required to submit to IMEs, plaintiff included in her complaint in this action a Count V, again alleging that she was wrongfully required to submit to IMEs. (Dkt. #1, at 11.) Accordingly, in support of its motion for summary judgment, Verizon explained that plaintiff's claim based on the IMEs was barred by *res judicata*. (*See* Mem. in Support of Def.'s Mot. for Summ. J., dated June 20, 2003 (Dkt #30), at 57-60.) Plaintiff responded by *expressly* abandoning the claim in her opposition to Verizon's motion for summary judgment and did not otherwise address Verizon's *res judicata* defense. (Dkt. #41, at 1 n.2 ("Plaintiff is abandoning

Count V (IME Referral Count), since Count II already challenges the suspension she received starting in May 1998, and she will not pursue the IME referral from October 1997, which may be time-barred anyways.").)

Notwithstanding the fact that plaintiff expressly abandoned Count V, she asserted in the Proposed Pretrial Order that her claim regarding the IME "should not be a count unto itself", but that it was an issue that could be included in other counts. (Dkt. #101, at E-1.) More specifically, plaintiff indicated that she intends to argue that the requirement that plaintiff submit to IMEs was a form of disparate treatment for which Verizon may be held liable. (*Id.,* at A-5.) As addressed in Defendant's Memorandum in Support of Motion in Limine to Restrict Argument Regarding Independent Medical Examinations (Dkt. #118), plaintiff's attempt to argue that the IMEs were a form of disparate treatment for which plaintiff may recover damages is a clear violation of the well-established doctrine of claim preclusion. Plaintiff's current request to exclude the amended complaint and dismissal order from the earlier action is a further effort to subvert *res judicata* principles by creating the false impression that the requirement that plaintiff must submit to IMEs was not litigated as a matter of law.

Plaintiff's request appears to be based on a fundamental misunderstanding of the doctrines of preclusion. Plaintiff's position seems to be that because she is claiming that the requirement that she submit to IMEs was wrongful for different reasons than she alleged in her earlier action, she is raising a legal *issue* which was not litigated in the earlier action and which therefore should not be precluded. That position, however, confuses the doctrines of *issue* preclusion with the doctrine of *claim* preclusion. Plaintiff's position would be correct if Verizon were asserting issue preclusion. Issue preclusion operates narrowly to bar "subsequent litigation of those legal and factual issues common to both actions that were actually and necessarily

determined by a court of competent jurisdiction in the first litigation." *In re Varat Enterprises,* 81 F.3d 1310, 1315 (4th Cir. 1996) (quotations omitted).

Verizon, however, is not asserting issue preclusion. Rather, Verizon has asserted claim preclusion. As the Fourth Circuit explained in *In re Varat Enters.,* "Rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, *but also of every claim that might have been presented.*" 81 F.3d at 1315 (emphasis added). The Supreme Court has asserted the doctrine of claim preclusion, often referred to as *res judicata,* even more strongly, stating:

> Simply put, the doctrine of *res judicata* provides that when a final judgment has been enter on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. The final judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.

*Nevada v. United States,* 463 U.S. 110, 129-130 (1983) (quotations and internal citations omitted).

As Fourth Circuit and Supreme Court precedent make clear, claim preclusion does not merely bar relitigation of the particular legal theory asserted in the first action. Rather, it extends to *any* claim brought under *any* legal theory which could be considered the same "cause of action." The Fourth Circuit has defined "cause of action" to extend to any claim that "arises out of the same transaction or series of transactions as the claim resolved by [a] prior judgment," *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999), or out of the "same core of operative facts," *In re Varat Enterprises,* 81 F.3d at 1316.

14

In turn, "[w]hat a factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24 (1982); *see also Pittston Co.,* 199 F.3d at 704 (citing Restatement (Second) of Judgments). The Restatement further explains:

> The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

Restatement (Second) of Judgments § 24, comment a (1982).

There is absolutely no question that plaintiff's intended claim that the requirement that plaintiff submit to IMEs constituted disparate treatment, and her earlier claims that the requirement that plaintiff submit to IMEs was wrongful, arise from the same series of transactions. Indeed, the claims involve not only identical events—the IMEs—and the identical aspect of those events—Verizon's requirement that plaintiff submit to the IMEs. Thus, the facts underlying the claims are inseparable in time, space, origin, and even motivation in that they will involve the very same decisions by Verizon to require plaintiff to submit to the very same IMEs. The claims will also require the same witnesses to testify as to the same decisions and events and the jury to review the same documentary evidence of the IMEs.

15

The only difference between plaintiff's current claim that the requirement that plaintiff attend IMEs was a form of disparate treatment under the ADA, and her earlier litigated claims regarding the requirement that she attend those same IMEs, is the legal theory as to why that requirement was unlawful. As discussed above, a mere difference in legal theories is not enough to avoid the application of claim preclusion. Meanwhile, for the reasons expressed in support of Defendant's Motion in Limine to Restrict Argument Regarding Independent Medical Examinations (Dkt. #118), all of the other requirements are met for claim preclusion to apply. Accordingly, under a straightforward application of the principles of claim preclusion, any claim that Verizon's requirement that plaintiff submit to IMEs was wrongful, whether because it was discriminatory under the ADA or for some other reason, is barred as a matter of law.

During the pretrial hearing, Verizon argued that evidence regarding the IME requirement should be excluded from trial in order to prevent plaintiff from misusing that evidence in the manner suggested in Plaintiff's Motion. The Court ruled at that time that such evidence could be presented at trial, and Verizon does not intend to reraise that issue either in this memorandum or in any of Verizon's motions in limine. However, exactly *because* such evidence will be presented at trial, admission of the amended complaint and dismissal order from the previous action are necessary to minimize the prejudicial effect of the IME evidence presented by plaintiff. In short, unless Verizon is allowed to present evidence of the earlier suit, the jury will be left with the false impressions that the IME requirements have not been resolved as a matter of law and that Verizon may be held liable in this action for imposing those requirements. Accordingly, plaintiff's request to exclude Defense Exhibits 141 and 142 should be denied.

## **CONCLUSION**

For the reasons set forth above, Verizon respectfully requests that the Court deny plaintiff's Motion in Limine to Exclude Defendant's Exhibits.

Dated:  March 28, 2005                                  Respectfully submitted,


                                                        _____/s/_____
                                                        Karen M. Wahle, Bar No. 013658
                                                        Ira H. Raphaelson, Bar No. 012849
                                                        O'MELVENY & MYERS LLP
                                                        1625 Eye Street, N.W.
                                                        Washington, D.C.  20006
                                                        (202) 383-5300
                                                        (202) 383-5414 (facsimile)

                                                        Counsel for Defendant
                                                        Verizon Maryland Inc.