1

```
 1              IN THE UNITED STATES DISTRICT
                FOR THE DISTRICT OF MARYLAND
 2                    (NORTHERN DIVISION)

 3

 4   FRANCES DARCANGELO,

 5           Plaintiff,

 6   vs.                          Civil Case No. S-02-816

 7   BELL ATLANTIC,

 8           Defendant.

 9   _____/

10           The deposition of ANN SEWELL

11   was held on Friday, April 25, 2003, commencing

12   at 1:15 p.m. at the office of O'Melveny & Myers,

13   LLP, 1650 Tysons Boulevard, Suite 1150, McLean,

14   Virginia 22102, before Richard G. Underwood, Notary

15   Public.

16   APPEARANCES:

17           EDWIN R. BURKHARDT, ESQ.
                On Behalf of the Plaintiff
18

19           MARTHA DYE, ESQ.
                On Behalf of the Defendant
20

21   REPORTED BY:  Richard G. Underwood
```

```
 1        A     It means that we, the company, and the

 2   union agree that we will not discriminate.

 3        Q     Not discriminate in the sense of acting

 4   arbitrarily?

 5        A     I am having trouble with the question.

 6   Could you rephrase it?

 7        Q     Does the CBA restrain Bell Atlantic from

 8   asking arbitrarily, you know, treating one employee

 9   one way for a given -- supposed transgression and

10   another employee treated differently for the same

11   transgression, is there something in there that limits

12   the company's ability to discipline differently?

13        A     I can't bring the discrimination clause to

14   my mind.  I am sorry -- if you have a copy of it.

15        Q     We will get to that a little later.

16        A     Okay.

17        Q     What is "progressive discipline"?

18        A     In progressive discipline the company

19   takes increasingly severe disciplinary action in an

20   attempt to communicate with employees about rules,

21   procedure, expectations.
```

1          MS. DYE:  Objection.  Asked and answered.

2  BY MR. BURKHARDT:

3      Q     Do you believe these Just Cause Standards

4  were applied to Frances Darcangelo?

5      A     Yes, I do.

6      Q     Do you believe they were applied to

7  Barbara Lee?

8      A     Yes.

9      Q     When you guys did your assessment on the

10  discipline for that final incident, Barbara Lee and

11  Frances, did you go through these factors in deciding

12  that Barbara Lee would be suspended and Frances would

13  be terminated?

14      A     Yes.

15      Q     How was it decided that Frances would be

16  terminated and Barbara would be suspended?

17      A     It was apparent that discipline was

18  appropriate for the incident for both parties.

19  Looking at where Fran was in the disciplinary process,

20  we made a decision about what should happen with Fran

21  and then when we looked at Barbara's case which we

```
 1   looked at separately, we looked where Barbara was in
 2   the disciplinary process and made the decision about
 3   Barbara.
 4        Q    Now, is threatening another individual
 5   with bodily harm, isn't that a terminable offense?
 6        A    You know, it can be, yes. It can be.
 7        Q    Because we talked about it before.
 8        A    Right. It can be.
 9        Q    But in this case it wasn't?
10        A    That is correct.
11        Q    So, the extent of the company'S concern
12   over Barbara Lee's behavior in this incident was to
13   give her 3-day suspension?
14             MS. DYE:  Objection. Mischaracterizes the
15   testimony.
16   BY MR. BURKHARDT:
17        Q    Is that true?
18        A    I think that did mischaracterize my
19   testimony.
20             When we looked at the incident, we
21   believed that disciplinary action was appropriate in
```

1  both cases.  When we looked at Barbara's case, this
2  was an employee with a clean record, there was nothing
3  in her personnel file that indicated that she had
4  engaged in threatening behavior.  In addition, there
5  were, I think, some allegations that -- I can't recall
6  that precisely -- but when we look at discipline, we
7  look at whether or not there are aggravating or
8  mitigating factors.  In Barbara's case there were
9  mitigating factors.
10      Q    What were they?
11      A    We believe she had a clean record and we
12  also believed that she was provoked.
13      Q    Your belief that Barbara Lee had a clean
14  record, where did you get that belief from?
15      A    From the fact that there were no incidents
16  in her personnel file.
17      Q    The incident would only be in her
18  personnel file if a supervisor documented it?
19      A    A supervisor documented them, right.
20      Q    So, if they were not documented, they
21  would not be in there.  Correct?

```
 1       A     That's right.
 2       Q     Did Marianne Moxey tell you that this was
 3   Barbara Lee's first incident?
 4       A     I don't recall her saying that, but I do
 5   recall asking if there were, what her personnel file
 6   looked like.
 7       Q     What did she tell you?
 8       A     Clean.
 9       Q     No previous record?
10       A     Right.
11       Q     Other than Frances' case, are you familiar
12   with other instances in the company where people have
13   been terminated for misconduct?
14       A     Yes.
15       Q     Can you tell what you know about them?  Do
16   you know the individuals' names and the circumstances?
17       A     You want me to go through all the cases
18   that have been dismissed?
19       Q     For misconduct.  I can start out with the
20   types of misconduct that is more closely related to
21   what we are talking about, for example, violence,
```

```
1   rating on The issue of her having job performance that
2   wasn't satisfactory.  Correct?
3        A    I don't recall.  I don't recall.
4        Q    I show you one document.  It is labeled
5   04064.  Let's introduce this as Deposition Exhibit No.
6   6.  Tell me if you have seen this before.
7             (Deposition Exhibit No. 6 was marked for
8   purposes of identification.)
9        Q    Have you seen this document before?
10       A    No, I haven't.
11       Q    You knew that Fran had been terminated.
12  Right?
13       A    Yes.
14       Q    Do you know why she was terminated?
15       A    Yes.
16       Q    Why?
17       A    She was terminated for misconduct.
18       Q    Was that the only reason why she was
19  terminated?
20       A    Her entire record was the reason that --
21       Q    She was terminated for --
```

```
 1              MS. DYE:  Let the witness finish her
 2   answer.
 3              MR. BURKHARDT:  I'm sorry.  Go ahead.
 4              THE WITNESS:  Her entire record which
 5   indicated progressive discipline over a period of time
 6   led to her termination.
 7   BY MR. BURKHARDT:
 8        Q     Was there anything else that led to her
 9   termination?
10        A     There was really no indication that Fran
11   was reacting to progressive discipline.
12        Q     Was Barbara Lee in progressive discipline?
13        A     Not at the time, not prior to this
14   incident.
15        Q     Was she placed in progressive discipline
16   as a result of this incident?
17        A     Yes, she was.
18        Q     What was the result of that?  Do you know?
19        A     I believe she had a 3-day suspension.
20        Q     Did she -- was there some point Barbara
21   Lee was released from progressive discipline?  Once
```