June 18, 1994

EXHIBIT
Conrad 4

Notes from meeting with Fran Darcangelo - 6/16/94

A meeting was held with Fran Darcangelo on this date to give her a formal warning that disciplinary action will take place if she does not change her behavior in the workplace. (A copy of the written warning can be seen in attachment #1.)

Present at the meeting:   Jim Conrad, Manager - FMAC/Transport
                          Mike Ports, Day Supervisor - FMAC
                          Butch English, Night Supervisor - FMAC
                          Fran Darcangelo, FMAC Technician
                          Ray Bartock, Union Steward

Meeting Notes:

1. <u>Jim Conrad reviewed last years incidents</u>.

    *   Ms. Darcangelo's multiple letters dealing with charges of harassment and other issues.
    *   Ms. Darcangelo's unprofessional comments such as: calling the SCC Midnight Supervisor " a fat bastard" and calling several supervisors who were participating in a conference call a "bunch of losers".
    *   The fact that she had created fear in the work place and that several employees had expressed a concern for their well-being when they had to work with Ms. Darcangelo.
    *   Her use of foul language in the work place.

    Jim noted that he had met with Ms. Darcangelo at that time at least three times and that she had stopped the above behavior.

2. <u>Jim then reviewed the recent incidents</u>.

    *   Her comments which were perceived to be threatening and the paper clippings which she had hung in her work area which were perceived to be threatening. He noted that he had asked the Security people to interview her about these issues. He also noted that the interview had taken place on 6/15/94 and that he was not going to repeat what was said at this meeting.
    *   He pointed out that Ms. Darcangelo has done a lot to create an image of herself that is threatening, such as: placing name stickers on various documents which identify her as the Tasmanian Devil, signing herself as "Fran TT" (for Fran the Terrible), and by signing multiple documents, including the recent work schedule as the "God-damned Lunatic". This all creates an image of a person who could turn violent in the work place. She was informed that this was not acceptable conduct.

* He discussed her conduct at meetings where she tends to roll her eyes and head during all conversations, turns her back to the group, and generally does not participate. She was informed that this is not acceptable conduct.
* He noted her disrespect for some of her co-workers. (Example: Calling one of them a "fat pig".) She was informed that this was not acceptable conduct.
* He discussed her phone style. (Example: answering the phone "FMAC Lunatic"). She was informed that this was not acceptable conduct.
* He noted that she has disrupted the workplace on more than one occasion and that this is not acceptable behavior.

He reiterated that "THIS IS NOT ACCEPTABLE BEHAVIOR AND IT WILL NOT BE TOLERATED IN THE FUTURE".

3. <u>Mr. Conrad noted that Ms. Darcangelo had made comments that indicated that she was the only person who was ever talked to about the problems relating to her. He pointed out that this was not true</u>. Specifically, he informed her of the following:
    A. All FMAC technicians were covered on the letter dealing with "Professionalism in the Workplace", not just her.
    B. All technicians were covered on the use of the OSS systems only for work-related items and not for snarky notes, sarcasm, or jokes.
    C. He informed her that the other employee who was involved in the change of shift problem which became a major incident was reprimanded and the interview was documented.
    D. He noted that the employee who "blew up" at a recent meeting and called her a "god-damned lunatic" had been reprimanded and the interview was documented.
    E. He informed her that all FMAC technicians were covered on the need to respect individual personal areas in the workplace.
    F. He informed her that the Supplemental Requirements document (attached) will be covered with all FMAC personnel in the near future.

He also noted that the difference was that the other employees admitted that what they had done was not appropriate and THEY HAD CHANGED THEIR BEHAVIOR.

4. <u>Mr. Conrad reviewed Ms. Darcangelo's appraisal status</u>.
    1992 - ES
    1993 - LES
    1994 - 1st quarter of appraisal - still sliding in several areas, particularly Service Orientation and Teamwork
    (Mike Ports and Butch English reviewed her quarterly for the record at the conclusion of Mr. Conrad's remarks.)

  5. Mr. Conrad reviewed the "FMAC Supplemental Job Requirements" document (attached). He asked if she understood it and she said yes but questioned several statements. Jim explained what was meant by "verbal handoffs" and abnormal reports. She asked what was meant by the no retaliation statement and Jim explained that no reaction is acceptable from anyone. He said "Two wrongs do not make a right". She was given a copy of the document.

6. Mr. Conrad then presented Ms. Darcangelo with a copy of the written warning (attached). He read it and asked if she understood it. She said yes. Ray Bartock asked what time period will be covered by the warning. It was decided that it would be in effect until 12/1/94. If Ms. Darcangelo's behavior remains satisfactory for that period of time, it will be removed.

7. Mr. Conrad closed the meeting by making the following observations:

- * He informed Ms. Darcangelo that he has a legal requirement to maintain an "harassment-free" work place and that he takes that very seriously. He also noted that everyone, including her, has a responsibility to make sure that this is achieved.
- * He asked Fran to begin a "new start" since she is moving to the Day Shift, with a new attitude.
- * He asked her to seek help when she feels like she needs it:
    - * From her supervisor, Mike Ports
    - * From him (He encouraged her several times to come and talk to him if she feels she is having difficulties).
    - * From her Doctor
    - * From other sources (He encouraged her to consider EAP as an option.)
- * He noted that she had indicated that she felt that she could not get help from her department because they didn't care. He said he cared about all of his people including her but that she had not allowed him or the group to help. He noted that:
    - A. Her demeanor has put up a "wall" between her and her co-workers and that they all tend to stay away from her.
    - B. She has created a perception which has raised fears in the work group.

C. She wrote a letter asking for a response and then filed a grievance which took away our ability to discuss the issues outside of the grievance process.
  D. She reported multiple incidents to the Security Department before we had a chance to even discuss them.

* He asked her if there was anything they could do to help in the way of training. He specifically suggested that she consider seminars dealing with Communications, Interpersonal Skills, "How to Deal with People" and "How to Handle Anger". She said she would consider the suggestion.

* He noted that the next Quarterly Review of her performance will be on 9/1/94. It will be conducted by him and Mike Ports.

* Finally, he noted that the Accountability was hers. She could be successful if she wants to be.


Notes provided by Jim Conrad and Mike Ports.

*J.P. Conrad* (signature)
6/18/94