IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO,<br><br>     Plaintiff,<br><br>     v.<br><br>VERIZON MARYLAND INC.,<br><br>     Defendant. | No. WDQ-02-816 (Civ.) |

### DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF MARTIN KRANITZ

Defendant Verizon Maryland Inc. ("Verizon"), by and through its undersigned counsel, respectfully submits this Reply Memorandum in Further Support of its Motion in Limine to Exclude Expert Testimony of Martin Kranitz and states as follows.

### INTRODUCTION

In its March 14, 2005 Motion in Limine to Exclude Expert Testimony of Martin Kranitz ("Verizon's Motion") (Dkt. #115), Verizon moved the Court to exclude or, in the alternative, substantially limit the testimony of plaintiff's designated "vocational expert," Mr. Kranitz,[1] at trial on the grounds that (1) his opinions are based on inherently unreliable information and, (2) his report fails to set forth any relevant opinions on which he is competent to testify.

In her Opposition to Defendant's Motion in Limine to Exclude Testimony of Martin Kranitz ("Plaintiff's Opposition") (Dkt. #132), plaintiff attempts to respond to the unreliability of Kranitz's source data by asserting that the data at issue, global assessment of functioning or

---

[1] Throughout her Opposition to Defendant's Motion in Limine to Exclude Testimony of Martin Kranitz ("Plaintiff's Opposition") (Dkt. #132), plaintiff erroneously refers to Kranitz as "Dr. Kranitz." As his resume reflects, Kranitz was not a doctor of any type at the time of his report, and plaintiff has produced no evidence whatsoever that Kranitz has since obtained that status. (*See* Ex. B to Plaintiff's Opposition.) Plaintiff's incorrect reference to Kranitz as a "doctor" is particularly misleading in the context of the present motion in that one of Verizon's contentions is that Kranitz lacks the professional and/or medical training necessary to render certain opinions.

"GAF" scores, is reliable as a general matter and has been relied upon by Kranitz in the past. Plaintiff, however, fails to seriously address the critical problem that the particular GAF scores on which Kranitz expressly premised his opinions were wholly unreliable according to the very doctors who assigned them.

In addition, despite having filed her Opposition, plaintiff still has not identified a relevant purpose for the opinions actually expressed in Kranitz's report. Rather, after conceding that Kranitz is unqualified to address certain issues, plaintiff asserts that Kranitz is qualified to testify as to (1) "his professional opinion as to evaluating Plaintiff's present vocational potential," (2) "Verizon's failure to provide reasonable accommodation." (Plaintiff's Opposition, at 1-2.) The first of these two categories of testimony appears to be an attempt to restate the opinion expressed in Kranitz's report that plaintiff is currently unable to maintain employment. However, it is nothing more than a restatement of that opinion. Plaintiff still has not articulated how that opinion, however stated, is relevant to any triable issue in this case.

Meanwhile, plaintiff has effectively conceded that Kranitz's opinions regarding "Verizon's failure to provide reasonable accommodations" and the bases for those opinions appear nowhere in Kranitz's report. Moreover, even if Kranitz had set forth those opinions in his report, as required under Federal Rule Civil Procedure 26(a), Kranitz is unqualified to provide those opinions based both on his lack of relevant experience and his failure to conduct an even minimally sufficient investigation.

Accordingly, Verizon respectfully asks this Court to enter an Order excluding or, in the alternative, substantially limiting Kranitz's testimony at trial.

**ARGUMENT**

**I.      Plaintiff has conceded that Kranitz is unqualified to testify as to certain issues.**

In response to Verizon's Motion, plaintiff has conceded that Kranitz is not qualified to testify to the issues of "plaintiff's alleged disability" or "a causal connection between Verizon's conduct and the Plaintiff's inability to maintain current employment." (Plaintiff's Opposition, at 1.) Accordingly, even if the Court allows Kranitz to provide testimony on some topic, Verizon respectfully requests that the Court at least enter an Order prohibiting Kranitz from testifying on the issues of whether plaintiff was disabled under the Americans with Disabilities Act ("ADA") or whether Verizon's alleged conduct was causally related to plaintiff's purported current inability to maintain employment.[2]

