IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO, | |
| Plaintiff, | No. WDQ-02-816 (Civ.) |
| v. | |
| VERIZON MARYLAND INC., | |
| Defendant. | |

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION IN LIMINE TO EXCLUDE OR LIMIT TESTIMONYBY MARIA BURY

Defendant Verizon Maryland Inc. ("Verizon"), by and through its undersigned counsel, respectfully submits this Reply Memorandum in Further Support of its Motion in Limine to Exclude or Limit Testimony by Maria Bury.

## INTRODUCTION

Verizon filed its Motion in Limine to Exclude or Limit Testimony by Maria Bury ("Verizon's Motion") (Dkt. #116) on March 14, 2005, asking the Court to exclude or substantially limit the testimony of a union official, Maria Bury, on the grounds that Bury has virtually no personal knowledge of the events underlying plaintiff's claims and that plaintiff's designations of excerpts from Bury's deposition demonstrate plaintiff's intention to use Bury primarily, if not exclusively, to present inadmissible hearsay, legal conclusions, conjecture and improper opinion testimony. While Verizon primarily sought to exclude Bury as a witness entirely, Verizon suggested that, in the event that plaintiff was able to articulate specific areas on which Bury would be able to provide relevant, reliable testimony, the Court enter an Order limiting Bury's testimony to those areas.

However, rather than establish legitimate, meaningful uses for Bury's testimony, plaintiff, through her Opposition to Defendant's Motion in Limine to Exclude Testimony of Maria Bury ("Plaintiff's Opposition") (Dkt. #131), only confirms her intention to use Bury's testimony for a variety of inappropriate purposes. Although plaintiff attempts to respond to a small number of Verizon's several examples of inadmissible testimony, her responses to those examples reflect a basic misunderstanding of Verizon's objections and the relevant rules of evidence. Beyond grappling with that small fraction of the many examples cited by Verizon, plaintiff largely responds to Verizon's arguments by speculating that Bury's testimony "could" be admissible and that "it's quite possible" that some of Bury's statements will fall within a hearsay exception. (*See* Plaintiff's Opposition, at 2-3.)

Plaintiff's argument that the Court should allow Bury to testify on the off-chance that her testimony could turn out to be admissible in a few instances rings hollow at this late date. Plaintiff is the one who designated Bury as a witness, and she should therefore be in a position to identify the ostensibly admissible purposes for Bury's testimony. If plaintiff cannot do so, the Court should not waste its resources or the jury's time allowing plaintiff to solicit speculative and prejudicial testimony from Bury in an unguided search for a possible admissible purpose.

As addressed in Verizon's Memorandum, under normal circumstances, Verizon would address each instance of Bury's objectionable testimony individually as they arise at trial. However, where, as here, plaintiff has indicated an intention to solicit irrelevant and prejudicial testimony from a witness on a number of topics at trial and has identified little to no legitimate purpose for that witness, an Order in advance of trial excluding or substantially restricting the testimony of that witness is clearly warranted in the interests of fairness and efficiency.

<u>ARGUMENT</u>

I.    **Testimony as to the propriety of, and motivations behind, the disciplinary actions taken against plaintiff.**

As discussed in Verizon's Memorandum, plaintiff has designated a number of unsupported opinions by Bury as to the propriety of various disciplinary actions taken against plaintiff and the motivations of plaintiff's supervisors in taking those actions. Plaintiff, for example, designated testimony by Bury in which Bury opined that plaintiff's termination was unjustified (*see* Ex. 1 to Verizon's Memorandum, Deposition of Maria Bury "Bury Dep.," at 44: 5-9); that plaintiff's supervisors were "looking for a reason to get rid of her" (Bury Dep., at 54: 12-25); that Verizon's actions towards plaintiff were "all related to her mental condition" (Bury Dep., at 60: 19-20); and that plaintiff should not have been suspended for insubordination (Bury Dep., at 24: 17-18).

As more fully addressed in pages 5-7 of Verizon's Memorandum, plaintiff's testimony in this regard is no more than improper lay opinion testimony in violation of Federal Rule of Evidence 701. Bury's opinions as to the appropriate responses to plaintiff's behavior and the motivations of those involved in deciding disciplinary actions could not have been based on Bury's own perceptions, as required under Rule 701, because Bury did not herself witness plaintiff's behavior and was not involved in the decisions to discipline plaintiff. Rather, Bury's opinions are at best based on information learned second-hand from others during grievance hearings in which she represented plaintiff. In addition, Bury's opinion testimony fails the requirement under Rule 701 that lay opinion testimony be helpful to the jury. Bury's participation in a few grievance hearings puts her in no better position to ascertain the underlying facts and form opinions about those facts than the position the jury will be in when reviewing the evidence at trial. Moreover, Bury's own state of mind is not an issue in this case, and she has not

been designated as an expert on any issue.  Thus, Bury's opinions have no special value that would justify using her as a filter between the jury and the direct evidence.

