IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCES DARCANGELO,

    Plaintiff,

v.

VERIZON MARYLAND INC.,

    Defendant.

No. WDQ-02-816 (Civ.)

## MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant Verizon Maryland Inc. ("Verizon"), by and through its undersigned counsel, respectfully submits this Memorandum in Support of Renewed Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and states as follows.

## INTRODUCTION

Although Verizon objected to plaintiff's request to introduce a new expert immediately before trial (*see* Defendant's Memorandum in Opposition to Plaintiff's Motion to Appoint Expert (Dkt. #112) (filed March 7, 2005)), the deposition testimony recently provided by that expert plainly establishes that plaintiff cannot prevail on the issues which this Court has identified as the remaining disputed issues in this case. While Verizon fully intends to challenge Dr. Anderson's ability to testify in this case and does not endorse or adopt any of his views, plaintiff cannot ignore the fact that Dr. Anderson's report and testimony conclusively resolve the remaining issues in this case. In light of this newly presented evidence, Verizon should not be put to the burden and expense of defending itself at trial against claims upon which plaintiff cannot succeed as a matter of law.

Defendant Verizon filed its initial motion for summary judgment on June 20, 2003, arguing that plaintiff's claims under the Americans with Disabilities Act ("ADA") failed as a matter of law. (*See* Memorandum in Support of Defendant's Motion for Summary Judgment (Dkt. #30) ("Summary Judgment Memo")). On September 23, 2003, the Court denied that motion after concluding that genuine issues of material fact remained regarding "whether the plaintiff was qualified for the job she lost," including "the degree to which interacting with others was part of her job, and whether her behavior could have been accommodated by her employer." (*See* Order Denying Motion for Summary Judgment, at 2 (Dkt. #48) ("Order").) Those issues now have been unequivocally resolved by the testimony of plaintiff's own expert, Dr. Douglas Anderson. Specifically, Dr. Anderson's sworn deposition testimony demonstrates that: (1) Frances Darcangelo is not a "qualified individual" within the meaning of the ADA; (2) there is no reasonable accommodation that Verizon could have made to enable Frances Darcangelo to perform the essential functions of her job; and, in any event, (3) the Fourth Circuit's opinion in *Jones v. American Postal Workers Union,* 192 F.3d 417 (4th Cir. 1999) squarely provides that an employer has no duty to tolerate employee misconduct, *even if caused by a disability.*

In sum, Dr. Anderson's testimony, not previously before this Court, provides new and conclusive additional grounds for entering summary judgment in favor of Verizon. Defendant Verizon therefore respectfully requests that the Court enter an order granting summary judgment pursuant to Fed. R. Civ. P. 56 in favor of Verizon for the reasons set forth in its original motion for summary judgment and for the additional reasons set forth below.

**ARGUMENT**

I.  **THE UNEQUIVOCAL TESTIMONY OF PLAINTIFF'S PSYCHIATRIC EXPERT DEMONSTRATES THAT FRANCES DARCANGELO IS NOT A "QUALIFIED INDIVIDUAL" BECAUSE SHE CANNOT PERFORM THE ESSENTIAL FUNCTIONS OF HER JOB.**

Counts I through III of plaintiff's complaint derive from the ADA section prohibiting discrimination against "a qualified individual with a disability." 42 U.S.C. § 12112(a). In order to have standing to bring those claims, then, plaintiff must prove that she is in fact a "qualified individual with a disability." Under the ADA, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Plaintiff bears the burden of demonstrating that she was qualified for her position. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997); *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994) (plaintiff "bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation").

Although the term "qualified" might suggest to the lay person the issue of whether the employee has the appropriate technical skills and experience for the position, like those that one might see on a resume, this is not its legal meaning under the ADA. *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 674-75 (1st Cir. 1995). Other aspects of the job, such as the ability to get along with co-workers, can be "essential functions" of the job, and the inability or unwillingness to perform them renders an employee "unqualified" for purposes of the ADA. *Id.* (ability to get along with supervisors and co-workers is essential to most jobs).

