UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. WDQ-02-816 (Civ.) |
| | ) |
| VERIZON MARYLAND, INC., | ) |
| | ) |
| | ) |
| | ) |
| Defendant, | ) |

## OPPOSITION TO DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

Plaintiff, through her counsel, Morris E. Fischer, Esq., hereby files this opposition to Defendant's Second Motion for Summary Judgment and states as follows.

### Introduction

This Court has already denied Summary Judgment to the defendant. That same record of evidence is before this Court and the same issues of fact are in dispute. The inclusion of Dr. Anderson as an expert witness is the only addition to this case. There is absolutely nothing that Dr. Anderson stated that could undo the fact that Plaintiff was qualified for the position in question by virtue of having performed that job for 10 years prior to her termination or answered for Defendant's choice to ignore the reasonable accommodation suggestions made by Maria Bury and Dr. Wright. As such, this is nothing more than an attempt to boot strap a wholly unrelated issue regarding presentation at trial with a second motion to dismiss this case.

1

## Dr. Anderson's Testimony Does Not Alter the Overall Analysis for Plaintiff's Being A Qualified Individual With A Disability

Defendant seeks to end this case by contending that Dr. Anderson, whom they sought to exclude as being an unqualified expert witness in the first place, has provided testimony establishing Plaintiff's inability to be qualified for her position. In reality, no actual fact has changed regarding the events in question between the years 1983-1999; the years in which Francis Darcangelo worked for Verizon until her unlawful termination.

As stated in pages 20-25 of Plaintiff's original Summary Judgment Opposition, the regulations require a comprehensive analysis as to the essential functions issue. (see exhibit "A"). More specifically, on page 23 of said opposition, Plaintiff's counsel points out that there were actually few complaints in the record from remotely situated Bell Atlantic co-employees about her work performance. Plaintiff's problems stemmed almost exclusively with flippant, ill advised, involuntary remarks she made with her face to face co-workers. That fact hasn't changed. Consequently, before even analyzing that which Dr. Anderson stated or wasn't asked to state at deposition, were the Court to consider his testimony in the best light for the defendant, Plaintiff still establishes by preponderance of evidence that she was qualified for her position in several ways.

Primarily, the record is clear that Plaintiff held her job and was performing her duties as a Central Office Technician from 1988-1998 without accommodation. Defendant has never contended that it accommodated Plaintiff and then withdrew it. There is a central issue of fact as to whether her suspensions in 1998 and termination

were justified, which comprise the Disparate Treatment discrimination portion of this case. Consequently, the actual facts of what occurred while at Verizon is much sharper evidence for a jury to understand than anything that an expert witness could testify to in the theoretical.

In addition, to support Plaintiff's position, there is nothing in the record to suggest that Plaintiff threatened anyone on the phone. There's no record of discipline for that. The closest evidence in the record for that contention comes from Marianne Moxey's deposition in which she stated that on one occasion, she heard Ms. Darcangelo use the N-word on the phone. However, Moxey admitted that she didn't know the circumstances of the phone call or the context for which it was said. Moxey also didn't even report the incident (Exhibit "B", Moxey depo 17-21). This is hardly a threat. Consequently, whether in the theoretical sense someone in a hypomanic state could make threats on the phone is not nearly as persuasive as that which actually occurred while Plaintiff was employed. The complaints Plaintiff had in her phone usage were similar to the complaints made of Barbara Lee, a similarly situated employee received on her evaluations (see exhibit "C"). Consequently, this connects to issues regarding disparate treatment, a count in the complaint not challenged in this Summary Judgment motion, which was previously denied Summary Judgment.

In this way, this case differs from the *Halperin v. Abacus Tech Corp.*, 128 F.3d 191 (4th Cir. 1997) and *Tyndall v. Nati'l Educ. Ctrs.*, 31 F.3d 209 (4th Cir. 1994) as cited by Defendant. Each of those cases involved a plaintiff who missed a significant amount of time from work due to his disability. In reasoning that attendance is an essential function of a job, it reviewed that which actually took place, the amount of time each

3

plaintiff missed work as the primary factor in granting Summary Judgment for the employer.

*Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667 (1st Cir. 1995), is also quite distinguishable. In that case, Plaintiff actually informed his supervisor that he was "losing it" and was subsequently placed on medical leave until he was cleared to return by the medical department. *Id.* at 669. A year and a half later, the plaintiff wrote to the company that although his doctor believed that he is not totally disabled, the plaintiff himself believed he was. *Id* at 670. In applying for readmission to the company sometime later, the plaintiff advised the company that he deserved accommodation due to his condition. *Id*. The Court ruled that the company had the right to ascertain how the plaintiff would in the future, satisfy the essential functions of the position and ruled for the employer when Plaintiff failed to demonstrate same. *Id*. at 671-673.

