423 (W.D. Mo. 1995)(employee with carpal tunnel substantially limited in working because of lack of marketable training and skills).

Here, Plaintiff has been found by her vocational expert to be ill-suited for the great majority of jobs available to her due to her difficulties interacting with others. Therefore, she meets the requirement of being substantially limited in the major life activity of working because her limitations preclude her from successfully maintaining employment in the great majority of jobs in the workplace. See Anderson, LOISLAW p. 6, citing Snow v. Ridgeview Med. Ctrl, 128 F.3d 1201, 1207 (8th Cir. 1997).

**IX.   Plaintiff was a Qualified Individual with a Disability, Able to Perform All Essential Functions of Her Position**

A qualified individual is an individual is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds of desires. 42 U.S.C. 12111(8). Plaintiff has the burden of demonstrating that she was performing at a level that met her employer's legitimate expectations. Rhoads v. FDIC, 257 F.3d 373, 387 (4th Cir. 2001).

A job's "essential functions" are defined in 29 C.F.R. sec. 1630.2(n)(1) as those that are "fundamental, not marginal." The regulations enumerate a number of factors which distinguish fundamental from marginal in this context, including:

1. whether performance of the function is the reason the (employee's) position exists;
2. Whether there are a limited number of employees available among whom the performance of that job function can be distributed; and
3. Whether the function is highly specialized so that the incumbent in the position is hired for his or her expertise.

29 C.F.R. sec. 1630.2(n)(2). See generally Skerski v. Time Warner Cable Co., 257 F.3d 273, 279

(3rd Cir. 2001)(thorough discussion of the EEOC regs. on essential functions). The regs (29

C.F.R. sec. 1630.2(n)(3)) contain a non-exhaustive list of seven examples of evidence designed

to assist a court in identifying essential functions, including:

> (i).   The employer's judgment as to which functions are essential;
> (ii).   Written job descriptions prepared before advertising or interviewing applicants
>      for the job;
> (iii). The amount of time spent on the job performing the function;
> (iv).  The consequences of not requiring the incumbent to perform the function;
> (v).   The terms of a collective bargaining agreement;
> (vi).  The work experience of past incumbents in the job; and/or
> (vii). The current work experience of incumbents in similar jobs.

Skerski, 257 F.3d at 279 (citing regs).

Whether a particular function is essential is a factual determination that must be made

ono a case by case basis. EEOC Interpretive Guidance on Title I of the Americans with

Disabilities Act, 29 C.F.R. pt. 1630, App. 1630.2(n)(2000)(hereinafter Interpretive Guidance).

None of the identified factors or examples provided in the regs are necessarily dispositive on

their own. Skerski, 257 F.3d at 279.

Defendant Verizon attempt to circumvent (and conveniently, avoid) the type of detailed

analysis of "essential function" suggested by the regs (and thoroughly discussed in Skerski) by

simply citing to a number of cases (Defendant's Motion for Summary Judgment, pp. 44-46)

which it represents stand for the proposition that interacting with co-workers, supervisors, and

customers is necessarily an essential function of virtually any position. The type of conduct of

which Defendant complains does not rise anywhere near the level of behavior implicated in the

-21-

other cases[19], such as <u>Misek-Falkoff v. IBM Corp.</u>, 854 F. Supp. 215, 227 (S.D.N.Y. 1994)(fits of

rage, emotional outbursts, altercation with co-worker); <u>Mazzarella v. U.S. Postal Serv.</u>, 849 F.

