IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO,<br><br>    Plaintiff,<br><br>    v.<br><br>VERIZON MARYLAND INC.,<br><br>    Defendant. | No. WDQ-02-816 (Civ.) |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF FRANCES DARCANGELO**

    Plaintiff's psychiatric expert Dr. Douglas Anderson, having conducted a psychiatric examination of plaintiff, asserted two clear points which, if accepted as true, unequivocally establish that (1) plaintiff is wholly unfit to provide competent testimony at trial and (2) allowing her to testify would deny Verizon its due process right to confront and cross-examine adverse witnesses. First, Dr. Anderson believes her testimony to be so inherently unreliable that Dr. Anderson gave her sworn deposition testimony less weight than her statements to him during an examination. Second, Dr. Anderson made clear that in his opinion, psychiatric expertise is required to meaningfully discern whether to give more or less weight to plaintiff's testimony on a given day.

    In Plaintiff's Opposition to Defendant's Motion in Limine to Exclude Testimony by Frances Darcangelo ("Plaintiff's Opposition") (Dkt. #151), plaintiff attempts to mimic Dr. Anderson's own attempts to escape the full import of his assertions by claiming that Dr. Anderson was commenting solely on plaintiff's inability to understand the clinical basis for her

behavior. This artificial rationale for what Dr. Anderson might have meant, however, cannot be reconciled with his actual testimony or with the manner in which Dr. Anderson, by his own admission, discounted plaintiff's sworn testimony as unreliable.

## ARGUMENT

As more fully outlined in Verizon's Memorandum in Support of Motion in Limine to Exclude Testimony by Frances Darcangelo ("Verizon's Memorandum") (Dkt. #145), Dr. Anderson, during the course of his deposition, testified unambiguously and in multiple contexts that plaintiff's alleged mental condition seriously compromises plaintiff's ability to provide reliable testimony to such a degree that, in forming his opinions, he himself gave less credence to her sworn testimony than to her unsworn statements to him.

Late in his deposition, as Dr. Anderson began to realize the import of his sworn statements on plaintiff's ability to testify at trial, he attempted to explain away his earlier testimony by claiming that he was referring only to plaintiff's ability to assess the clinical reasons for her behavior and asserting that he believed that the jury was capable of doing its job at trial. (*See* Ex. A, Deposition of Dr. Douglas Anderson ("Anderson Dep.") at 248-49.) In her response, plaintiff has unsurprisingly seized upon that *post hoc* rationalization by Dr. Anderson in an attempt to avoid the natural consequences of his earlier testimony.

Dr. Anderson's attempted explanation, however, simply cannot be reconciled with the actual substance of his opinions on plaintiff's reliability or the context in which those opinions were stated. For example, during one exchange, Dr. Anderson was asked to explain how his expressed opinion that plaintiff's termination caused her to become disillusioned about ever maintaining employment could be rectified with plaintiff's sworn testimony that she believed she would be successful in a given job. (Anderson Dep., at 239-46.) After conceding that plaintiff's

belief that she would be successful was inconsistent with his opinion that she was disillusioned, Dr. Anderson explained that he had concluded that plaintiff's testimony under oath was less reliable than her statements to him. (Anderson Dep., at 244-45.)

Despite Dr. Anderson's and now plaintiff's attempts to rationalize away this critical testimony about plaintiff's unreliability, Dr. Anderson plainly was not referring to plaintiff's ability to assess the "clinical psychological reasons" for her feelings or actions. (*See* Plaintiff's Opposition, at 5.) Rather, Dr. Anderson was flatly disregarding plaintiff's basic testimony as to what she believed. Thus, plaintiff's effort to explain away Dr. Anderson's testimony by distinguishing between her ability to testify as to her motives and beliefs on the one hand and her understanding of her mental condition on the other simply does not hold up when one examines that ways in which Dr. Anderson himself discounted plaintiff's sworn testimony.

Beyond her ill-fitted attempt to rationalize Dr. Anderson's testimony, plaintiff largely resorts in her Opposition to generalized statements that issues of credibility are best left to the jury and that the danger of unreliable testimony can be minimized through cross-examination and jury instruction. Verizon has already acknowledged that the Federal Rules of Evidence adopt a broad view of witness competency. However, as explained in Verizon's Memorandum, that view is grounded in the assumption that a lay jury will be able to recognize and take into account any infirmities in a witness's ability to provide reliable testimony. According to plaintiff's own expert, that assumption does not hold in the present case. Rather, Dr. Anderson explained that in his opinion, only a psychiatrist could effectively determine how much weight to give plaintiff's testimony in a given instance:

> Q: Does it take a forensic psychiatrist to determine whether to give more or less weight to Ms. Darcangelo's testimony under oath?
>
> A: No.

> Q:    How does one do it then?
>
> A:    One filters through one's judgment and experience with many patients over many years and makes the best overall assessment that one can.
>
> Q:    But if I have a jury or a judge without the benefit of years of experience with patients how do I do it?
>
> A:    Well, I guess in that sense you do [need to be an] IME expert. But the expert doesn't have to be a forensic psychiatrist it can just be a psychiatrist.

(Anderson Dep., at 246.)

Thus, if the above testimony by Dr. Anderson is accepted as true[1], a lay jury cannot be relied upon to assess the reliability of plaintiff's testimony. Moreover, cross-examination will not be an effective remedy if, as Dr. Anderson indicated, plaintiff herself is unable to understand the truth or accuracy of her testimony. Indeed, as discussed in Verizon's Memorandum, allowing plaintiff to testify in the face of testimony by her own psychiatric expert that not only is her testimony unreliable but also that her unreliability cannot be discerned by lay people would effectively deny Verizon its right to confront adverse witnesses and is itself additional grounds for excluding plaintiff. *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). Where, as here, the normal safeguards against unreliable testimony do not and cannot apply, it is within the Court's proper role as gatekeeper to exclude plaintiff from testifying or introducing her out-of-court statements at trial.

## CONCLUSION

For the reasons set forth above, Verizon respectfully requests that the Court enter an

---

[1] As discussed in Verizon's Memorandum, Verizon does not endorse or adopt Dr. Anderson's opinions on any issue. However, having proffered Dr. Anderson as an expert on psychiatric issues, plaintiff should be properly bound by the full implications of his psychiatric opinions, even where those implications negatively impact her ability to testify.

5

Order granting Verizon's Motion in Limine to Exclude Testimony by Frances Darcangelo.

Dated: May 10, 2005

_____/s/_____

Ira H. Raphaelson, Bar No. 012849
Karen M. Wahle, Bar No. 013658
Shannon M. Barrett, Bar No. 16410
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
(202) 383-5300
(202) 383-5414 (facsimile)


Counsel for Defendant
Verizon Maryland Inc.