IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANCES DARCANGELO,<br><br>        Plaintiff,<br><br>    v.<br><br>VERIZON MARYLAND INC.,<br><br>        Defendant. | No. WDQ-02-816 (Civ.) |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
RENEWED MOTION FOR SUMMARY JUDGMENT**

      Plaintiff's last minute change in expert and attempted change in theory has conclusively resolved against her the central factual issues that this Court ruled had been left open for trial. Ignoring the now indisputable truth in her response to our motion does not change the record now before the court.

**ARGUMENT**

I.     **THE UNEQUIVOCAL TESTIMONY OF PLAINTIFF'S PSYCHIATRIC EXPERT DEMONSTRATES THAT PLAINTIFF IS NOT A "QUALIFIED INDIVIDUAL" BECAUSE SHE CANNOT PERFORM THE ESSENTIAL FUNCTIONS OF HER JOB.**

      As more fully addressed in Verizon's Memorandum in Support of Renewed Motion for Summary Judgment ("Verizon's Memorandum") (Dkt. #143), plaintiff's newly appointed psychiatric expert, Dr. Douglas Anderson, has made it unavoidably clear that plaintiff cannot prevail on her claims under the Americans with Disabilities Act ("ADA") because she was not qualified to perform the essential functions of her job. *Halperin v. Abacus Tech. Corp.*, 128 F.3d

191, 197 (4th Cir. 1997); *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994) (plaintiff "bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation").

In support of its original motion for summary judgment, Verizon argued that plaintiff's misconduct disqualified her from performing the essential functions of her job in that she could not be relied upon to properly interact with other individuals.  In response, plaintiff argued that face-to-face interaction with coworkers was not an essential job function but admitted that telephone interaction was.  (*See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dkt. #38), at 24 ("Plaintiff was involved in basically two types of regular interactions in the COT position: 1) interacting with fellow Bell Atlantic employees in remote installations to execute the provisioning function, which was a central purpose of her job; and 2) interacting with her co-workers in the immediate workgroup. *Plaintiff recognizes the former as an essential function of her position . . . .*") (emphasis added).)  Plaintiff, however, contended that her past misconduct had primarily involved face-to-face rather than telephone interaction, and that it therefore could not be established that she was unable to carry out the essential function of telephone interaction in a reliable manner.

However, during his deposition, Dr. Anderson, whom plaintiff has proffered as her sole expert on psychiatric issues, exposed plaintiff's attempted distinction between telephone and face-to-face interaction as meaningless, testifying that plaintiff's mental condition renders her unable to control her behavior in telephone interactions with internal customers in the same manner that he believes it compromises her ability to control herself in face-to-face actions:

> Q: So if a person has chronic hypomania they cannot prevent themselves from calling other people names; is that your view?
>
> A: I'm not saying that anyone that has one can.  I'm saying in her case that is the case, yes.

> Q: How about making threats on the telephone?
>
> A: It's quite consistent.
>
> Q: If using the telephone is part of the job, she can't perform that part of the job, can she?
>
> A: Occasional. Sometimes that would be true.
>
> Q: There are times when she cannot perform that job is she is going to curse on the phone?
>
> A: I agree.

(Ex. A, Deposition of Douglas Anderson ("Anderson Dep."), at 196-97.)

      In response to this critical testimony, plaintiff merely resorts to the same argument that she used in response to Verizon's initial motion for summary judgment, that her past misconduct largely involved face-to-face rather telephone interaction. Plaintiff's response, however, artificially conflates the elements of her ADA claims. The requirement that a plaintiff be qualified to perform the essential functions of her job is an independent element of any ADA claim for employment discrimination. Plaintiff admits that telephone interaction was an essential function of her job. Thus, to maintain any ADA claim, plaintiff must be able to show that she was able to reliably carry out that job function in a professional and effective manner. Dr. Anderson unambiguously testified that she could not be relied upon to carry out that function because, according to him, the same condition which he claims compelled her to carry our repeated, egregious acts of misconduct in her face-to-face dealings could just as easily compel her to curse or make threats over the telephone. The fact that her past misconduct had largely manifested itself in face-to-face interactions does not change the fact that, according to her own expert, she could not be relied upon to carry out the essential job function of telephone interaction in a professional manner.

As plaintiff has amply pointed out, Verizon does not endorse the opinions of Dr. Anderson and has separately sought to exclude him as a witness at trial. Nonetheless, having offered him as an expert on psychiatric issues, plaintiff cannot escape the clear import of his opinions. Part of that import is that plaintiff could not be relied upon to carry out the essential job function of telephone interaction without creating serious adverse consequences for Bell Atlantic. As a result, plaintiff cannot meet the required element of showing that she was qualified to perform her job within the meaning of the ADA, and her claims therefore must fail as a matter of law.

## II.    PLAINTIFF'S OWN EXPERT MADE CLEAR THAT THERE IS NO REASONABLE ACCOMMODATION THAT WOULD ENABLE PLAINTIFF TO PERFORM THE ESSENTIAL FUNCTIONS OF HER JOB.

