IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| FRANCES DARCANGELO, | |
| | * |
|     Plaintiff, | |
| v. | *    CIVIL NO.: WDQ-02-816 |
| | |
| VERIZON MARYLAND INC., | * |
| | |
|     Defendant. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION AND ORDER

Frances Darcangelo has sued her former employer Verizon
Maryland Inc. ("Verizon"), alleging discrimination on the
basis of disability in violation of the Americans with
Disabilities Act ("ADA").[1]  Pending is Verizon's motion for
summary judgment.  For the reasons discussed below, the motion
for summary judgment will be granted.

BACKGROUND

Darcangelo worked in Verizon's provisioning department in
Hunt Valley, Maryland from 1994 until her termination in 1999.
Darcangelo Dep. at 261.  The provisioning department aided in
the creation of new cable facilities by performing a variety
of technical functions including operating and maintaining
local and toll switching equipment, data network equipment,

---

[1] 42 U.S.C. §§ 12101 *et seq.* (2005).

and associated peripherals.  *Id.* at 271-72.  Darcangelo was
stationed at a cubicle and performed most of her work on a
personal computer or on the phone.  *Id.* at 265.

In 1997, Darcangelo, who had been diagnosed with bipolar
disorder in 1989, started behaving unpredictably at work.
Darcangelo Dep. at 206; Conrad Dep. at 148-49.  Verizon
management and Darcangelo's coworkers observed her eating and
reading a newspaper at her workstation during work hours,[2]
cursing and using racial slurs,[3] screaming,[4] and posting
offensive material in her work space.  Def.'s Ex. 38 (Notes to
Darcangelo's Personnel File of Oct. 13, 1997).

On October 13, 1997, Verizon management and union
representatives held a meeting with Darcangelo to inform her
that inappropriate behavior would no longer be tolerated and
she was being placed on a progressive discipline plan.  *Id.*

Darcangelo, nonetheless, continued to behave erratically
at work.  In March 1998, Darcangelo screamed at her supervisor
so loudly that it disrupted her entire work group and used
offensive language when describing one of her supervisors.

_____

[2]Fleig Dep. at 70, 101-02.

[3]Conrad Dep. at 149; Fleig Dep. at 50-51; Moxey Dep. at
17-22.

[4]Conrad Dep. at 149.

2

Def.'s Ex. 76 (Termination Memorandum of Feb. 16, 1999);
Darcangelo Dep. at 410-15; Moxey Dep. at 91.  On May 8, 1998,
Darcangelo placed a poster in her work area featuring a photo
of a coworker's face affixed upon the center of a rifle
target.  Def.'s Ex. 76 (Termination Memorandum of Feb. 16,
1999); Darcangelo Dep. at 328-33; 342-45; Conrad Dep. at 46,
156-57.  The poster caused havoc in the workplace when it was
observed by coworkers the next day, and instilled fear in the
employee who was pictured on it.  Darcangelo Dep. at 345-47;
Conrad Dep. at 48, 58-59; English Dep. at 81-83; Kelly Dep. at
86; Lee Dep. at 58-59.  Darcangelo was suspended for ten days
as a result of the incident and concedes that her behavior
violated Verizon's code of business conduct.  Conrad Dep. at
48-49, 80-81, 161-63; Darcangelo Dep. at 351, 411.

On June 4, 1998, Darcangelo returned to work and was
again informed that she was on a progressive discipline plan
and future incidents would result in further disciplinary
action, up to and including dismissal.  Def.'s Ex. 53 (Notes
to Darcangelo's Personnel File of June 4, 1998).

In September 1998, Darcangelo took a number of
inappropriate actions at work including hanging up on her
supervisor, walking out of a meeting with a supervisor after
having been warned that leaving would be considered

3

insubordination, engaging in union activities during work
hours, yelling, using foul language, and refusing to accept
training.  Def.'s Ex. 76 (Termination Memorandum of Feb. 16,
1999); Darcangelo Dep. at 363, 412-13; Moxey Dep. at 155-56;
English Dep. at 123-30; Conrad Dep. at 46, 51-53.

On October 23, 1998, Darcangelo walked out of a business
telephone call with another technician and a customer.
Darcangelo Dep. at 375, 415; Conrad Dep. at 46, 61; English
Dep. at 136-38; Moxey Dep. at 166-67; Def.'s Ex. 76
(Termination Memorandum of Feb. 16, 1999).  Darcangelo was
told that she was suspended but when she returned to her desk
to pick up her things, she engaged in a loud and disruptive
phone conversation with a union representative, refusing to
hang up the phone.  (Termination Memorandum of Feb. 16, 1999);
Def.'s Ex. 62 (Notes to Darcangelo's Personnel Record of Oct.
23, 1998).  Darcangelo was suspended for 15 days as a result
of this event, and admits that her behavior violated Verizon's
code of business conduct.  Conrad Dep. at 61-62; Moxey Dep. at
166-71; Darcangelo Dep. at 300, 376-77.