**II.     Kranitz's opinions were not based on reliable information.**

Kranitz's report sets forth two key opinions—(1) he did not believe that plaintiff could maintain employment at the time of his report, but (2) it appears that she was capable of maintaining employment at the time she was employed by Bell Atlantic (later Verizon). (Ex. 3 to Verizon's Memorandum, at 11-12.) In reaching these opinions, Kranitz placed substantial weight on the GAF scores that various doctors assigned plaintiff at the time of their respective examinations. (*Id.,* at 10.) Indeed, in two separate parts of his report, Kranitz expressly premised his opinion that plaintiff cannot currently maintain employment on the most recent GAF score she received. (*Id.*, at 10-11.)

---

[2] On April 14, 2005, plaintiff filed a so-called Amended Opposition to Defendant's Motion in Limine to Exclude Testimony of Martin Kranitz ("Amended Opposition") (Dkt. #136), seeking to undo in part her initial admission that Kranitz is not qualified to testify as to plaintiff's alleged disability. Plaintiff's Amended Opposition should be stricken in its entirety on the grounds that it was filed two weeks after the deadline for plaintiff's response briefs stipulated to by the parties and ordered by this Court (*See* Dkt. ##126, 127), and that plaintiff has failed to provide any explanation for failing to properly respond in a timely manner. Moreover, although plaintiff's Amended Opposition attempts to alter her position on Kranitz's ability to testify as to plaintiff's alleged disability, plaintiff still does not provide *any* substantive response to Verizon's challenges to Kranitz's testimony on that issue.

However, as more fully addressed in pages 5-7 of Verizon's Memorandum, the GAF scores on which Kranitz based his opinions were not reliable for the purpose of measuring plaintiff's ability to maintain employment, not necessarily because GAF scores are unreliable in general, but because the very doctors who assigned the GAF ratings on which he relied have testified that those particular ratings cannot carry the weight which Kranitz gives them. Specifically, Dr. Gary Zimberg, one of the doctors on whose GAF ratings Kranitz relied, testified at length about the extreme subjectiveness and unreliability of GAF ratings and stated that GAF ratings could not be used to measure how well a person could perform a job. (*See* Ex. 4 to Verizon's Memorandum, Deposition of Dr. Gary Zimberg, at 65-69.) Dr. Anthony Russo, another doctor on whose GAF rating Kranitz relied, testified not only that his GAF rating could not be used as an indicator of whether plaintiff was qualified to do her job, but that the rating he assigned plaintiff may have been "overly generous" and could have been influenced by plaintiff's attempts to manipulate him. (*See* Ex. 5 to Verizon's Memorandum, Deposition of Dr. Anthony Russo, at 81-85.)

In her Opposition, plaintiff fails in any way to confront this compelling evidence by the doctors who assigned the GAF ratings that the particular GAF ratings relied upon by Kranitz *were not reliable*. Instead, plaintiff attempts to establish the reliability of Kranitz's data by asserting that GAF ratings are reliable in general and suggesting that Kranitz has relied on GAF ratings in the past. Through the creative but misleading use of ellipses, plaintiff suggests that the American Psychiatric Association (the "APA") uses the GAF scale as a measure of an individual's ability to work. (*See* Plaintiff's Opposition, at 3 ("Defendant also has cited a case where the court takes note that the American Psychiatric Association uses a GAF score of 41-50

4

to indicate a ". . . serious impairment in . . . occupational . . . functioning." *Crawford v. Massanari*, No. 00-CV-792-M, 2001 WL 1943879, *3 (N.D. Okla. Aug. 24, 2001).").)

The actual language in the APA's *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) ("DSM-IV-TR"), quoted by the district court in *Crawford*, states that a GAF rating of 41-50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job)." *See,* DSM-IV-TR, at 34. As the actual language of the DSM-IV-TR—as opposed to plaintiff's selective quotation—makes clear, a GAF score does not focus solely on occupational functioning, but is a measure of overall functioning and is influenced by factors such as "frequent shoplifting" and a lack of friends, which may not have anything at all to do with a person's ability to gain or maintain employment.