In her Opposition, plaintiff addresses only one of the several examples of such improper testimony that were cited in Verizon's Memorandum and fails to acknowledge the true nature of Verizon's objection to that example.  Instead, plaintiff incorrectly asserts that Verizon objected to lines 12-15 of Bury's deposition on the grounds that "Bury states that she believed that Verizon managers were aware of Plaintiff's condition."  (Plaintiff's Opposition, at 1-2.)  Plaintiff then defends Bury's ability to testify on that issue on the grounds that Bury purportedly told one of plaintiff's supervisors that plaintiff had a mental illness.  (Plaintiff's Opposition, at 2.)

Plaintiff's response is a red herring.  Nowhere in Verizon's Memorandum does Verizon challenge Bury's ability to testify to her belief that Verizon managers were aware of plaintiff's mental condition, and Verizon would not object to Bury's ability to testify as to that narrow issue, so long as her testimony is grounded in Bury's personal knowledge.  However, Bury's ability to testify as to what she told plaintiff's managers does not justify Bury's unsupported opinions that plaintiff's supervisors were intolerant of plaintiff's mental condition and were "looking for a reason to get rid of her," which appear in the same passage.  (Bury Dep., at 54: 12-25.)  Plaintiff asserts no justification for those opinions but instead conveniently ignores their existence.  It is precisely the danger that Bury's negligible personal knowledge will be used as an excuse for her to engage in such prejudicial testimony that prompts Verizon's request that, if Bury is allowed to testify at all, her testimony be carefully limited to those relevant issues for which plaintiff has shown she has personal knowledge.

Plaintiff provides *absolutely no* response to Verizon's objection to allowing Bury to testify as to the propriety of Verizon's disciplinary actions or the motivations of the Verizon

officials involved in taking those disciplinary actions.  Accordingly, for the reasons expressed above and in pages 5-7 of Verizon's Memorandum, Bury should, at a minimum, be prohibited from expressing such opinions at trial.

**II.    Opinion testimony regarding plaintiff's posting of supervisor's picture on shooting target.**

As further examples of Bury's improper testimony, Verizon cited several instances in which Bury expressed her personal opinions regarding an incident in which plaintiff posted a supervisor's picture on a shooting target in plaintiff's cubicle.  (Bury Dep., at 38: 9-11, 20-21; 97: 4-14; 99: 3-14.)  As explained more fully in pages 7-8 of Verizon's Memorandum, Bury's opinions regarding the shooting target incident are irrelevant and fail to meet the requirements of Rule 701.  Bury was not the subject of the target, did not see the target in plaintiff's workplace, did not witness the impact of the target in that workplace, and lacks personal knowledge of the circumstances surrounding the posting of the target.  (Bury Dep., at 27, 38-39.)  Indeed, other than viewing the target in the context of a hearing, which the jury itself will have an opportunity to do at trial, Bury's knowledge of the shooting target incident derives solely from accounts provided to her by others.  Thus, any testimony Bury could provide beyond her own base opinions would be nothing more than hearsay.

Wholly ignoring Verizon's Rule 701 challenge to Bury's improper lay opinion testimony, plaintiff inaccurately treats Verizon's argument as solely a hearsay objection.  Characterizing Bury's testimony as "regarding employee reaction to Plaintiff's posting of a shooting target," plaintiff claims that Bury's testimony is not being offered for the truth that the target was a joke but is instead "offered to establish that Defendant had no reason to believe that Plaintiff was a threat."  (Plaintiff's Opposition, at 2.)  Plaintiff then asserts, without further explanation, that

"since these statements are offered to show the effect of such statements, they are not hearsay." (*Id.*)

Plaintiff's attempt to characterize Bury's testimony as addressing the reactions of plaintiff's coworkers is simply incongruent with the excerpts of Bury's deposition which plaintiff designated for inclusion at trial. In those excerpts, it is clear that Bury is expressing her own unqualified opinions as to the significance of the shooting target. (*See, e.g.,* Bury Dep., at 38: 9-11 ("And these two, no, other than the fact that I thought the suspension was off the wall because there was no threat there."); 38: 20-21 ("It was a joke, so other than that, you know, it wasn't threatening in any way."); 97: 4-9 ("None, because she, from everything I remember, there was nothing to indicate a threat. It was a joke. It had been used, the same poster had been used three years before or several years before.")