In support of its original motion for summary judgment, Verizon argued that plaintiff's misconduct disqualified her from performing the essential functions of her job in that she could not be relied upon to properly interact with other individuals, including her coworkers. In

response, plaintiff attempted to draw the distinction between face-to-face interaction and telephone interaction. Plaintiff argued that face-to-face interaction with coworkers was not an essential job function but admitted that telephone interaction was. (*See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dkt. #38), at 24 ("Plaintiff was involved in basically two types of regular interactions in the COT position: 1) interacting with fellow Bell Atlantic employees in remote installations to execute the provisioning function, which was a central purpose of her job; and 2) interacting with her co-workers in the immediate workgroup. *Plaintiff recognizes the former as an essential function of her position . . .*") (emphasis added).)[1] Drawing this distinction, plaintiff argued that because the majority of her misconduct involved face-to-face rather than telephone interaction, her admitted misconduct did not disqualify her from performing her job.

In his deposition testimony, however, Dr. Anderson made clear that the plaintiff's attempted distinction between face-to-face and telephone interaction is meaningless in determining whether plaintiff was qualified to do her job. Specifically, Dr. Anderson, whom plaintiff has proffered as her sole expert on psychiatric issues, testified that in his opinion her mental condition renders her unable to control her behavior in telephone interactions with

---

[1] As set forth more fully in Defendant Verizon's Memorandum in Support of Defendant's Motion for Summary Judgment, there are legions of evidence which demonstrate that Frances Darcangelo's position in the provisioning department involved extensive telephone interaction. For example, plaintiff admitted that answering the phone was part of her day-to-day duties in the job. (Ex. 1, Deposition of Frances Darcangelo ("Darcangelo Dep."), at 265.) Likewise, plaintiff's own witness, August "Gus" Dankert, agreed that it was a key requirement of the job to interact with other people, including co-workers. (Ex. 2, Deposition of August Edward Dankert, at 59-60.). Similarly, James P. Conrad, plaintiff's manager, documented the need for appropriate interpersonal communication skills in both the maintenance and provisioning areas. (*See* Ex. 3, Deposition of James Conrad, at 18; Ex. 4, Supplemental Job Requirements.) Mr. Conrad issued a set of "supplemental job requirements" that required, *inter alia*, that all duties, including telephone contacts, be performed in a "professional courteous manner." (*Id*.) Plaintiff admitted that these job requirements applied to her position. (Darcangelo Dep., at 279.)

internal customers in the same manner that he believes it compromises her ability to control herself in face-to-face actions:

> Q: So if a person has chronic hypomanic they cannot prevent themselves from calling other people names; is that your view?
>
> Anderson: I'm not saying that anyone that has one can. I'm saying in her case that is the case, yes.
>
> Q: How about making threats on the telephone?
>
> Anderson: It's quite consistent.
>
> Q: If using the telephone is part of the job, she can't perform that part of the job, can she?
>
> Anderson: Occasional. Sometimes that would be true.
>
> Q: There are times when she cannot perform that job is she is going to curse on the phone?
>
> Anderson: I agree.

(Ex. 5, Deposition of Douglas Anderson ("Anderson Dep."), at 196-97.)

Indeed, Dr. Anderson admitted that the opinion in his report that plaintiff was able to perform the essential functions of her job was based on the fundamental misunderstanding that his job did not involve substantial telephone interaction with internal customers:

> Q: Now, her job, as it turns out includes contact with other employees; you understand that don't know?
>
> Anderson: Yes.
>      . . .
>
> Q: You knew that we couldn't wave a magic wand and stop her from having hand-offs to other employees right?
>
> Anderson: Some amount of contact had to be necessary.
>
> Q: You knew she had to talk to internal customers on the phone, right?
>
> Anderson: No.

5

> Q: You know that now, don't you?
>
> Anderson: Yes.

(*See* Anderson Dep., at 221.)

After conceding that telephone conversations with internal customers were, in fact, an essential function of her position and that plaintiff was unable to control her behavior in such conversations, Dr. Anderson concluded that plaintiff was not qualified to have customer contact:

> Q: In fact, *you conclude in your report that she cannot have customer contact*?
>
> Anderson: *It would be advisable that it would be minimized.*

(Anderson Dep., at 221-22 (emphasis added).)

Plaintiff has squarely admitted that dealing with other individuals on the telephone was an "essential function" of her job at Bell Atlantic within the meaning of the ADA. Her own expert has unambiguously testified that because of her mental condition, she could not control her telephone conduct any more than she could control her face-to-face interactions and therefore could not be trusted to perform that essential function in an acceptable manner. Because plaintiff cannot carry her burden of showing that she is qualified for all of the essential functions of her job, including telephone interaction, plaintiff's claims under the ADA should be dismissed as a matter of law.