In contrast, the case at bar doesn't concern itself with a theoretical inquiry as to whether Plaintiff could have potentially performed the position. There is already a record in this case which established that issues of fact exist precluding Summary Judgment on all issues including essential functions of the position.

Regarding Dr. Anderson's actual testimony, he admitted only that occasionally, Plaintiff would be unable to perform the part of her job using the phone. However, he was not asked as to the frequency of the problem; whether stressors at work, such as stress brought on by co-workers tormenting her would increase the possibility of her uncontrollable phone behavior; or whether that would be so uncontrollable that Plaintiff would be unable to advise of the company as to her increases in the condition's intensity

and as such for those potentially brief periods of time, she would be assigned other duties.

Marianne Moxey has already testified that speaking with outside customers was not part of Ms. Darcangelo's job duties and that it would have been a mistake for a COT to speak with an outside customer (exhibit "B" 56-57). Internal customers are nothing more than other Verizon employees (exhibit "D", deposition of Barbara Lee 29-30). Again, there is no indication in the record that Plaintiff had the same problems dealing with the other Verizon employees by phone as she had with her co-workers. On only one occasion, Plaintiff was suspended for a phone incident in which she allegedly walked out in the middle of a phone conversation. There are different accounts of that incident. The only thing Ms. Moxey remembered about it, was that which was contained in a one page memo written on it. She has no independent recollection of the event. (exhibit "B" at 168). Ms. Darcangelo recalls the incident as one in which she to Moxey for help, and she refused to help her. (Ex. "E" Plaintiff's deposition at 372-374).

Consequently, Plaintiff has not changed its position with respect to the differences between interacting on the phone versus in person interaction. The distinction was supported in the record prior to Dr. Anderson's appearance and still predominates over any opinion Dr. Anderson, a non-fact witness, would possess. There is absolutely no requirement that a forensic psychiatrist testify as to Plaintiff's ability to perform the essential functions of a position to sustain a burden of proof, particularly, in case such as this, where the record is already in dispute on the issue of essential functions. Plaintiff can choose not to have Dr. Anderson testify as to essential elements of the position. Defendant has already chosen not to call Dr. Anderson as a witness for its side. As such,

because Plaintiff can establish issues of fact exist regarding Ms. Darcangelo as a qualified individual, Defendant's motion should be denied.

### Dr. Anderson's Testimony Does Not End Plaintiff's Failure To Accommodate Claim

Defendant contends that Dr. Anderson made it clear for the first time Verizon could provide no reasonable accommodation for Plaintiff. However, simply stated, that was not his testimony.

Defense counsel presents three lines of testimony on page 221 of Dr. Anderson's testimony. "It's possible that there is no reasonable accommodation. I don't know that." (exhibit "F" at 221). This quote is taken totally out of context.

The relevant exchange commences on page 217, in which defense counsel suggests to Dr. Anderson different measures taken by Verizon that Defense Counsel suggests are accommodations, rather than Dr. Anderson. These involve being placed with a variety of supervisors and being given paid time off (defense counsel never states for what purpose or under what circumstances). However, the actual accommodations suggested by not only Dr. Anderson, but by Dr. Zimberg and Dr. Wright, already in the record, of sensitivity training and limited social interaction with co-workers, were never deemed to be ineffective by Dr. Anderson.

Even more fundamental than that, the response was given to this question:

Q. If it turns out that those reasonable accommodations were made
And that behavior persisted between 1997 and 1998, there is no
Reasonable accommodation that is going to stop her from acting
Inappropriately, is there?  Id. at 220.

6

The very question suggests that the purpose of accommodations under the ADA is to improve the behavior, or for that matter, the disability of disabled person. This is completely without legal basis. Accommodation is for the disabled person. The relevant issue here is whether the sensitivity training would have enabled the co-workers to better deal with the Plaintiff, thereby enabling Ms. Darcangelo a better opportunity to continue working at Verizon.

Another example of the misstatements by defense counsel at the deposition include:

> Q. Can you cite a single incident where a supervisor volunteers to have his or her time monopolized by someone who is going to abuse them?
> A. No, I could not. (225)

There was never a suggestion that a supervisor be abused and have his time monopolized by Ms. Darcangelo as a possible accommodation.

**Defendant's Precedent's Are Equally Without Basis**

The facts in *Jones v. American Postal Workers Union* 192 F.3d 417 are wholly distinguishable than the case at bar. In Jones, the employee was terminated for threatening the life of a supervisor. The court held that such was a case for termination, even if the threat was made due to a disability. On the way to the Medical Center, Jones the plaintiff, told Postmaster Giargaina that he intended to kill his supervisor, Kim Mickelinc that day. Upon arrival at the medical center, Jones was admitted as a psychiatric patient.