Supp. 89, 92-95 (D. Mass. 1994)(employee who damaged property, threw equipment and had

violent outbursts). Likewise, Plaintiff's conduct doe not approach the threshhold required to

establish a "direct threat.[20]

**X. Interacting with Others was not an Essential Function of the Central Office Technician Position, as Applied to Plaintiff and the co-workers in her group**

The regs, as applied in <u>Skerski</u>, mitigate in favor of a determination that interacting[21] was

_____

[19]The cases cited in Defendant's Motion (p. 46, n. 23) implicate misconduct which either far surpasses any of Plaintiff's conduct, or are dissimilar. <u>See</u> <u>Little v. FBI</u>, 1 F.3d 255, 259 (4th Cir. 1993)(FBI agent who admitted egregious misconduct of being intoxicated on duty, in violation of department rules); <u>Jones v. Am Postal Workers Union</u>, 192 F.3d 417, 429 (4th Cir. 1999)(postal worker directly threatened to kill supervisor and left suicide note); <u>Carozza v. Howard County</u>, 847 F. Supp. 365, 367-68 (D. Md. 1994)(plaintiff admitted emotional outbursts and repeated insubordination). In the case of <u>Crandall v. Paralyzed Veterans of Am.</u>, 146 F.3d 894, 898 (D.C Cir. 1998), the employee was never ADA-qualified in the first place since his employer never had notice that he had bipolar disorder.

[20]It is true that an employee may be deemed unqualified for the purposes of the ADA if she poses a direct threat to the health or safety of other individuals in the workplace. 42 U.S.C. sec. 12113(b). That is why Defendant kept sending Plaintiff for IME's, practically begging the examiners to declare her a direct threat so they could fire her without repercussion. However, Plaintiff's conduct, which is more aptly characterized as bizarre, rather than violent, does not come close to approximating that described in <u>Palmer v. Circuit Ct</u>, 905 F. Supp. 499, 509, <u>aff'd</u>, 117 F.3d 351 (7th Cir. 1997) (employee threatened to kill supervisor), or in <u>EEOC v. Amego, Inc.</u>, 110 F.3d 135, 143 (1st Cir. 1997)(suicidal and severely-depressed employee was direct threat to patients to whom she was charged with medicating). Direct threat analysis, including the exacting requirements of objective evidence giving reasonable basis for specific threat of harm is thoroughly discussed in <u>Bragdon</u>. Good discussions of direct threat analysis are contained in <u>EEOC v. Texas Bus Lines</u>, 923 F. Supp. 965, 979-81 (S.D. Tex. 1996)(unjustified fears about the morbidly obese driver), and <u>EEOC v. Chrysler Corp.</u>, 917 F. Supp. 1164, 1170-72 (E.D. Mich. 1996).

[21]Plaintiff recognizes that a minimal level of interaction is required in any job in the sense that an employee must at least have the desire to be responsive to their supervisors and accept their supervision. Some of the cases cited by Defendants, for example, <u>Boldini v. Postmaster</u>

not an essential function of the Central Office Technician (COT) position.  Under the regs

applicable to determining whether a function is marginal or fundamental, it is important to

remember that Plaintiff is asserting that interacting in this sense should be evaluated in the

proper context. Plaintiff was involved in basically two types of regular interactions in the COT

position: 1) interacting with fellow Bell Atlantic employees in remote installations  to execute the

provisioning  function, which was a central  purpose of her job; and 2) interacting with her co-

workers in the immediate workgroup. Plaintiff recognizes the former as an essential function of

her position, and the undisputed evidence will bear out that there were few reports of complaints

about her performance from these remotely-sited co-workers. In fact, Plaintiff is aware of few

complaints in the record of complaints from the remotely-situated Bell Atlantic co-employees

about her work performance. Plaintiff's problems stemmed almost exclusively with flippant, ill-

advised, involuntary remarks she made which got her into trouble with the co-workers on the

Hunt Valley Floor with whom she worked on the provisioning orders.

The workplace requirements are discussed in Def. Ex. 31 "Transport Provisioning

Technician". The job requirements make no mention of interacting with co-workers as a

particular requirement, (Plaintiff's Ex. 18), although Moxey and Conrad tried to make it seem

like interaction with team co-workers was important. Moxey Dep. at 61, Conrad Dep. at 10-19.