Although plaintiff quibbles with some of Verizon's quotes from Dr. Anderson's deposition, her opposition entirely fails to confront the critical manner in which Dr. Anderson's report and testimony necessarily defeat plaintiff's failure to accommodate claim. As addressed in Verizon's Memorandum, while Dr. Anderson suggests several supposed accommodations, those so-called accommodations would not have been effective in enabling plaintiff to perform the essential functions of her job and, indeed, were not directed toward that end. Rather, Dr. Anderson's report and deposition testimony demonstrate that the accommodations that he himself suggests essentially amount to tolerating plaintiff's egregious workplace conduct and that no accommodations would work to bring plaintiff's behavior under control.

This critical flaw in Dr. Anderson's suggested "accommodations" can be seen most readily in his opinion that Verizon should have accommodated plaintiff by having her "report to and interact mainly with supervisors who were aware of and sensitized to [plaintiff's] condition and its possible and likely expressions, *which would be understood to be beyond [plaintiff's]*

4

*ability to prevent.*" (*See* Ex. 6 to Verizon's Memorandum, April 4, 2005 report of Dr. Anderson, at 3) (emphasis added.)   By suggesting that plaintiff's supervisors understand that plaintiff's behavior is beyond her control, Dr. Anderson is effectively opining that a "reasonable accommodation" would have been to tolerate plaintiff's misconduct and to allow her to continue her offensive and intimidating acts without any repercussions.  Dr. Anderson confirmed that this suggested accommodation would have done nothing to improve plaintiff's behavior through the following exchange at his deposition:

> Q:  How would you characterize it, sir?
>
> A:  Supervisors should be trained in how to deal with her.
>
> Q:  Meaning a supervisor should be prepared to be called all of those names that we've gone through that you say she is uncontrollably compelled to call them?
>
> A:  No.
>
> Q:  How is a supervisor able to stop her?
>
> A:  A supervisor should understand that should such an event occur, why it occurs.
>
> Q:  That doesn't get the supervisor out of having to go through that event, does it?
>
> A:  Well, it can't be ruled out that such an event might occur, and the supervisor would have to be the person that would understand that and would agree with it.
>
>          . . . .
>
> Q:  It doesn't get the supervisor out of the event, does it?
>
> A:  It doesn't guarantee that, no.
>
> Q:  It doesn't do it at all.  It's not a matter of guarantee.
>
> A:  Supervisor would be taking that risk.

(Anderson Dep., at 237-38).

5

Meanwhile, Dr. Anderson's recommendation that plaintiff should have been placed with supervisors who will accept her misconduct as unavoidable and beyond her control reveals his opinion that no accommodation would be effective in preventing that misconduct. Rather, under Dr. Anderson's theory, all of plaintiff's suggested accommodations are really nothing more than ways for Verizon to make plaintiff's ongoing misconduct more bearable by, for example, trying to keep her away from others and allowing her to leave work.

However, as more fully addressed in Verizon's Memorandum, any accommodation which does not work to bring plaintiff's misconduct within her control does not meet the definition of reasonable accommodation under the ADA. Rather, the Fourth Circuit has explained that "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, *enables the employee to perform the essential functions of the job in question.*" *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (emphasis added); *see also, Bryant v. Better Business Bureau*, 923 F. Supp. 720, 736 (D. Md. 1996) (holding that an accommodation which would not have the effect of rendering the employee qualified for the job does not constitute a "reasonable" accommodation within the meaning of the ADA). As discussed in Section I, according to plaintiff's own expert, plaintiff could not be relied upon to perform the essential job function of interacting with internal customers by telephone. Because plaintiff has not and cannot allege that her suggested accommodations would allow her to reliably carry out that function, those hypothetical accommodations are simply not "reasonable accommodations" under the ADA.

Moreover, the suggestion that Verizon had a responsibility to tolerate plaintiff's misconduct in any fashion is flatly inconsistent with the Fourth Circuit law which holds that an employer does not violate the ADA in terminating an employee for misconduct, even if the

6

misconduct is caused by a disability. *See Jones v. American Postal Workers Union*, 192 F.3d 417 (4th Cir. 1999). Thus, because plaintiff's suggested accommodations would not prevent plaintiff's misconduct or enable her to carry out her essential job functions, her failure to accommodate claim must fail as a matter of law.

**III.    THE FOURTH CIRCUIT DECISION IN *JONES V. AMERICAN POSTAL WORKERS UNION* MAKES CLEAR THAT AN EMPLOYER IS NOT REQUIRED TO TOLERATE THE TYPE OF BEHAVIOR HERE AT ISSUE, EVEN IF CAUSED BY A DISABILITY.**

In her opposition, plaintiff virtually ignores the final reason that summary judgment is warranted in light of Dr. Anderson's recent report and deposition. Specifically, Dr. Anderson's opinions represent clear shift in plaintiff's case to a legal theory that is untenable under Fourth Circuit law.