On November 16, 1998, Darcangelo returned to work and
another meeting with Verizon management in which she was
warned that her continual violations of the code of business
conduct could result in dismissal.  Moxey Dep. at 176; Def.'s

4

Ex. 67 (Notes to Darcangelo's Personnel File of Nov. 16, 1998).

On December 17, 1998, when an African-American coworker asked Darcangelo to pick up a ticket that had been dropped on the floor, Darcangelo, feigning a southern accent, replied, "I ain't gonna do that Ole Massa."  Darcangelo Dep. at 388-89; Conrad Dep. at 46, 63; English Dep. at 156-59; Def.'s Ex. 69 (Darcangelo's Statement of Dec. 17, 1998).  Darcangelo's coworker asked her not to speak to her that way.  Darcangelo Dep. at 390.  Darcangelo then repeated the statement a number of times until her coworker became enraged.  Darcangelo Dep. at 390-91.  Both employees were sent home pending an investigation into the incident.  Darcangelo Dep. at 394. Darcangelo was suspended because of her role in the  incident and terminated on January 6, 1999, due to a history of violating Verizon's code of business conduct.  Conrad Dep. at 45-46, 72-73, 178-82, 201-02; Darcangelo Dep. at 397; Sewell Dep. at 68-69; English Dep. at 177.  Darcangelo concedes that her behavior during this incident violated Verizon's code of business conduct.  Darcangelo Dep. at 400.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue

as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

ANALYSIS

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of her disability.  42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, the plaintiff must prove that (1) she has a disability; (2) she is otherwise qualified for the job in question; and (3) she was discharged solely because of her disability.  *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 197 (4th Cir. 1997).

Darcangelo claims that her actions were caused by her bipolar disorder, thus Verizon discriminated against her on the basis of her disability when it disciplined and terminated her.  Verizon asserts that Darcangelo's claim must fail because she cannot demonstrate that she is "otherwise qualified for the job in question."

"Under the ADA, an individual is 'otherwise qualified' if [s]he, 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Id.* (quoting 42 U.S.C. § 12111(8)).  That is, "an individual is 'otherwise qualified' if [s]he is 'able to meet all of a program's requirements in spite of [her] handicap.'" *Id.* (*quoting Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979)).  Darcangelo bears the burden of establishing that she is otherwise qualified.

*Id.*

Darcangelo's expert psychiatric witness testified that as a result of her mental illness, Darcangelo is not always capable of controlling her behavior.  Anderson Dep. at 222. Accordingly, the expert opined, Darcangelo should have only minimal interaction with customers and coworkers.  *Id.;* Def.'s Ex. 6 (Dr. Douglas Anderson Report of Apr. 4, 2005.

Interaction with others, however, is an essential component of Darcangelo's job.  Dankert Dep. at 59-60; Conrad Dep. at 17; Def.'s Ex. 4 (Supplemental Job Requirements of FMAC Associates).  Moreover, all Verizon employees are subject to its code of business conduct, which requires employees, *inter alia*, to be "respectful, cooperative and helpful toward customers, suppliers, ... co-workers, employees and the general public;" to refrain from "disparag[ing] or misrepresent[ing] the corporation or any [Verizon] employee;" and to refrain from using "company resources or time in connection with outside business activities."  Def.'s Ex. 2 (Verizon's Code of Business Conduct).

There is no evidence that Verizon fired Darcangelo because of her mental illness, but because she continually violated its code of business conduct by threatening and harassing her coworkers, effectively removing herself from the

8

category of "otherwise qualified" individuals.  When an employer fires an employee because of the employee's unacceptable behavior, the fact that the behavior was precipitated by mental illness does not present an issue under the ADA.  *Jones v. American Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. 1999); *Palmer v. Circuit Court of Cook County*, 117 F.3d 351, 352 (7th Cir. 1997).    Darcangelo's expert psychiatric witness testified that Verizon could accommodate her disability by "limiting [her] contact and interaction with coworkers as much as possible and having her report to and interact mainly with supervisors who were aware of and sensitized to [her] condition."  Def.'s Ex. 6 (Dr. Douglas Anderson Report of Apr. 4, 2005).  "It is true that an employer has a statutory duty to make a 'reasonable accommodation' to an employee's disability, that is, an adjustment in working conditions to enable the employee to overcome [her] disability, if the employer can do this without 'undue hardship.'" *Palmer*, 117 F.3d at 353 (citing 42 U.S.C. § 12112(b)(5)(A)).  Requiring Darcangelo's coworkers and supervisors to suffer her tirades and harassment, however, constitutes an undue hardship which Verizon cannot be expected to bear.  *See, e.g., Palmer*, 117 F.3d at 353 (unreasonable to require employer to force employees to put up with outbursts

and threats); *Pesterfield*, 941 F.2d at 442 (unreasonable to require employer to place employee in stress-free environment to immunize him from criticism).

CONCLUSION

For the reasons discussed above, Verizon's motion for summary judgment will be granted.


June 7, 2005                          /s/
Date                          William D. Quarles, Jr.
                              United States District Judge