More importantly, the courts have recognized that the "GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting DSM-IV-TR, at 32). Thus, regardless of what the APA intended a GAF score to mean, the actual significance of any particular GAF is ultimately dependent on the intent of the "clinician" whose judgment the GAF rating reflects. Here, those clinicians, the evaluating doctors, have squarely stated that the GAF scores they assigned were not intended, and cannot be used, to measure plaintiff's ability to work. As a result, even if plaintiff were correct, which she is not, in asserting that GAF ratings in general are used by the APA to measure a person's occupational abilities, the particular GAF scores at issue were not intended to provide such a measurement and cannot be used for that purpose.

5

Plaintiff also contends that "Kranitz simply used an established and authoritative manual to demonstrate that a certain score indicates impaired occupational functioning. He is not only qualified to do that, as stated above, as a Vocational Expert that is precisely that which he has been doing for over 20 years." (Plaintiff's Opposition, at 3-4.) In other words, plaintiff suggests that because Kranitz is experienced and applied his normal methods, his opinions are reliable even if his underlying data is not.

This argument, however, is entirely contradicted by the express language of Federal Rule of Evidence 702. Rule 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education may testify…*if* (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." (Emphasis added.) In other words, the rule, by its terms, imposes independent requirements that the witness indeed be an expert, that the witness's methodology is sound, and that the facts and data are themselves reliable. The rule provides no basis for concluding that two out of three is close enough. Even if the Court were to accept that Kranitz has sufficient expertise and that comparing GAF scores to a chart is a reliable methodology, those factors cannot overcome the fact that the data Kranitz relied upon was wholly unreliable according to the very people who created it and, for that reason alone, his opinions should be excluded.

Finally, plaintiff attempts to argue that Kranitz's opinions are reliable because "the GAF score was not the sole basis for Dr. [sic] Kranitz's evaluation." (Plaintiff's Opposition, at 2.) However, while Kranitz admittedly interviewed plaintiff before providing his report and reviewed other materials, Kranitz makes clear that the GAF scores were a critical factor in reaching his opinions. Not only did Kranitz devote a significant portion of his report to

6

explaining the purported significance of GAF scores and reciting the GAF scores assigned to plaintiff, he twice expressly based his opinion that plaintiff is currently unable to maintain employment on plaintiff's GAF score. (Ex. 3 to Verizon's Memorandum, at 10 ("At this point, given a GAF - 50 (or even 55 - 50) I do not believe that Ms. Darcangelo would be successful in maintaining employment."), 11 ("Given an individual with a GAF of 50 I do not believe that such an individual would be able to maintain employment . . .").) In light of the centrality of plaintiff's GAF scores to the opinions in Kranitz's report, the mere fact that he considered other information does not make those opinions reliable.

### III. Plaintiff has failed to identify any relevant purpose for the opinions expressed in Kranitz's report.

Even if Kranitz had a reliable basis for his opinions regarding plaintiff's current ability to maintain employment, his testimony should nonetheless be excluded from trial on the grounds that plaintiff has failed to articulate *any* relevance of those conclusions to any material issue at trial. Rather, in response to Verizon's direct challenge to the relevance of the opinions expressed in Kranitz's report, plaintiff asserted only that Kranitz is qualified to testify as to "his professional opinion as to evaluating Plaintiff's present vocational potential" and that Kranitz "will testify that the Plaintiff experienced a downward trend in her GAF scores after her termination, resulting in an inability to maintain employment." (Plaintiff's Opposition, at 2.) In other words, plaintiff merely restated the opinions themselves without providing the slightest suggestion as to how they could have any bearing on the merits of plaintiff's claims. In the face of plaintiff's complete inability to identify a single relevant purpose for the opinions properly asserted in Kranitz's expert report, the only reasonable conclusion is that no such relevance exists.

A district court has a responsibility to ensure that any and all expert testimony admitted is *both* factually relevant and reliable, as required by Rule 702. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590-91 (1993); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). For the reasons addressed above and in Verizon's Memorandum, the opinions expressed in Kranitz's Rule 26(a)(2)(B) expert report are *neither* relevant nor reliable. Accordingly, Kranitz should be excluded as a witness at trial.