In only one instance did Bury even refer to what others thought of the target, and even then only as support for her own opinions. Specifically, Bury testified, "It would not have been considered inappropriate because it had been used before, and everybody thought it was a joke then, so I wouldn't perceive that, if I had been in the workforce, and I had seen that three years before, and then it comes back out three years later, I wouldn't think that was inappropriate because three years earlier, it was not inappropriate." (Bury Dep., at 99: 6-14.) While this excerpt includes an unsubstantiated assertion of what "everyone thought," the obvious import of the statement was that Bury herself believed the shooting target was not threatening and that her opinion was supported by facts of which she had no firsthand knowledge.

Even if plaintiff's contention that she offered Bury's statements to show the reactions of the plaintiff's coworkers were at all credible, the contention would not make Bury's testimony admissible. Plaintiff attempts to draw a distinction between the "truth of the matter asserted" by

a speaker and the speaker's belief that the statement is true. Plaintiff's argument defines the "matter asserted" too narrowly. It is widely-recognized that the term "matter asserted" encompasses not merely the literal truth of a statement, as plaintiff suggests, but also any message that a statement implicitly conveys. *See, e.g.,* Michael H. Graham, *Federal Practice and Procedure: Evidence* § 7001 (Interim Edition 2000) ("The term 'matter asserted' as employed in Rule 801(c) and at common law includes both matters directly expressed and matters the declarant necessarily implicitly intended to assert."); *United States v. Reynolds*, 715 F.2d 99, 103 (3d Cir. 1983) ("This argument ignores what legal commentators have expressly recognized and what the courts have implicitly recognized. That is, statements containing express assertions may also contain implied assertions qualifying as hearsay and susceptible to hearsay objections."). A speaker's statement that something is the case inherently carries the implied assertion that the speaker believes it is so, even if the speaker does not preface her comments with the words "I believe" or "I think." Indeed, one of the core reasons for the hearsay rule is that, without it, witnesses could assert the beliefs and perceptions of other individuals without allowing the genuineness and credibility of those beliefs and perceptions to be tested through the examination of those individuals. Accordingly, any testimony by Bury as to what other individuals supposedly believed or thought about the shooting target display would be hearsay, regardless of whether such testimony is offered to show that the target was a joke or that certain individuals believed it was a joke.

Plaintiff also contends that even if the Court concluded the Bury's statements were hearsay, "Plaintiff is not required at this point to disclose each and every statement Ms. Bury heard and by whom." (Plaintiff's Opposition, at 2.) Plaintiff then suggests that because she refuses to defend the admissibility of Bury's statements in advance of trial, "any of the

statements under the right circumstances could constitute an exception to the hearsay rule, such as excited utterance." (*Id.*) Plaintiff ignores the fact that each of the examples of inadmissible testimony that Verizon has cited are taken from excerpts for Bury's deposition designated in the Proposed Pretrial Order for submission at trial. [1] In making her designations, plaintiff had a responsibility to ensure that she had a good faith basis for proffering those excerpts as admissible evidence. Plaintiff's refusal or inability to defend any of those excerpts as admissible is itself grounds for striking them. More importantly, it illustrates plaintiff's unwillingness to ensure a proper basis for Bury's testimony *before* proffering Bury as a witness at trial.

### III. Legal conclusions as to plaintiff's rights.

In its initial Memorandum, Verizon identified portions of Bury's deposition in which Bury asserts that plaintiff and other employees have a right to have a union representative present during certain interactions with Verizon management. Specifically, Verizon cited passages of Bury's deposition, designated by plaintiff, in which Bury testified:

> If I remember correctly, she had been instructed when she got upset to leave the room, and she did so at that time, because she felt—this is my recollection—she felt—I don't know what the right word—I don't want to say threatened because that's not it, but Fran knew that she was in discipline, *that she was entitled to union representation*, and she also knew any time she was called into a room with management, it generally led some type of investigation. So I don't think she should have been suspended for insubordination.

(Bury Dep., at 24) (emphasis added). [2]

> If they come, I go into a room and we're having a civil conversation, and at some point, I determine that I feel like I need union representation, *I have the right to*

---

[1] As stated in Verizon's objections, Verizon has separately objected to plaintiff's deposition designations for Bury and other individuals on the grounds that plaintiff has not demonstrated that those individuals will not be available to testify at trial.