## II.   PLAINTIFF'S OWN EXPERT DETERMINED THAT THERE IS NO REASONABLE ACCOMMODATION THAT WOULD ENABLE FRANCES DARCANGELO TO PERFORM THE ESSENTIAL FUNCTIONS OF HER JOB.

In denying Verizon's motion for summary judgment, the Court held that there were genuine issues of material fact regarding whether Frances Darcangelo "could have been accommodated by her employer." (*See* Order, at 2.) In deposition testimony not previously

before this Court, plaintiff's newly designated expert has removed any ambiguity regarding that issue of fact by making clear that there is no accommodation Verizon could have made which would have effectively addressed the repeated acts of intimidating and offensive misconduct which led to plaintiff's suspensions and termination. Therefore, Verizon is entitled to summary judgment on Count III because the deposition testimony of Dr. Anderson demonstrates that plaintiff cannot prove the elements of its "failure to accommodate" claim.

To establish a prima facie case for failure to accommodate, plaintiff must show that (1) she was an individual with a disability within the meaning of the ADA, (2) defendant had notice of her disability, (3) with reasonable accommodation she could perform the essential functions of the position, and (4) defendant refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). "[A] reasonable accommodation does not need to be the accommodation that the employee requested or preferred, *see, e.g., Baert v. Euclid Beverage*, 149 F.3d 626, 633 (7th Cir. 1998), and the employer need only accommodate disabilities of which the employer is aware. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9 app." *Hager v. First Va. Bank*, No. Civ.A. 7:01CV00053, 2002 WL 31373439, at *3 (W.D. Va. Oct. 18, 2002).

Even if an employee requests an accommodation, the employer is only required to provide such accommodation if it is "effective for the employee." *Bryant v. Better Business Bureau*, 923 F. Supp. 720, 736 (D. Md. 1996). This means that the accommodation must be one that enables the employee to perform the essential functions of the job. *See Stafne v. Unicare Homes*, 266 F.3d 771, 774 (8th Cir. 2001). If the accommodation would not have the effect of rendering the employee qualified for the job, it does not constitute a "reasonable" accommodation within the meaning of the ADA. *Bryant*, 923 F. Supp. at 734-35. Moreover, removing some of the "essential functions" of the job is not a "reasonable accommodation"

7

under the ADA. "The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position. *See* 29 C.F.R. Pt. 1630, App. at § 1630.2(o)("An employer . . . is not required to reallocate essential functions.")"; *Martinson v. Kinney Shoe Corp*., 104 F.3d 683, 687 (4th Cir. 1997)).

The Fourth Circuit has explained that "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, *enables the employee to perform the essential functions of the job in question.*" *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir. 1995) (emphasis added). Accordingly, the Fourth Circuit has held that in order to establish a *prima facie* case for failure to accommodate, a plaintiff must show, *inter alia*, "that with reasonable accommodation he could perform the essential functions of the position . . ." *Rhoads,* 257 F.3d at 387 n.11. In other words, the plaintiff must show that the accommodation would be effective in allowing the plaintiff to perform his or her job. Similarly, this Court, after analyzing the statutory language, legislative history and regulations promulgated by the Equal Employment Opportunity Commission, concluded that a "reasonable" accommodation is one which is "effective" in addressing the job-related difficulties presented by the employee's disability and that the burden of showing an accommodation is "reasonable" rests squarely on the plaintiff. *Bryant,* 923 F. Supp. at 733, 735-37.

While Dr. Anderson opined that there were several possible accommodations that would enable plaintiff to perform the essential functions of her job (*see* Ex. 5, Report of Douglas Anderson ("Anderson Rep."), at 3), even a cursory analysis of his report and testimony makes clear that the suggested accommodations would do nothing to prohibit plaintiff from engaging in egregious misbehavior. Dr. Anderson's report states that plaintiff's behavior could be accommodated by:

8

> [L]limiting [plaintiff's] contact and interaction with coworkers as much as possible and having her report to and interact mainly with supervisors who were aware of and sensitized to [plaintiff's] condition and its possible and likely expressions, which would be understood to be beyond [plaintiff's] ability to prevent.