Conversely, whether the Plaintiff threatened anyone seriously is completely in dispute. Defendant points to an incident involving bullets brought into work 15 years before it terminated her. Defendant points to the target incident. However, as already defended in the prior Summary Judgment Opposition, Plaintiff had hung the same picture up many months prior to hanging it up a second time (see page 10 of exhibit "A"). The final three incidents involving a walking out of a meeting in September 1998, leaving a three conversation in October of 1998 and racial taunting in December of 1998, do not involve threatening behavior.

Defendant also cites *Myers v. Hose* 50 F.3d 278 (4th Cir. 1995) and takes out of context dicta that reasonable accommodation is by its terms most logically construed as that which presently or in the immediate future, enables the employee to perform the essential functions of the job in question. *Myers* dealt with an obligation to grant the employee an indefinite period of time to correct a disabling condition. *Id*. at 280. The Court pointed to that the County would be forced to stand by or hire temporary help or fill transit positions with less qualified drivers. *Id*. at 283. The defense raised was that of undue burden. *Id*. The case never stood for the proposition that there had to be some sort of guarantee by the plaintiff that with the accommodation she could do the essential elements of the position.

That's hardly the same case here. In the case at bar, one of the central issues, as explained by Plaintiff's counsel in the first Summary Judgment Opposition, once an employer is put on notice of the need for an accommodation that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. *Humphrey*

8

*v. Memorial Hospitals Ass'n.,* 239 F.3d 1128 (9th Cir. 2001). The employer is liable for failing to make the attempt. Id. (see pages 32-34 of Exhibit "A"). Consequently, this very issue was already decided by this Court in Plaintiff's favor in the original Summary Judgment motion.

The rest of the cases cited by Defendant are the same as in its original Summary Judgment Motion. In fact a close look at Defendant's pages 34-35 of its original motion compared with pages 6-7 of its second Summary Judgment motion reveals that they are nearly identical (see exhibit "g"). As such, there's really nothing new that the Court hasn't heard regarding the reasonable accommodation issue other than Dr. Anderson, being compelled to answer irrelevant questions regarding accommodations.

The ADA requires an employer to "mak[e] reasonable accommodations to the known physical or mental limitations" of an employee. *See* 42 U.S.C. § 12112(b)(5)(A). This provision requires an "employer [to] be willing to consider making changes in its ordinary work rules . . . in order to enable a disabled individual to work." *See Vande Zande v. Wisconsin*, 44 F. 3d 538, 542 (7th Cir. 1995); *see also U.S. Airways v. Barnett*, *supra*.(The accommodation provisions of the ADA may sometimes allow a worker with a disability to "violate a rule that others must obey."); *Mcalindin v. County of San Diego*, 201 F. 3d 1211, 1238 (9th Cir. 2000)("The essence of the concept of reasonable accommodation is that, in certain instances, employers must make special adjustments to their policies for individuals with disabilities."); *Shapiro v. Cadman Towers, Inc.*, 51 F. 3d 328, 334-35 (2d Cir. 1995)(Reasonable accommodation requires more than equal treatment.).

The legislative history of the Act makes clear that in order to make the accommodation requirement work employers are required to take a "problem-solving approach," and to assist the employee in determining a workable accommodation. *See* S. Rep. No. 101-116 at 34 (1989). Fleshing out this notion, the EEOC has mandated that employers engage in an "informal, interactive process" with a disabled employee in order to determine "potential reasonable accommodations that could overcome [the employee's] limitations." *See* 29 C.F.R. § 1630.2(o)(3).

**Conclusion**

Six hours of testimony from a forensic psychiatrist, five or six years following the events in question can hardly undo a complete record already before the court regarding these very issues. Through this record, Plaintiff sustains this burden of proof with respect to the "qualified individual." The more relevant evidence is that which actually occurred, established by documents and fact witnesses which far surpasses that which was theoretically possible. Defendant's argument regarding accommodations is also incorrect. The case law cited, the same case law cited in the original Summary Judgment Motion, has little, if any, fact analysis to it and has already decided upon. Furthermore, Dr. Anderson, who doesn't even have to testify on this point, never suggested that the accommodations already suggested by Dr. Wright and Dr. Zimberg would have failed. As a result, this motion should be denied in its entirety.[1]

---

[1] Plaintiff herein incorporates its original Summary Judgment opposition and all exhibits already submitted to the court as per filing #41 on 7/15/03, already with the Court.

Respectfully Submitted,

/s/
_____
Morris E. Fischer, Esq.
MD: Bar No. 26286
Snider & Fischer, LLC
104 Church Lane
Baltimore, Maryland 21208
410-653-9060 phone
410-653-9061 fax
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. WDQ-02-816 (Civ.) |
| ) | |
| VERIZON MARYLAND, INC., ) | |
| ) | |
| ) | |
| ) | |
| Defendant, ) | |

## **ORDER**

Upon consideration of Defendant's Motion and Plaintiff's Opposition to Defendant's Motion for Summary Judgment, on this _____ day of _____ 2005, that said motion is hereby DENIED.

_____
United States District Judge

13