Other workers familiar with the job, including Barbara Lee, (Lee Dep. at 27-28), and Maria Bury

---

Gen., 928 F. Supp. 125 (D.N.H. 1995), and Mancini v. Gen. Electric Co., 820 F. Supp. 141, 147
(D. Vt. 1993) involve situations where the employees were so insubordinate or hostile to the idea
that their supervisor had any authority over them that they were probable not qualified for any
position. Plaintiff's case is much different, in the sense that she did want to do a good job (note
she made repeated requests for additional training) but was still not always able to control her
behavior.

said the Union had even tried to get Fran moved so she wouldn't have to have much contact with

co-employees (Bury Dep. at 69, 179-180, 55-56).

Applying the regs to the COT position as it functioned in Plaintiff's workgroup in Hunt

Valley under Marianne Moxey.

> 1. whether performance of the function is the reason the (employee's) position
>    exists;
>
> A. Interacting as it related to the remote provisioning was essential, interacting as
>    it related to the COT co-workers on the floor was marginal;
>
> 2. Whether there are a limited number of employees available among whom the
>    performance of that job function can be distributed;
>
> A. There were 7 employees in Moxey's workgroup, and all were expected to perform
>    the job functions of generalists;
>
> 3. Whether the function is highly specialized so that the incumbent in the position is
>    hired for his or her expertise.
>
> A. COT's are hired for their skills as applied in remote provisioning, not for the
>    skills in getting along with their co-workers on the floor.

29 C.F.R. sec. 1630.2(n)(2). Reviewing the regs contained in 29 C.F.R. sec. 1630.2(n)(3))

which list of seven (nonexhaustive list) examples of the types of evidence designed to assist a

court in identifying essential functions, including:

> (i).   The employer's judgment as to which functions are essential;
>
> A. Getting along with co-workers in the workgroup not identified by employer
>    as essential, except in depositions for this case
>
> (ii).  Written job descriptions prepared before advertising or interviewing applicants
>        for the job;
>
> A. The written job description does not list interacting as a job skill, as noted
>    in Marianne Moxey's deposition

(iii). The amount of time spent on the job performing the function;

A. Deposition testimony established time interacting with co-workers was minimal;

(iv). The consequences of not requiring the incumbent to perform the function;

A. As Plaintiff was never considered for an accommodation, Defendant never examined possibility of restructuring Plaintiff's job to reduce her need to interact with her co-workers;

(v). The terms of a collective bargaining agreement;

A. The CBA does not address this;

(vi). The work experience of past incumbents in the job; and
(vii). The current work experience of incumbents in similar jobs.

A. No evidence that the job requirements have been changed to accommodate another worker with Ms. Darcangelo's disability.

Interacting with others, with the caveat noted in Note 6, was not an essential function of the COT position held by Ms. Darcangelo. Therefore, in light of the lack of Plaintiff's satisfactory performance in the other aspects of her job, Plaintiff was a qualified person with a disability.

## VI: (COUNTS)

### COUNT I:   Disparate Treatment in Termination

McDonnell Douglas Corp.v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973) and subsequent decisions have established an allocation of the burden of production and on order to the presentation of proof in discriminatory-treatment cases. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, (2000)(applying McDonnell Douglas). First, the plaintiff must establish a prima facie case of discrimination. She must show that: 1) she

-25-

irrational, delusional, unable to communicate effectively, and unable to attend work at the time of

his termination and determining these issues were for the jury).

Because Plaintiff's physician has testified that Plaintiff's misconduct is involuntary (even

Jim Conrad said Fran couldn't keep herself under control (Conrad Dep. at 164), it is

improper for the Company to discipline her for conduct attributable to her disability.

Also, although Plaintiff did not specifically request herself a specific accommodation for

her disability. it is not always necessary that the employee initiate the request. Baucom v. Potter,

WMN-98-2625 (2002 U.S. Dist. LEXIS 21067 September 17, 2002) at 6. Courts have also

accepted communications from an employee's family, see EEOC v. VOSS, W.D. Okla.