Dr. Anderson's opinions plainly indicate that plaintiff's core theory is no longer that plaintiff was disciplined more severely than similarly situated non-disabled employees but is instead that it was discriminatory to discipline plaintiff on the basis of her conduct because that conduct was caused by her disability. This shift is evident not merely because Dr. Anderson opines that plaintiff's conduct was beyond her control but also because Dr. Anderson's opinion that plaintiff's misconduct was caused by her alleged "chronic hypomania" is *premised* on the fact that those behaviors are the type of conduct for which an employee could and should be terminated. Indeed, when specifically asked how he was able to determine that plaintiff's individual acts of misconduct were caused by her mental disorder, Dr. Anderson responded as follows:

> Q:  What is the basis for your conclusion that her actions were the direct result of her condition?
>
> A:  That they are entirely consistent with a person with bipolar affective disorder in partial remission and that they are – and that that is a sufficient and adequate and likely explanation for the

7

> behavior;  that the behaviors in and of themselves are so inappropriate that they would not be consistent with a personality disorder or any other rational explanation **being behaviors that in the absence of mitigating – of major mitigating medical circumstances would lead to loss of one's job which any rational person would not want to do**."

(Anderson Dep. at 191) (emphasis added).

In other words, it is precisely *because* plaintiff's acts were the type of terminable offenses that would cause a non-disabled person (i.e, a person without "major mitigating medical circumstances") to be fired that led Dr. Anderson to conclude that those actions were caused by her mental disorder.  While Verizon does not itself endorse Dr. Anderson's opinions, plaintiff has endorsed them by proffering his expert report and should therefore be bound by those opinions and their underlying assumptions.  Simply put, plaintiff cannot offer as evidence expert opinion which is based on the premise that plaintiff's actions would have caused a non-disabled person to be fired and then argue that in suspending and terminating plaintiff for those actions, Verizon treated plaintiff more severely than other employees.  Thus, while that Court originally allowed plaintiff to survive summary judgment on a theory that "similarly situated employees received lesser punishments for discriminatory reasons," (Order Denying Motion for Summary Judgment (Dkt. #48), at 2), plaintiff has effectively abandoned that original theory through the introduction of her new expert.

Meanwhile, as set forth more fully in Verizon's Memorandum, plaintiff's newly suggested theory, that it was discriminatory to discipline plaintiff for her allegedly compelled behavior, was expressly disallowed by the Fourth Circuit in *Jones* v. *American Postal Workers Union*, 192 F.3d 417 (4th Cir. 1999).  Facing a similar circumstance in which an employee's threatening conduct was allegedly the result of a mental disorder, the Fourth Circuit summarily rejected the employee's ADA claim, holding:

8

> Because the ADA does not require an employer to ignore such egregious misconduct by one of its employees, *even if the misconduct was caused by the employee's disability,* we remand this case to the district court for entry of judgment in favor of the Defendants.

*Jones*, 192 F.3d at 429 (emphasis added).  Accordingly, any theory based on a claim that it was discriminatory to discipline plaintiff for misconduct because such conduct was allegedly the result of a mental condition must be dismissed under a straightforward application of the Fourth Circuit's ruling in *Jones*.

Plaintiff's only response to this obvious and fatal flaw in her case is a wholly unfounded attempt to narrowly construe *Jones* as creating a special rule for death threats.  Plaintiff argues that because her vast assortment of misconduct did not include an express death threat, the rule expressed in *Jones* does not apply.  (Plaintiff's Opposition to Defendant's Second Motion for Summary Judgment (Dkt. #153), at 7.)  The Fourth Circuit's opinion in *Jones* does not in any way state or even suggest that death threats are a special category of conduct under the ADA.  To the contrary,  the Court expressly rooted its opinion in a long line of cases holding that "the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability."  192 F.3d at 429. (citing *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 n.3 (4th Cir. 1997); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832-33 (9th Cir. 1995); *Despears v. Milwaukee County*, 63 F.3d 635, 637 (7th Cir. 1995); *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846-48 (6th Cir. 1995)).  The Fourth Circuit merely applied this general rule to the allegation that the misconduct at issue was the result of a mental disorder.  Plaintiff's attempt to construe *Jones* as a case solely about death threats is not only supported by the text of the decision but is inconsistent with the Fourth Circuit's reasoning.

By proffering Dr. Anderson as a psychiatric expert and offering his opinions as evidence, plaintiff has necessarily abandoned her original theory of discrimination, which the Court had

9

allowed to survive summary judgment, and has instead committed herself to a theory that is squarely disallowed under binding Fourth Circuit precedent. As a result, plaintiff cannot prevail on her claims as a matter of law, and summary judgment should be properly entered in favor of Verizon.

## CONCLUSION

For the reasons set forth in its Motion for Summary Judgment and for the additional reasons set forth above, Verizon respectfully requests that the Court enter an Order granting summary judgment against plaintiff Frances Darcangelo.

Dated: May 10, 2005                                  _____/s/_____

                                Ira H. Raphaelson, Bar No. 012849
                                Karen M. Wahle, Bar No. 013658
                                Shannon M. Barrett, Bar No. 16410
                                O'MELVENY & MYERS LLP
                                1625 Eye Street, N.W.
                                Washington, D.C. 20006
                                (202) 383-5300
                                (202) 383-5414 (facsimile)

                                Counsel for Defendant
                                Verizon Maryland Inc.