**IV.    Kranitz should be prohibited from testifying as to possible accommodations.**

    **A.    Kranitz's opinions regarding accommodations and the bases and reasons for those opinions were not disclosed in his expert report.**

Unable to articulate a relevant purpose for the opinions actually stated in Kranitz's report, plaintiff, in complete disregard of the requirements of Federal Rule of Civil Procedure 26(a)(2)(B), asserts that she intends to solicit opinions from Kranitz that do not appear in his report and cannot be said to have been reasonably previewed in that report.

Specifically, plaintiff states that Kranitz will testify as to "Verizon's failure to provide reasonable accommodation." (Plaintiff's Opposition, at 2.) Even now, plaintiff has failed to disclose with any particularity what those opinions will be, but it appears that plaintiff will seek to have Kranitz opine as to various accommodations which he believes Verizon should have provided for plaintiff, possibly including sensitivity training to coworkers and an isolated work area.

Such opinions do not appear in Kranitz's report. Rather, the closest that Kranitz's report comes to addressing accommodations is a single passage which states:

> A great deal of external support is required from employers, family, rehabilitation facilities and psychiatric centers. Support often comes in the form of educating those people around the individual with the psychiatric disorder, what to expect and how to deal with it. It does not appear that this support was provided to Ms. Darcangelo within her employment situation.

8

(Ex. 3 to Verizon's Memorandum, at 11.)  His report does not address any particular form or extent of education, whether that form or degree of education was feasible in this case, or whether such education of plaintiff's coworkers would have prevented plaintiff's repeated inappropriate misbehavior that led to her suspensions and termination.  Beyond his vague statement that support sometimes includes education, Kranitz identifies no other accommodation which Verizon could or should have made.

Federal Rule of Civil Procedure 26(a)(2)(B) unambiguously requires that a party provide, for each testifying expert, a report containing, *inter alia,* "a complete statement of all opinions to be expressed and the basis and reasons therefor."  Rule 37(c)(1), in turn, provides that a party that fails to comply with that requirement "is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any . . . information not so disclosed."  This "automatic sanction" was specifically added to the Federal Rules in order to provide a strong inducement for the disclosure of material which the disclosing party would expect to use as evidence.  *See* Fed. R. Civ. P. 37, advisory committee's note (1993 Amendments).

Plaintiff does not even attempt to argue that the brief, generalized passage in Kranitz's report adequately disclosed the opinions that she intends for Kranitz to present at trial, much less that it disclosed the "basis and reasons" for those opinions.  Moreover, plaintiff offers no excuse for failing to include those opinions and reasons in Kranitz's report.  Rather, plaintiff's only argument for allowing Kranitz to testify is an assertion that her violation of the Federal Rules caused no prejudice because "Kranitz gave a deposition and Defense Counsel inquired into many areas beyond that which he gave on his report." (Plaintiff's Opposition, at 5.)

Plaintiff's suggestion that defense counsel's precautionary measure of asking about accommodations during Kranitz's deposition renders her unjustified nondisclosure harmless

9

contradicts the narrow meaning of "harmless" under Rule 37 and, if accepted, would render the requirements of Rule 26(a) meaningless. As the district court recognized in *Proffit v. Veneman,* No. Civ. A 5:01CV00067, 2002 WL 1758232 (W.D. Va. July 15, 2002), the Advisory Committee Notes to Rule 37 make clear that the exception of "harmless" violations is intended to apply only in limited circumstances in which a party's violation is truly minor and has no meaningful impact on the litigation. In explaining the "harmless" provision of Rule 37, the Advisory Committee Notes state:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures. In the latter situation, however, exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party.

Fed R. Civ. P. 37 advisory committee's note (1993 Amendments).

Plaintiff's blatant failure to disclose one of the two topics on which Kranitz is intended to testify at trial cannot be credibly compared to these examples of the innocuous types of omissions that the "harmless" exception was intended to exclude from Rule 37's automatic sanction. While defense counsel was careful to inquire during Kranitz's deposition into "many areas beyond that which [Kranitz] gave on his report" (Plaintiff's Opposition, at 5), proper disclosure of Kranitz's opinions would have notified defense counsel of the need to focus more directly on the issue of accommodations and to conduct a more detailed examination of the nature of Kranitz's opinions and the grounds for those opinions. As it stands, even with the benefit of Kranitz's deposition, Verizon has been provided only the most minimal sense of what opinions Kranitz will express regarding accommodations at trial and virtually no information as to how Kranitz reached those opinions. Indeed, despite plaintiff's sole reliance on Kranitz's

deposition to excuse her nondisclosure, plaintiff has identified only three sentences from Kranitz's deposition in which Kranitz supposedly expressed his opinions regarding accommodations.  Requiring Verizon to proceed to trial with only the vaguest sense of the opinions which Kranitz will provide as to accommodations or the grounds he will provide for those opinions cannot be considered "harmless" under any meaning of the term, much less the narrow meaning intended under Rule 37.