[2] In addition to challenging Bury's assertion of legal conclusions, Verizon also cited this passage as an example of plaintiff's attempt to improperly admit Bury's conjecture as to the thoughts and beliefs of other individuals. (Verizon's Memorandum, at 10.) Plaintiff has failed to provide any response to that independent objection.

> *say I want union representation, and the meeting should be stopped until I get*
> *somebody.*

(Bury Dep., at 25) (emphasis added).

Despite Bury's clear assertion of employees' legal rights in each of these passages, plaintiff claims that Verizon "misconstrues Ms. Bury's anticipated testimony." (Plaintiff's Opposition, at 3.) Plaintiff asserts that Bury will not be testifying that Verizon violated its contract but instead will testify:

> (1) that her experience as a negotiator for union contracts can confirm certain
> admissions by Verizon management as to their contract interpretation regarding
> union representation; (2) her experience in representing Verizon employees
> regarding discipline issues can establish Verizon's practice in providing union
> representation for employees in meeting similar to the subject one involving
> Plaintiff; and (3) that Verizon deviated from that practice.

(*Id.*, at 3.)

The first of these three categories is a pure exercise in wordsmithing which does not avoid the legal nature of Bury's opinions and only underscores the need for Bury's testimony to be strictly circumscribed, if allowed at all. The only way for Bury to "confirm" Verizon management's alleged "contract interpretation" is for Bury to testify as to the correct interpretation of the contract's terms, an inherently legal conclusion. In addition, if, as plaintiff claims, Bury would be merely "confirm[ing]" admissions already made by Verizon management, then Bury's testimony would not only constitute improper legal conclusion but would be unnecessary and should be excluded for that additional reason under Federal Rule of Evidence 403.

Meanwhile, although it may not constitute legal conclusion, the proposed testimony by Bury that Verizon had a practice of providing union representation under certain circumstances and deviated from that practice when dealing with plaintiff is inadmissible as improper lay opinion. As addressed in Verizon's Memorandum, Bury was not a participant in the incident at

issue, and any opinion by Bury as to whether Verizon's actions in that incident deviated from normal practice could not be based on Bury's personal perception as required under Rule 701.

Rather, Bury's application of her allegedly specialized knowledge as a union representative to an incident which she did not personally witness falls squarely within the realm of expert testimony. Plaintiff, however, has not designated Bury as an expert on any issue, and, in any event, has made no showing that Bury's testimony could meet the requirements for expert testimony under Rule 702.

Thus, in attempting to respond to Verizon's objection to Bury's assertion of legal conclusions, plaintiff only reveals her intent to use Bury's testimony for other improper purposes. Accordingly, plaintiff's argument itself supports a clear instruction on the testimony, if any, which Bury can provide at trial.

**IV.    Hearsay testimony.**

In addition to identifying specific issues for which Bury's testimony amounts to inadmissible hearsay, Verizon pointed out that hearsay testimony is pervasive in the excerpts of Bury's deposition designated by plaintiff and thus would presumably be pervasive in Bury's testimony at trial. Plaintiff responds by asserting that because "there are many of them," "the supposed hearsay statements should be ruled upon by the Court on a statement by statement basis." (Plaintiff's Opposition, at 3.) Plaintiff, however, does not proceed to address the challenged statements individually.

Instead, plaintiff addresses a single piece of challenged deposition excerpt in which Bury testified, "I know Marianne, *one of the things that I hear the most about her* is that she has certain people that she favors, and if you're one of her favorites, you can't do anything wrong, but if you're not, you very seldom can do anything right." (Bury Dep., at 113: 7-12 (emphasis added).) Plaintiff attempts to justify this quintessential example of hearsay testimony on the

grounds that, "That statement could be offered to demonstrate that other managers were aware of Moxey's bias." (Plaintiff's Opposition, at 3.) Plaintiff apparently intends to suggest that using Bury's testimony for that purpose avoids offering it for the truth of the matter asserted and thereby circumvents the Federal Rules' prohibition on hearsay testimony. Plaintiff's argument, however, ignores the fact that any assertion that "managers were aware of Moxey's bias" necessarily presupposes the existence of bias on the part of Moxey. In other words, Bury's testimony could not be offered to establish that managers knew of Moxey's alleged bias without also offering the testimony for the truth of the matter asserted—that Moxey was indeed biased. (Plaintiff's Opposition, at 3.) Once again, plaintiff's vain attempt to evade the hearsay nature of Bury's testimony merely underscores the unavoidable conclusion that allowing a witness such as Bury to testify broadly on issues for which she lacks any direct personal knowledge will inherently result in speculation and inadmissible hearsay and should therefore be precluded.