(Anderson Rep., at 3).[2]  By suggesting that Verizon accommodate plaintiff by shielding her from interacting with coworkers or assigning supervisors who would tolerate her misconduct, Dr. Anderson effectively acknowledged that nothing will actually *prevent* plaintiff's misconduct. Stated differently, it is Dr. Anderson's position that there are no accommodations that would cause plaintiff to behave in a reasonably appropriate manner on a consistent basis.  While that conclusion follows logically from the "accommodations" recommended in his report, Dr. Anderson also plainly acknowledged that "[i]t's possible that there is no reasonable accommodation.  I don't know that."  (*See* Anderson Dep., at 221.)  Recognizing the lack of any accommodation that would actually prevent plaintiff's behavior, Dr. Anderson has proffered "accommodations" which are nothing more than techniques for Verizon to tolerate plaintiff's intimidating and offensive misconduct once it (inevitably) occurs.

The suggestion that simply putting up with plaintiff's misconduct is a "reasonable accommodation" is squarely at odds with the binding precedent of the Fourth Circuit.  In *Jones* v. *American Postal Workers Union*, 192 F.3d 417 (4th Cir. 1999), the Fourth Circuit Court of Appeals held that an employer acted within its rights under the ADA in terminating an employee for misconduct.  The court concluded that "[t]he ADA does not require an employer to ignore . . . misconduct by one of its employees, even if the misconduct was caused by the employee's disability."  *Id*. at 429.  Therefore, under *Jones* (and contrary to the suggestions of plaintiff's

---

[2] As Verizon addressed in pages 35-38 of its Memorandum in Support of Summary Judgment, plaintiff herself never requested these or any other accommodations under the ADA, and her failure to accommodate may be properly dismissed on that additional basis.

9

expert), simply tolerating plaintiff's behavior is not a "reasonable accommodation" within the meaning of the ADA.

In sum, Count III of plaintiff's complaint fails as a matter of law because all of the available evidence, including testimony by plaintiff's own expert, makes clear that there is no accommodation that would enable plaintiff to perform the essential functions of her job.

### III. THE FOURTH CIRCUIT DECISION IN *JONES V. AMERICAN POSTAL WORKERS UNION* MAKES CLEAR THAT AN EMPLOYER IS NOT REQUIRED TO TOLERATE THE TYPE OF BEHAVIOR HERE AT ISSUE, EVEN IF CAUSED BY A DISABILITY.

In denying Verizon's request for summary judgment, the Court held that factual disputes existed "about whether similarly situated employees received lesser punishments for discriminatory reasons." (Order, at 2.) Dr. Anderson's report, however, makes clear that the current thrust of plaintiff's claims is no longer that she was punished more severely than similarly situated, non-disabled employees. Rather, plaintiff's new theory is that disciplining plaintiff for her misconduct was discriminatory because that misconduct was allegedly caused by her disability.

As discussed in section II above, that theory already has been considered and rejected by the Fourth Circuit in *Jones*. In that case, the employer discharged an employee who made death threats against his supervisor. Prior to termination, the employee was diagnosed with schizophreniform disorder and post traumatic stress syndrome. The employee brought suit under the ADA alleging intentional discrimination against an individual with a disability. The district court dismissed the case for lack of subject matter jurisdiction, but the Fourth Circuit reversed and granted summary judgment in favor of the defendant-employer.

The court began by noting that the "law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability." *Id*. at 429 (collecting cases). Applying that principle, the court concluded:

> Because the ADA does not require an employer to ignore such egregious misconduct by one of its employees, *even if the misconduct was caused by the employee's disability*, we remand this case to the district court for entry of judgment in favor of the Defendants.

*Id*. (emphasis added). *Jones* is on all fours with the instant case and its reasoning commands the same result here. At best, the testimony of plaintiff's expert supports the theory that disciplining plaintiff for her misconduct was discriminatory because that conduct was caused by her disability. As *Jones* makes unambiguously clear, that theory simply has no merit. Accordingly, Verizon requests that the Court enter summary judgment in favor of Verizon on this additional basis or, at a minimum, barring plaintiff from presenting this new theory to the jury.

## **CONCLUSION**

For the reasons set forth in its Motion for Summary Judgment and for the additional reasons set forth above, Verizon respectfully requests that the Court enter an Order granting summary judgment against plaintiff Frances Darcangelo.

Dated:  April 27, 2005

_____/s/_____
Karen M. Wahle, Bar No. 013658
Ira H. Raphaelson, Bar No. 012849
Shannon M. Barrett, Bar No. 16410
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
(202) 383-5300
(202) 383-5414 (facsimile)

Counsel for Defendant
Verizon Maryland Inc.

11