LOISLAW at 6 (whether defendant had obligation to accommodate when it denied knowing even

that employee was disabled question for jury when defendant's wife testified she gave defendant

information which put it on notice that employee husband was disabled and in need of

accommodation); Baucom, 2002 U.S. Dist. LEXIS 21067 at 6 (communication from a physician

may suffice to put defendant on notice of disability and need for accommodation); Bultermeyer v.

Fort Wayne Community Schools, 100 F.3d 1281, 1285 (7th Cir. 1996), Criado v. IBM Corp., 145

F.3d 437, 444 (1st Cir. 1998). See also Raddatz v. City of Chicago, 11 AD Cases 829 (N.D. Ill.

2000).

Once an employer is put on notice of the need for an accommodation, that employer has a

mandatory obligation under the ADA to engage in an interactive process with the employee to

identify and implement appropriate reasonable accommodations. Humphrey v. Memorial

Hospitals Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001)(concluding that as a matter of law defendant

had affirmative duty to explore possible accommodation when put on notice that employee might

-32-

need accommodation.)  See also Perez v. Procter & Gamble Manufacturing Co., No. Civil S-99-2000 FCD/DAD (E.D. Cal. August 24, 2001)(LOISLAW)(defendant has obligation to continue to engage in the interactive process, even if plaintiff originally refused offered  accommodation).

An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position. Humphrey, 239 F.3d at 1137. The interactive process requires communication and good-faith exploration of possible accommodations between employers and employees. In fact, employers who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. Id. At 1137-38.

Here, The Company was put on notice that Plaintiff needed an accommodation in being moved so that she would not be required to interact with other people. (MARIA BURY Dep. 55-56, 69). Also, Dr. William Wright, the Medical Director for CORE, the health care administrator with whom Bell Atlantic contracted, told Bell Atlantic supervisor Butch English that Fran's co-employees in her workgroup should be counseled about working with someone with a mental disability. (DR. William Wright Dep., pp. 38-39). This was not done. Actually, the Company has simply denied that it knew about Fran Darcangelo's need for accommodation.

As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform the job, the employer is liable for failing to attempt that accomodation. Humphrey, 239 F.3d at 1136. The ADA does not require an employee to show that a proposed acccommodation (in this case, leave of absence) is certain or even likely to be successful to prove that it is a reasonable accommodation. Id.

Plaintiff's co-worker (Maria Bury), treating physician (Dr. Gary Zimberg Dep. at 97-98)

-33-

and Vocational Expert (Martin Krantiz Dep. 32-33) have all noted that Ms. Darcangelo's best

prospects for succeeding at her job are with limited social contacts. Dr. Wright ordered counseling

of her co-workers. Despite this, the Company made no effort to accommodate[26] Ms. Darcangelo.

**XII:    If it is Determined that Plaintiff was Not Actually Disabled, Plaintiff has Established that she was "Regarded as" Disabled under the ADA**

Jim Conrad's statement that Plaintiff's "special" medical condition, the company's

attempts to restrict Fran from working nights (Darc. Dep. at 304-306, Plaintiff Ex. 8 CORE

Records), and his statements that Ms. Darcangelo's "job was changed several times" (Conrad

Dep. at 203), support a finding that the Company regarded Plaintiff as disabled in the major life

activities of interaction and working. See Julia v. Jansen, 92 F. Supp. 2d 25 (D. P.R. 2000).

**XIII.    Conclusion**

For the reasons stated above, Plaintiff has put forth sufficient evidence to proceed on all

three counts, and the Defendant's Motion for Summary Judgment should be denied.

Dated this 12th day of July, 2003

_____

Edwin R. Burkhardt
502 Washington Ave #906
Towson, MD 21204
Bar #23626
(410) 493-5547

_____

[26]The company has argued that it in fact made an effort to give extra special treatment to Ms. Darcangelo (Conrad Dep. at 164, 203, Moxey Dep. at 128), but Maria Bury certainly didn't agree. If accepted, the company's attempts at leniency certainly undercut its claims that it didn't know that Plaintiff had a disability.

-34-