Moreover, by obscuring the full scope of Kranitz's testimony, plaintiff has denied Verizon a fair opportunity to rebut that testimony by designating an additional expert.  Reasonably relying on the narrow scope of the opinions expressed in Kranitz's report and the irrelevance of those opinions, Verizon elected not to designate its own vocational consultant as an expert.  Had Verizon known then that plaintiff had no intention to abide by the requirements of Rule 26(a)(2)(B), Verizon could have responded by designating an additional expert to rebut Kranitz's additional opinions.  Verizon does not have that option now, and plaintiff's eleventh hour assertion that she intends for Kranitz to testify well beyond the scope of his report therefore cannot be said to be harmless.

If plaintiff's position that Kranitz's deposition testimony automatically made his failure to fully disclose his opinions "harmless" were accepted, it would wholly undermine Rule 37 and render the requirements of Rule 26(a)(2)(B) a nullity.  It is only prudent for an attorney conducting an expert deposition to examine the proposed expert on issues outside the contours of the expert's report if only to determine whether the other side is attempting to obscure the full scope of the expert's intended testimony.  If this precautionary practice can be used against the examining party to excuse even blatant violations of Rule 26(a)(2)(B), disclosing parties will have little, if any, incentive to ensure that their expert's reports fully comply with the rule.

11

Indeed, plaintiff has herself gone so far as to suggest that the deposition of an expert can remove the need for a party to provide *any* expert report. (*See* Plaintiff's Reply to Defendant's Opposition to Name a New Expert (Dkt. #120), at 6 ("Finally, given the 220 page deposition previously taken by Defendant on Dr. Zimberg, who had only a one page report, it is questionable whether Defendant even requires a report from this new expert.").) The Federal Rules clearly require parties to supply expert reports which contain "a complete statement of all opinions to be expressed and the basis and reasons therefor," Fed. R. Civ. P. 26(a)(2)(B) and, in Rule 37, provide a strong mechanism for enforcing that requirement. This Court should reject plaintiff's bald attempt to use to the "harmless" exception to swallow those rules.

### B. Kranitz is not qualified to provide testimony as to the reasonableness or effectiveness of accommodations.

Even if Kranitz had properly disclosed his opinions regarding accommodations in his expert report, his testimony should nonetheless be excluded on the grounds that he is unqualified to provide those opinions both because of his lack of relevant experience and his failure to conduct even a minimally adequate investigation of relevant facts.

As discussed more fully in Verizon's Memorandum, Kranitz acknowledged during his deposition that he has very little experience in assessing possible accommodations. When asked if he has conducted any consulting on accommodations outside the litigation context, Kranitz testified, "Certainly not as a regular part of my practice; on rare occasion, I have talked with employers about accommodations, but not as an expert on accommodations." (Ex. 2 to Verizon's Memorandum, Deposition of Martin Kranitz ("Kranitz Dep."), at 184-85.) Further, when asked to identify the types of situations in which he has provided such input, Kranitz mentioned only situations involving "people in wheelchairs" and "people with bad backs." (Kranitz Dep., at 186.)

In her Opposition, plaintiff argues that because people in wheelchairs are "generally disabled," Kranitz's limited experience in discussing accommodations for people in wheelchairs somehow qualifies him to opine on possible accommodations for plaintiff's alleged psychiatric disability. Plaintiff's contention entirely ignores the obvious differences involved in dealing with physical disabilities such as paraplegia and in attempting to accommodate a person with a psychiatric condition. Accommodations for people in wheelchairs primarily involve structural changes such as the installation of ramps, adjusting the height of counters and other work surfaces, and arranging work areas in a manner that allows an individual in a wheelchair room to maneuver. The idea that having some minimal experience in dealing with such architectural design issues would in any way enable him to respond to plaintiff's alleged inability to work and socially interact with others is simply not credible. Indeed, suggesting that Kranitz's experience assessing accommodations for people in wheelchairs equips him to assess plaintiff's alleged psychiatric issues makes no more sense than allowing a physician to opine on psychiatric issues on the basis of her experience in orthopedic surgery.