For the remainder of the challenged statements, plaintiff only speculates that "it's quite possible that a number of them fit into a hearsay exception or are not offered for their truth." (Plaintiff's Opposition, at 3.) As previously explained, the statements to which plaintiff refers are excerpts from Bury's deposition which plaintiff has expressed her intent to submit as evidence at trial. Verizon has identified those statements both because they are objectionable in and of themselves and because they provide evidence of plaintiff's intent to use Bury's testimony at trial for improper purposes. Plaintiff's tacit admission that she has designated those statements for submission at trial without *any* reasonable basis for arguing their admissibility is itself a strong indication of the need for the Court to clearly restrict the scope and nature of Bury's testimony at trial.

**V.     Speculation as to effects of sensitivity training.**

In her Opposition, plaintiff has failed to in any way respond to Verizon's objection to Bury's speculative testimony regarding the hypothetical effects that sensitivity training could have had on plaintiff's coworkers.  (*See* Verizon's Memorandum, at 8-9.)  As Verizon explained in its initial Memorandum, Bury has not been designated as an expert on sensitivity training or any other topic, and because she never worked in the same location as plaintiff, has no basis for speculating as to the impact hypothetical sensitivity training would have had on plaintiff's coworkers or on plaintiff's behavior.  Moreover, because there is no evidence that Bury was ever called upon to determine on behalf of Verizon whether to institute sensitivity training, her conjecture as to its effect serves no other relevant purpose.  Accordingly, even if the Court allows Bury to testify as to some topic, Bury should, at a minimum, be barred from testifying as to the possible effects of sensitivity training or any other hypothetical accommodation.

**VI.    The proper scope, if any, of Bury's testimony should be determined before trial.**

Although plaintiff makes a few misguided attempts to address Verizon's challenges to Bury's testimony, the clear thrust of Plaintiff's Opposition is not that Bury's testimony necessarily *is* admissible but that it *could be* admissible and that the Court should wait until trial to find out.  As addressed in page of 11 of Verizon's Memorandum, plaintiff's suggested approach would arguably be sensible if plaintiff were able to identify some core of material issues for which plaintiff has relevant personal knowledge or if Verizon's objections were likely to apply to only a small portion of Bury's anticipated testimony.  Here, however, the opposite is true.

Despite being directly challenged to identify topics on which Bury could legitimately testify, plaintiff was able to identify only one issue on which Bury may have relevant personal knowledge.  Namely, plaintiff claims that Bury informed one of plaintiff's supervisors that

plaintiff had a mental illness. Accordingly, Bury may be able to testify as to Verizon's alleged knowledge of plaintiff's mental condition but only to the extent that her testimony is grounded in conversations in which she was personally involved. Beyond this limited area of testimony, plaintiff has not pointed to any significant issue on which Bury could provide testimony based on her own personal knowledge, as opposed to second-hand information obtained from others.

Meanwhile, plaintiff has demonstrated an intent to examine Bury on a variety of topics for which Bury lacks any personal knowledge and thus can provide only conjecture, hearsay, and unfounded opinion testimony. As an indication of the extent to which Bury's unrestricted testimony will be subject to objection at trial, Verizon has objected to nineteen of the twenty excerpts of Bury's deposition designated by plaintiff on the grounds set forth in Verizon's Memorandum. Moreover, Plaintiff's Opposition confirms that these evidentiary disputes would be repeated at trial by asserting that Bury will testify about events, including the shooting target and insubordination incidents, for which Bury lacks any firsthand knowledge.

In light of the extremely limited extent of Bury's personal knowledge and the express intent of plaintiff to use Bury's testimony for a number of impermissible purposes, an Order either excluding or clearly limiting Bury as a witness is necessary both to avoid undue prejudice to Verizon and to prevent the tremendous waste of resources necessary to address each individual misuse of Bury's testimony at trial.

## **CONCLUSION**

For the reasons set forth above, Verizon respectfully requests that the Court enter an Order barring the testimony of Maria Bury as well as the admission of any excerpts from the transcript of Bury's deposition. In the alternative, Verizon requests an Order expressly limiting Bury's testimony to the only potentially relevant issue of which plaintiff has indicated Bury has

requisite personal knowledge—Bury's purported statements to Verizon supervisors regarding

plaintiff's alleged mental condition.

Dated:  April 21, 2005

_____/s/_____
Ira Raphaelson, Bar No. 012849
Karen M. Wahle, Bar No. 013658
Shannon M. Barrett, Bar No. 16410
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
(202) 383-5300
(202) 383-5414 (facsimile)

Counsel for Defendant
Verizon Maryland Inc.