Meanwhile, with respect to the adequacy of Kranitz's investigation, plaintiff states only that "Kranitz interviewed the Plaintiff and received information necessary to make an informed decision." (Plaintiff's Opposition, at 6.) However, plaintiff's unsupported assertion that Kranitz "received information necessary" to his opinions is directly contradicted by Kranitz's admissions that he knew very little about plaintiff's work environment. Kranitz, for example, admitted in his deposition that he knew nothing about the physical environment in which plaintiff worked or how frequently she interacted with her coworkers and supervisors. (Kranitz Dep., at 26.) When asked whether plaintiff's job situation at Bell Atlantic was one in which difficulty getting along with coworkers and customers could cause problems in maintaining employment, Kranitz

13

responded, "I don't think I know enough about the case to answer that." (*Id.*, at 23.) Likewise, Kranitz made clear that he had no idea what efforts had already been made to deal with plaintiff's conduct. (*Id.*, at 30-31.) While plaintiff's failure to properly disclose the basis for Kranitz's opinions unfairly prohibits Verizon from addressing the actual nature of Kranitz's investigation, his own testimony makes clear that he did not conduct a sufficient investigation to determine even basic information regarding plaintiff's work environment, and that he is therefore unqualified to opine on what changes to that environment, if any, could have constituted reasonable accommodations.

Finally, plaintiff argues in effect that Kranitz does not need to be qualified to opine as to the effectiveness of possible accommodations because, according to plaintiff, she is not required to show that an accommodation is "even likely to be successful" in order to prove that it is a reasonable accommodation. (Plaintiff's Opposition, at 6.) Plaintiff's assertion directly misstates Fourth Circuit law, which plaintiff notably fails to cite. The Fourth Circuit has explained that "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, *enables the employee to perform the essential functions of the job in question.*" *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir. 1995) (emphasis added). Accordingly, the Fourth Circuit has held that in order to establish a *prima facie* case for failure to accommodate, a plaintiff must show, *inter alia*, "that with reasonable accommodation he could perform the essential functions of the position . . ." *Rhoads v. Federal Deposit Ins. Corp.,* 257 F.3d 373, 387 n.11 (4th Cir. 2001). In other words, the plaintiff must show that the accommodation would be effective in allowing the plaintiff to perform his or her job. Similarly, this Court, after analyzing the statutory language, legislative history and regulations promulgated by the Equal Employment Opportunity Commission, concluded that a "reasonable" accommodation is one which is

"effective" in addressing the job-related difficulties presented by the employee's disability and that the burden of showing an accommodation is "reasonable" rests squarely on the plaintiff. *Bryant v. Better Business Bureau,* 923 F. Supp. 720, 733, 735-37 (D. Md. 1996).[3]

Moreover, even if plaintiff's erroneous statement of law were true, it would do nothing to qualify Kranitz as an expert on reasonable accommodations in this case. Rather, it would only make Kranitz's testimony regarding accommodations both unqualified *and* irrelevant. Kranitz is not a fact witness and therefore cannot opine as to what accommodations plaintiff actually requested or what accommodations were provided. If Kranitz's testimony is not, as plaintiff suggests, necessary to address the feasibility or effectiveness of possible accommodations, it is entirely unclear what value, if any, it would have for the jury. This uncertainty is only exacerbated by Kranitz's failure to set forth his opinions or their basis in his expert report.

Accordingly, in light of both plaintiff's failure to disclose Kranitz's opinions regarding accommodations in his expert report as required under Rule 26 and the obvious unreliability of those opinions, Kranitz should be prohibited from testifying on the issue of reasonable accommodations at trial.

**VI.    Kranitz should be precluded from relying on Dr. Anderson's report.**

On April 14, 2005, plaintiff filed a so-called Amended Opposition to Defendant's Motion in Limine to Exclude Testimony of Martin Kranitz ("Amended Opposition") (Dkt. #136), improperly seeking affirmative relief in the form of an Order allowing Kranitz to review the report of plaintiff's recently designated psychiatric expert, Dr. Douglas Anderson, and to "incorporate it as part of the records relied upon in formulating his opinion." (Amended Opposition, at 2). As an initial matter, plaintiff's Amended Opposition should be stricken in its

---

[3] Plaintiff's erroneous statement of Fourth Circuit law regarding reasonable accommodations is also set forth in plaintiff's Proposed Jury Instructions (Dkt. #104, at 16) and is one of several improper assertions set forth in those proposed instructions.

entirety on the grounds that it was filed two weeks after the deadline for plaintiff's response briefs stipulated to by the parties and ordered by this Court (*See* Dkt. ##126, 127), and that plaintiff has failed to provide any explanation for failing to properly respond in a timely manner.

In the event that the Court does consider plaintiff's Amended Opposition, the Court should nonetheless deny plaintiff's request to allow Kranitz to review and rely upon Dr. Anderson's report. As the Court is aware, in requesting the opportunity to name a new expert, plaintiff characterized her request as only seeking a replacement for plaintiff's previous expert, Dr. Gary Zimberg, and asserted that the new expert's opinions would not exceed the scope of the opinions expressed by Dr. Zimberg. (Plaintiff's Reply to Defendant's Opposition to Name a New Expert (Dkt. #120), at 5 ("Plaintiff doesn't seek that remedy, but instead seeks a replacement for Dr. Zimberg and the scope of his expert opinion, whether produced in his report or in deposition.") In stark contravention of that representation to the Court, plaintiff produced an expert report by Dr. Anderson which far exceeds the scope of Dr. Zimberg's earlier report (*compare* Ex. A, Jan. 17, 2003 report of Dr. Gary Zimberg to Ex. B, April 4, 2005 report of Dr. Douglas Anderson.) Dr. Anderson not only provided opinions well beyond those previously expressed by Dr. Zimberg in his report and deposition, but also expressed opinions which directly contradict Dr. Zimberg's testimony, matters which Verizon intends to address separately with the Court.

Allowing Kranitz to incorporate Dr. Anderson's report into his opinion at this late date would only exacerbate the prejudicial impact of the far more expansive and very different psychiatric opinions that plaintiff is offering in the case. First, although Kranitz purported to rely on Dr. Zimberg's treatment notes during the time period Dr. Zimberg was plaintiff's psychiatrist, Kranitz did not indicate anywhere in his report that he ever reviewed or relied upon Dr.

16

Zimberg's expert report or deposition. Thus, if the Court were to grant plaintiff's request, Kranitz would be relying on an entirely new type of information. Second, because Dr. Anderson's opinions differ from, and indeed contradict, the opinions ever expressed by Dr. Zimberg, Verizon had no opportunity during Kranitz's deposition to examine the impact that Dr. Anderson's report would have on Kranitz's opinions. In sum, if plaintiff's relief were granted and Kranitz were allowed to testify at trial, Verizon would be in the unfair position of having to cross-examine Kranitz without having had the opportunity to conduct discovery on the substance and significance of the full range of information upon which he relied. Accordingly, plaintiff's improperly asserted request to have Kranitz rely on Dr. Anderson's report should be rejected.

## **CONCLUSION**

For the reasons set forth above, Verizon respectfully requests that the Court enter an Order barring the testimony of Martin Kranitz. In the alternative, Verizon requests that the Court enter an Order expressly prohibiting Kranitz from providing testimony regarding (1) plaintiff's alleged disability; (2) Verizon's alleged failure to provide reasonable accommodations; or (3) a causal connection between Verizon's conduct and plaintiff's alleged current inability to maintain employment.

Dated:  April 21, 2005

_____/s/_____
Ira H. Raphaelson, Bar No. 012849
Karen M. Wahle, Bar No. 013658
Shannon M. Barrett, Bar No. 16410
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
(202) 383-5300
(202) 383-5414 (facsimile)

Counsel for Defendant
Verizon Maryland Inc.